RICHARD ARJUN KAUL, MD
440c SOMERSET DRIVE
PEARL RIVER, NY 10965
862 881 9703
drrichardkaul@gmail.com

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY-
#### CAMDEN

| RICHARD ARJUN KAUL | |
|---|---|
| Plaintiff | |
| A/C | CIVIL CASE: PENDING |
| | |
| MICHAEL MURPHY; CHRISTOPHER J. CHRISTIE; NEW JERSEY BOARD OF MEDICAL EXAMINERS; CONNECTICUT MEDICAL BOARD; AQR CAPITAL; FEDERATION OF STATE MEDICAL BOARDS; DOREEN ANNETTE HAFNER; ABBOTT BROWN; CONNECTICUT GENERAL LIFE INSURANCE; ANDREW GREGORY KAUFMAN; ALLSTATE INSURANCE COMPANY | COMPLAINT |

I, Richard Arjun Kaul, MD, the Propria Persona Plaintiff, of full age do hereby submit this Complaint on April 27 2021 seeking the within referenced relief.

Dated: April 27, 2021

_____
RICHARD ARJUN KAUL, MD

1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY-**
**CAMDEN**

| RICHARD ARJUN KAUL, MD | Civil Action: |
|---|---|
| Plaintiff | |
| v. | **CERTIFICATION OF PLAINTIFF** |
| MICHAEL MURPHY, MD ET AL | |
| Defendants | |

I, Richard Arjun Kaul, MD, of full age, certify and say:

I am the Propria Persona Plaintiff ("**Kaul**").

I make this CERTIFICATION in support of this Complaint, which is filed on the basis of new evidence/new injury that constitutes a **"new racketeering injury"** and on evidence that the Defendants have perpetrated schemes of judicial corruption in the United States District Court for the District of New Jersey.-Newark.

I certify that the foregoing statements made by me are true and accurate to the best of my knowledge, and that if it is proved that I willfully and knowingly misrepresented the facts, then I will be subject to punishment.

Dated: April 27, 2021

Richard Arjun Kaul, MD

2

# <u>Contents</u>

**The Kaul Cases** – Page 5

**Parties** – Page 6

**Jurisdiction + Venue** – Page 10

**Preliminary Statement** – Page 11

**Evidence** – Page 13

**Statement of Fact** – Page 27

    **Fraudulent Medical Malpractice Claims** – Page 27

    **Fraudulent claim by State of New Jersey/Defendants NJBME/Hafner/Kaufman and The Kaul Cases Defendant, Gregory Przybylski/Jay Howard Solomon re: Kaul lack of qualifications to perform minimally invasive spine surgery** – Page 39

    **Fraudulent $6 million Allstate Judgment Against Kaul + Uncontested Facts Regarding Defendants Corruption of NJ State Court System** – Page 41

    **Defendants Global Scheme of Obstruction of Justice** – Page 48

**Legal Claims** – Page 51

    <u>**RICO 1**</u> – Page 51

    **Christie/Brown/Hafner/Murphy**
    **Enterprise - The State of New Jersey**
    **Defendant Persons - Christie/Brown/Hafner/Murphy**
    **Pattern of Racketeering/RICO Predicate Acts - Mail Fraud/Wire Fraud/Perjury/Conspiracy/Obstruction of Justice/Bribery/Kickbacks/Evidential Tampering/Witness Tampering**

    <u>**RICO 2**</u> – Page 59

    **CGLIC/AQR/Christie/Allstate**
    **Enterprise – The State of New Jersey**
    **Defendant Persons - Christie/CGLIC/AQR/Allstate**

Pattern of Racketeering/RICO Predicate Acts - Mail
Fraud/Wire/Conspiracy/Obstruction of Justice/Bribery/Kickbacks

**RICO 3** -- Page 64

**FSMB/CMB/Hafner**
**Enterprise – State of New Jersey/State of Connecticut**
**Defendant Persons - FSMB/CMB/Hafner**
**Pattern of Racketeering/RICO Predicate Acts - Mail**
**Fraud/Wire/Conspiracy/Obstruction of Justice/Bribery/Kickbacks**

**RICO 4** -- Page 67

**Kaufman/Brown/Hafner**
**Enterprise - State of New Jersey (Office of the AG/NJBME/OAL/State Court)**
**Defendant Persons - Kaufman/Brown/Hafner**
**Pattern of Racketeering/RICO Predicate Acts - Mail**
**Fraud/Wire/Conspiracy/Obstruction of Justice/Bribery/Kickbacks**

**Antitrust/RICO** -- Page 72

**Kaufman/Christie/AQR**
**Enterprise - States of New Jersey-Connecticut**
**Defendant Persons - Kaufman/Christie/AQR**
**Pattern of Racketeering/RICO Predicate Acts - Mail**
**Fraud/Wire/Conspiracy/Obstruction of Justice/Bribery/Kickbacks**

**RICO/Unjust Enrichment** -- Page 85

**AQR/CGLIC/Kaufman/Christie**
**Enterprise - State of New Jersey (Office of the AG/NJBME/OAL/State**
**Court/United States Bankruptcy Court-DNJ)**
**Defendant Persons - Kaufman/Christie/AQR/CGLIC**
**Pattern of Racketeering/RICO Predicate Acts - Mail**
**Fraud/Wire/Conspiracy/Obstruction of Justice/Bribery/Kickbacks**

# Relief – Page 93

# The Kaul Cases

K1 – Kaul v Christie: 16-CV-02364

K2 – Kaul v Christie: 18-CV-08086

K3 – Kaul v Schumer: 19-CV-13477

K4 – Kaul v Stolz: 18-CV-01489

K5 – Kaul v Federation: 19-CV-3050

K6 – Kaul v Kaufman: State Criminal Indictment

K7 – Kaul v Federation: 20-CV-01612

K8 – Plaintiffs v Kaul (All criminal/civil cases filed against Kaul from 1999 to 2015 in the UK/US)

K9 – Stolz v Kaul: 20-AA-01011

K10 – Kaul v Plaintiffs (All cases filed by Kaul to reverse judgments/verdicts entered from 1999 to 2015 in the UK/US)

K11-1 – Kaul v Federation: 21-CV-00057

K11-2 – Kaul v Boston Partners: 21-CV-10326

K11-3 – Kaul v Allstate: 21-CV-00736

K11-4 – Kaul v Murphy: Docket Number Pending

P1 – Kaul/Patel v Crist: 19-CV-08946

P2 – Kaul/Patel v Allstate: 19-CV-09232

# Parties

1.      Plaintiff Richard Arjun Kaul, MD **("Kaul"):** 440c Somerset Drive, Pearl River, NY 10965. Application for medical license granted by the State of Pennsylvania on May 28, 2020. Order adopted by **The Kaul Cases** Defendant, Pennsylvania Medical Board on February 8, 2021, after Kaul filed a petition for a writ of mandamus in the Supreme Court of Pennsylvania (December 2, 2020) and named Defendant PMB in K11-1 (January 12, 2021). Kaul is a recognized pioneer in Minimally Invasive Spine Surgery, having revolutionized the specialty in 2005, when he performed the first outpatient minimally invasive spinal fusion/in 2011 the first outpatient adolescent spondylolisthesis correction/in 2012 the first four-level outpatient spinal reconstruction:

https://www.youtube.com/watch?v=q_HBzqfggrq

https://www.youtube.com/watch?v=oxaV5lJuZ7c&t=6s

https://www.youtube.com/watch?v=JX4bnRPPucl&t=44s

https://www.youtube.com/watch?v=9NjJV7XhBB0&t=57s

And then in 2008 Kaul established The Spine Africa Project:

https://www.youtube.com/watch?v=Zu50ik2l2Sc&t=17s

Kaul CV (**EXHIBIT 1-KAUL:0002**).

1.      Defendant Christopher J. Christie, Esq **("Christie"):** 47 Corey lane, Mendham, Nj 07945. Ex-NJ Governor (2009 to 2017). Lost 2016 bid to President Trump for Republican nomination for Presidency of the United States. As NJ Governor abused power to 'weaponize' Defendant NJBME/state AG/state courts/federal AG/NJ federal court to eliminate (suspend/revoke medical licenses)/incarcerate physicians whose medical practices threatened/undermined the political/economic agendas of physicians/hospitals/insurance companies from whom he/his associates (law firms/political lobbyists/public relation firms) received bribes (disguised as 'legal fees', 'public relation fees' and or 'political lobbying fees'.). The entire mechanism (Defendant NJBME/State AG/NJ OAL) is controlled by the executive branch of state government, over which Defendant Christie abused absolute power.

https://www.youtube.com/watch?v=34Gdu-TINEM

2.      Defendant New Jersey Board of Medical Examiners ("**NJBME**"): 140 E Front Street, Trenton, NJ 08608. Defendant NJBME is a purported state agency whose members are political appointees that serve at the pleasure of the Governor. The New Jersey Office of the Attorney General simultaneously prosecutes cases against physicians, while providing internal counsel to Defendant NJBME. The New Jersey

Attorney General is appointed by the Governor. Defendant CMB claims to **"protect the public"**, a false claim for which there exists no evidence.

**3.**    Defendant <u>Connecticut Medical Board</u> **("CMB"):**  410 Capitol Ave., MS #13PHO, Hartford, CT 06134. Defendant CMB is a purported state agency, whose members use the board's power to engage with for-profit healthcare corporations in the business of medicine. Defendant CMB is a member of the **"FSMB-SMB One Unit Cartel" ("FC")** comprised of **The Kaul Cases** Defendant, Federation of State Medical Boards (**"FSMB"**)/State Medical Boards **("SMB")**. It is an illegal association-in-fact entity that profits from the billion-dollar industry of so-called physician credentialling/regulation. Defendants CMB/FSMB and the **"FSMB-SMB One Unit Cartel"** operate in violation of the due process clauses of state/federal constitutions/antitrust law/Commerce Clause. Defendant CMB claims to **"protect the public"**, a false claim for which there exists no evidence.

**4.**    Defendant <u>AQR Capital</u> **("AQR"):**  Two Greenwich Plaza, Greenwich, CT 06830. Defendant AQR is a hedge fund that is one of the top ten corporate shareholders in Defendant Allstate. The top ten hold approximately eighty percent (80%) of stock. Defendant AQR, a knowing co-conspirator in the crimes of Defendant Allstate, did illegally and unjustly enrich itself/its clients at the expense of Kaul, while laundering criminal proceeds through the New York Stock Exchange. It is a resident of the State of Connecticut.

**5.**    Defendant <u>Federation of State Medical Boards</u> ("**FSMB"):**  400 Fuller Wiser Rd, Suite 300, Euless, TX 76039. Defendant FSMB is a for-profit corporation that operates with state medical boards in the business of so-called physician regulation/credentialing. It, and its members, profit from advancing the economic/political agendas of both privately held and publicly traded corporations that operate in the trillion-dollar healthcare market. Defendant FSMB controls state medical boards, to whom it dictates economically driven physician disciplinary policy. For example, it encourages state medical boards to suspend/revoke the licenses of physicians who dispense non-pharmacological alternative therapies, as this undercuts pharmaceutical corporation profits. Defendant FSMB is anti-innovation unless the innovation generates profit for them and the corporations that bribe them.

**6.**    Defendant <u>Doreen Annette Hafner, Esq</u> ("**Hafner"):**  49 Seminole Drive, Ringwood, NJ 07456. Defendant Hafner is a deputy Attorney General in the Office of the New Jersey Attorney General. Defendant Hafner began illegally conspiring with Defendant Kaufman and others, in or around 2009, to have Kaul's license revoked, a scheme she knew was illegal. Defendant Hafner knew she was participating in a scheme of public corruption and caused subornation of perjury with six (6) of Kaul's patients, whom she had lie under oath (April 9 to June 28, 2013-NJ OAL Hearing), by falsely stating that their back/leg pain worsened after the care they received from Kaul. The evidence of the patients' clinical notes proves that these six (6) patients improved after the care, but Kaul's lawyer failed to include this evidence in his case (it would likely have made no difference as The Kaul Cases Defendant, Solomon-NJ OAL Judge had

been corrupted by Defendant Allstate/Geico). Further evidence of both Defendant Hafner's abusive/corrupted/illegal state-of-mind and the abusiveness of the illegal system of physician regulation is found in a letter transmitted by Defendant Hafner to Defendant NJBME using the US mail/wires, in which she re-publishes verbiage Kaul's then lawyer, Michael Keating, instructed him to include in his 2014/2015 application for reinstatement of his NJ license. In Defendant Hafner's letter (March 3, 2015), with knowledge that the suspension/revocation of Kaul's license was illegal, Defendant Hafner, instead of reporting the crime to state/federal investigative/prosecutorial authorities, perpetuated the crime by using the US mail wires to further propagate the falsehoods that Kaul was not qualified to perform minimally invasive spine surgery and had injured patients. Defendant Hafner knew these were lies, but even into 2015 continued to commit a fraud against Kaul, the public and the United States.

7.    Defendant <u>Abbott Brown</u>, Esq ("**Brown**"): Lomurro Law, 4 Paragon Way, Suite 100, Freehold, NJ 07728. Defendant Brown is a NJ based personal injury/medical malpractice lawyer who was, in 2012, a partner at the law firm of Bendit Weinstock, when he, in collusion/conspiracy with Defendant Hafner recruited Kaul's patients, through fraudulent schemes that involved Defendant Hafner illegally providing him with patients contact information, that she had illegally obtained from Kaul's surgical center and various insurance companies. Defendants Brown/Hafner collaborated in this "**Christie Insurance Fraud Scheme**", in which they conspired with Kaul's patients/his physician competitors (Alfred Steinberger-neurosurgeon/Arash Emami-orthopedic spine surgeon/George Naseef-Orthopedic Spine Surgeon/Kenneth Rieger-Orthopedic Spine Surgeon) to file knowingly fraudulent malpractice claims that defrauded Kaul's medical malpractice carriers of millions of dollars. Defendant Brown provided a percentage of these monies as 'kickbacks' to Defendant Christie, and disguised other bribes as so called 'political campaign' donations, in order to ensure Defendant Christie continued to abuse his authority to have state court judges enter multi-million-dollar judgments against Kaul/his malpractice carrier. In 2013, Defendant Brown became a partner at the law firm of Lomurro/Schottland et al.

8.    Defendant <u>Connecticut General Life Insurance Company</u> ("**CGLIC**"): 900 Cottage Grove Rd, Bloomfield, Connecticut 06002. Defendant CGLIC is an insurance subsidiary of Cigna Healthcare and a resident of the State of Connecticut. It, as with Defendants Allstate/AQR, bribed Defendant Christie, through the transfer of shares/stocks/dividends and other monies, as part of a series of quid pro quo schemes purposed to have him abuse the executive power of the Office of the NJ Governor to have Kaul's license revoked in order to eradicate their past debt to Kaul and eliminate any future liability.

9.    Defendant <u>Andrew Gregory Kaufman,</u> MD ("**Kaufman**"): 16 Sierra Court, Hillsdale, NJ 07642. Defendant Kaufman is an individual with a business located at 90 Bergen Street #3400, Newark, New Jersey 07103. Defendant Kaufman was paid by the State of New Jersey to provide testimony against Kaul. Defendant Kaufman was a market competitor of Kaul and engaged in healthcare business with **The Kaul Cases** Defendants Robert Heary, MD/Gregory Przybylski, MD/Atlantic Health System. Defendant Kaufman committed perjury in the case/hearing (April 9 to June 28, 2013)

that resulted in the illegal revocation of Kaul's license. Defendant Kaufman verbally abused, publicly humiliated and provided willfully negligent care to a number of patients that had received care from Kaul. Many of these individuals sustained permanent neurological injuries consequent to Defendant Kaufman's gross negligence. Defendant Kaufman receives bribes from Defendants Allstate/Geico to provide false testimony that has results in the wrongful incarceration of physicians to whom Defendants Allstate/Geico owe monies. Defendants Kaufman/Hafner/Allstate/Geico, through this scheme of abuse/corruption of the judicial process, have, in the period commencing in 2000, caused the incarceration of innocent physicians/destruction of professional careers/physician suicides/destruction of physicians' families in their pursuit of executive/corporate//professional profit and advancement.

https://www.drrichardkaul.com/so/e1NRN-ovB?languageTag=en

10.    Defendant Michael Murphy, MD (**"Murphy"**): 6 Woodland Road, #3B Madison, CT 06443. Defendant Murphy is an orthopedic surgeon who conducts healthcare business with Yale New Haven Health System in the State of Connecticut. Murphy has no education/training/qualifications/experience in minimally invasive spine surgery, but yet was permitted by corrupted NJ state court judges to provide testimony as an 'expert' witness against Kaul in fraudulent cases filed by Defendant Brown/others in a period that commenced almost immediately after the widely publicized, and illegal, suspension (April 2, 2021) of Kaul's NJ license. Defendant Murphy's committed perjury with regards to the issue of a standard of care for minimally invasive spine surgery, and this perjury caused the embezzlement of millions of dollars from Kaul's medical malpractice carriers. Defendant Murphy, as with **The Kaul Cases** Defendant, Gregory Przybylski, MD, knew there was no standard, and knew that Kaul's care had not deviated from any standard of medical care, but nonetheless committed the RICO predicate acts of perjury/fraud to aid and abet **The Kaul Cases** Defendants schemes and "**pattern of racketeering**" purposed to destroy Kaul's economic standing/his livelihood/his reputation/his life and that of his children.

11.    Defendant Allstate Insurance Company (**"ALL"**): Attention Thomas Wilson: 2775 Sanders Road, Northbrook, IL 60062. Defendant Allstate is a publicly traded corporation that sells insurance products. It maximizes corporate/executive/shareholder profit through schemes of political/judicial/legislative corruption that permit it to arbitrarily raise the public's insurance premiums, while reducing the percentage paid to healthcare providers. Defendant ALL, through its schemes of political/judicial/legislative corruption eliminates healthcare providers and debts owed to these individuals, through the filing of knowingly false administrative/civil/criminal complaints, in administrative/state/bankruptcy/federal courts whose judges they have bribed or otherwise corrupted.

# Jurisdiction + Venue

**12.**   <u>General Jurisdiction</u>: U.S.C. § 1331 because Kaul's claims arise under federal law, and under 18 U.S.C. § 1964(c) because this action alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1337 because this action alleges violations of an Act of Congress regulating commerce por protecting trade and commerce against restraints and monopolies. And 15 U.S.C. Section 4 and 16 confer subject matter jurisdiction on this Court over claims brought under the Sherman Act. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. section 1332(d)(2)(A)(5) because Kaul is a citizen of a different state to certain Defendants and the aggregate amount in controversy exceeds seventy-thousand dollars.

**13.**   <u>Personal Jurisdiction</u>: This Court has personal jurisdiction over each Defendant, as each Defendant has transacted business, maintained substantial contacts and/or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including this district. The scheme and conspiracy have been directed at and have had the intended effect of causing injury to persons residing in, located in or doing business throughout the United States including this District. This Court also has personal jurisdiction over all Defendants pursuant to Fed. R. Civ. 4(k)(1)(A) because they would be subject to the jurisdiction of a court of general jurisdiction in Connecticut.

**14.**   This district has jurisdiction over this case, as Kaul has sustained a **"new racketeering injury"** in being foreclosed from obtaining a license to practice medicine and surgery in this district consequent to the illegal suspension/revocation (2012/2014) of his New Jersey license, one of many permanent injuries caused to Kaul consequent to the Defendants' ongoing **"open-ended pattern of racketeering"** being conducted through the enterprise of the United States by the **"FSMB-SMB One Unit Cartel"** (see below for full description) in collusion/conspiracy with **The Kaul Cases** Defendants.

**15.**   In addition, this district has authority/jurisdiction over this case, as the court/judges in the District of New Jersey are Defendants in K11-1 and K11-3, as well as having been reported to state/federal investigatory/prosecutorial authorities.

# **Preliminary Statement**

**16.** This case represents the commencement of a narrowing of the issues raised in the previous filings of **The Kaul Cases** but continues the theme of corruption at the intersection of the worlds of medicine/business/law/politics, with a focus on corruption of New Jersey state court judges by the Defendants. The case covers a period from 2005 to 2021, that witnessed how what began with petty professional jealousy/greed/arrogance, escalated into schemes of judicial corruption that polluted administrative/state/bankruptcy/federal courts within the geographic boundaries of the State of New Jersey. The case details how the Defendants funneled the polluted judgments procured in these corrupted courts into the politico-legal apparatus of the United States, in knowing violation of criminal law, but with the intent of providing cover for their crimes, while committing a massive 'Fraud on the Court' against the United States. The Defendants, in the commission of their crimes, co-opted the legislative/executive/judicial branches of the State of New Jersey, in order to execute their knowingly illegal scheme and provide them with legal cover, in an attempt to avoid civil/criminal prosecution.

**17.** Central to the Defendants scheme was the flow/exchange of information/money between politicians/judges/physicians/hospital-insurance executives, purposed to eliminate Kaul and the economic debt/threat he posed to the Defendants and their co-conspirators. The Defendants, in seeking to justify their crimes to the public, propagated and prosecuted a massive series of lies, that Kaul was not qualified to perform minimally invasive spine surgery, had committed insurance fraud and was to be indicted by the United States Government, the purpose of which was to isolate Kaul economically/socially/professionally, to force him into a state of poverty and to prevent him from ever gaining any form of type of employment anywhere in the world. The various endpoints of the Defendants scheme included having Kaul jailed/deported/killed.

**18.** The Defendants, in perpetrating their crimes, did not limit their ends to eliminating Kaul and his children, but defrauded, in collusion/conspiracy with the State of New Jersey, his medical malpractice carrier of tens of millions of dollars in fraudulent judgments issued by corrupted NJ state court judges in medical malpractice/insurance fraud suits. The Defendant lawyers in these cases kicked back a percentage of the monies to Defendant Christie, as part of a series of quid pro quo schemes, in which Defendant Christie abused the power of public office to order judges/medical board members to revoke Kaul's license and enter judgments against him, acts that the Defendants knew were illegal.

**19.** This case lends further weight to the advancing point of **The Kaul Cases** and brings closer its central purpose, which is that of a "**Reformation of American Medical Boards**", a much overdue change, the urgency of which has been exposed by the western world's highest COVID-19 related morbidity/mortality. This fact is accounted for by the rampant corruption of the three branches of state/federal governments by for-profit healthcare corporations. Political corruption kills.

**State medical board members - A question of mental instability, dubious character and lethal tactics:**

**20.** **The Kaul Cases** Defendants, Steven Lomazow, MD, a NJ neurologist who occupied a senior/controlling position on Defendant NJBME from 2006 to 2014, admitted to having knowledge about the untimely death in November 2006 of NJ Deputy Attorney General, Paul Kenny:

https://www.nj.com/news/2011/11/years_after_her_husband_lost_h.html

**21.** Kenny was about to expose the grand schemes of corruption by the insurance/hospital industry of the legislative/executive branches of the State of New Jersey. He was murdered.

**22.** In the below video, **The Kaul Cases** Defendant, Lomazow, identifies physician, Kenneth Zahl, as having been involved. From 2002 to 2006 Kenny prosecuted Zahl, who allegedly bribed multiple NJ politicians/judges to have Kenny removed from the case:

https://www.youtube.com/watch?v=sFtE8EvEMsU&t=20s

**23.** Lomazow conducted healthcare business with many of **The Kaul Cases** Defendants, from many of whom he received bribes to have suspended/revoked Kaul's license (April 2, 2012/March 24, 2014), a scheme he knew was illegal.

**24.** Lomazow's criminal insanity is a ubiquitous state-of-mind, responsible for **The Kaul Cases** Defendants decades-long scheme of crimes against humanity, committed with impunity, but punishable under state/federal/international law.

# Evidence

**25.**      The contextual/conclusive evidence submitted in support of the claims in conjunction with the Defendants defenselessness, renders this Complaint equivalent to a motion for Summary Judgment. Since the commencement of **The Kaul Cases** Defendants have failed to contest/rebut/refute/address the evidence of their crimes, and have raised, as their only defense, their illegal suspension/revocation (April 2, 2012/March 24, 2014) of Kaul's license. The evidence contained within '**The Solomon Critique**' and '**The Solomon Critique 2**' dismantled this defense, as the evidence is the Defendants' evidence, which irrefutably/unequivocally/admittedly proves that the suspension/revocation, and the surrounding administrative proceedings, were/are illegal and were conducted illegally. The Defendants, in collusion/conspiracy with the State of New Jersey, perpetrated a massive crime on Kaul, the public and the United States, and have continued to use the knowingly illegal proceeds of that crime in their defense against Kaul's claims. The Defendants calculated that if they were able to restrict Kaul's prosecution to courts within the geographic boundaries of the State of New Jersey, the claims would be either stayed/dismissed or otherwise foreclosed from prosecution, as the Defendants had bribed/corrupted the judges in these courts. In K5, it took **The Kaul Cases** Defendants fourteen (14) months to corrupt the judicial process, and have the case transferred from the DC court to Defendant DNJ-Newark (December 12, 2020). K5 was docketed in DNJ-Camden, where an order re: discovery conference (D.E. 155) was immediately entered. **The Kaul Cases** Defendants immediately filed a motion in front of Defendant/Chief Judge Freda Wolfson, to have the case transferred to Defendant/U.S.D.J. Vazquez in Defendant DNJ-Newark, a transfer that was granted and rapidly followed by an order to stay the case. Kaul subsequently filed K11-1/K11-3/K11-2 and now K11-4. On March 3, 2021, **The Kaul Cases** Defendants, Allstate/Geico filed a motion in K1 (closed/on appeal in the U.S.C.A. for the Third Circuit), that seeks to have Defendant/U.S.D.J. Vazquez enter an order that violates the jurisdictional rights of every other district court in the United States, and on March 17, 2021, Kaul served on SCOTUS a notice establishing that all/any orders from Defendant DNJ-Newark (February 22, 2016-Infinity) are null/void.

## CONTEXTUAL EVIDENCE:

**26.**      June 29, 1998 – London Independent: Doctor to challenge medical hierarchy (Exhibit 2 – KAUL:0011):

**"A CONSULTANT anesthetist from America who has moved to Britain is to challenge the "closed shop" run by the medical colleges which have refused him consultant status in the United Kingdom."**

**27.**      November 2008 – An Unholy Alliance: Perceptions of Influence in Insurance Fraud Prosecutions and the Need for Real Safeguards – Aviva Abramovsky (Exhibit 3 - KAUL:0015):

13

Expert evidence in support of Kaul's claims that the Defendants converted the legislative/executive/judicial branches of the State of New Jersey into **"racketeering enterprises"** through which they conducted a **"pattern of racketeering"**. The Defendants illegal **"pattern"** is replicated throughout the United States and has injured hundreds of thousands of physicians/patients.

**28.** <u>April to June 2012 – Letters of support/recommendation from Kaul's patients/physicians to Defendant Christie to have Defendant NJBME reinstate Kaul's license (Exhibit 4 – KAUL:0019)</u>:

**"I realize that Dr. Kaul does not have the same type training that most of us have, having been trained partially here, partially in England, and partially in Korea, but he has a good grasp of principles and techniques. His outcomes are rather good."** – Letter from Dr. Richard Jordan (board certified neurosurgeon) to Dr. Paul Jordan (2012 President of Defendant NJBME).

**"I have recommended Dr. Kaul to the highest degree to everyone that I know and cannot give him enough credit for taking on a task that no other doctor would even consider. I was told nothing could be done for me that I would end up in a wheelchair with the deterioration of my spine. He promised me relief and to this day I owe him my every movement, happiness and pain-free days of my life. He is not only an incredible doctor but cares very deeply and sincerely for the well-being of his patients. It sickens me to know that a man of his knowledge, expertise, background and fortitude has to endure such a horrendous outcome at this point in his career. I still continue to be under Dr. Kaul's care out of his concern to monitor my health and progress. Please consider all the good that this man has done for scores of people throughout the world that he has helped during his career and reinstate him back to full duty as soon as possible. Dr. Kaul is my savior and my salvation, I owe him my life and the quality of it that I enjoy daily"** – Patient Jean Sandfort

**29.** <u>September 17, 2009 – Letter from Cheryl Schwartz to Defendant NJBME (Exhibit 5 – KAUL:0021)</u>:

**"AFTER DR. KAUL DID HER SURGERY, MS. KUREN CLAIMED TO BE OUT OF PAIN BUT JUST SORE FROM THE SURGERY. SHE WAS WALKING PERFECTLY STARIGHT BUT STILL WITH A CANE. APPROX I LATER SHE HAD CALLED ME AND TOLD ME SHE HAD TRIPPED OVER, IT WAS EITHER HER CAT OR HER CANE, AND FALLEN INTO HER FISH TANK WHICH WAS APPROX. 4 FT AWAY FROM HER AND THEN LANDED ON THE FLOOR WITH THE TANK ON TOP OF HER. SINCE THAT TIME MS. KUREN HAS TOLD ME THAT SHE HAS BEEN BACK IN PAIN AND BACK TO LEANING TO THE SIDE AGAIN. SHE ALSO SAID SHE WOULD SUE DR. KAUL, BUT FOR SOMETHING HE DIDN'T DO. SHE DID THIS HERSELF AND SHE IS TO BLAME NOT HIM. I THINK THIS IS INSANITY."**

**30.** <u>August 17, 2010 – Operative report for Marietta Ernst (Exhibit 6 – KAUL:0023)</u>: **"The patient was discharged in a stable neurological and cardiovascular state."**

**31.**   July 5, 2011 – Follow-up consultation for Marietta Ernst (Exhibit 7 – KAUL:0028):

**"The patient comes back today stating that there has continued to be an excellent improvement of symptoms in her lower back and leg subsequent to the L3-4 interbody fusion ..."**

**32.**   April 27, 2014 – Lou Manzo's book about Chris Christie's abuse of the justice system for political gain (Exhibit 7 – KAUL:0031):

"**He said the book tries to make the case that Bid Rig III, serving as a political tool to get Christie elected, often allegedly violated the very principles of justice that Christie and others in the US Attorney's Office took oaths to uphold."**

**33.**   March 3, 2015 – Letter from Defendant Hafner to Defendant NJBME re: Kaul's application for reinstatement NJ license (Exhibit 8 – KAUL:0033):

Further evidence of both Defendant Hafner's abusive/corrupted/illegal state-of-mind and the abusiveness of the illegal system of physician regulation is found in a letter transmitted by Defendant Hafner to Defendant NJBME using the US mail/wires, in which she re-publishes verbiage Kaul's then lawyer, Michael Keating, instructed him to include in his 2014/2015 application for reinstatement of his NJ license. In Defendant Hafner's letter (March 3, 2015), with knowledge that the suspension/revocation of Kaul's license was illegal, Defendant Hafner, instead of reporting the crime to state/federal investigative/prosecutorial authorities, perpetuated the crime by using the US mail wires to further propagate the falsehoods that Kaul was not qualified to perform minimally invasive spine surgery and had injured patients. Defendant Hafner knew these were lies, but even into 2015 continued to commit a fraud against Kaul, the public and the United States:

**"In that letter Respondent boldly told the Board that he would not be in attendance at the February 12th hearing because the Board was "unconstitutional" and had "illegally suspended his medical license."**

In due course, Defendant Hafner will be provided the opportunity to explain to a jury why she should not go to jail for so **"boldly"**, persistently and with such **"flagrant"** disregard for the law, abuse the power of public office to perpetuate the crimes of **The Kaul** Cases Defendants. Maybe a lengthy period of incarceration will remind her that no one is above the law, not even a morally corrupt NJ deputy attorney general. Defendant Hafner has committed many crimes against many innocent physicians for many years and destroyed the lives of many of these physicians and their innocent families. She will pay.

**34.** October 11, 2015 – FTC v North Carolina Dental Board Guidelines re: conditions for medical board immunity (Exhibit 9 – KAUL:0038):

**"The following do <u>not</u> constitute active supervision of a state regulatory board that is controlled by active market participants ... The state attorney general or another state official provides advice to the regulatory board on an ongoing basis."**

Defendant NJBME remains in violation of the law, six (6) years after SCOTUS created this law.

35. July 12, 2017 – Affidavit of Kenneth Sabo re: Kaul (Exhibit 10 – KAUL:0053):

**"I often heard other patients express high opinions of Dr. Kaul. Both his patients and his staff expressed immense respect for his abilities, and this was evident to me from the professional, yet friendly environment that I experienced while under the care of Dr. Kaul."**

Defendant Hafner attempted on multiple occasions to manipulate Sabo into testifying against Kaul, despite the fact she knew he had improved after the surgery. Defendant Hafner attempted the same devious scheme on many of Kaul's patients, including Amanda Mrsaz, the seventeen-year-old gymnast who was interviewed with Kaul in August 2011 for NJ Channel 12 news with Dr. Derek DaSilva. This channel continues to ignore Kaul's requests for an apology for running non-stop slanderous media in the period after the April 2, 2012 suspension.

36. August 6, 2017 – Affidavit of John Zerbini re: Kaul (Exhibit 11 – KAUL:0057):

**"Hafner stated that Dr. Kaul had committed Medicaid and Medicare fraud, and asked me what insurance company had paid him for the procedure he performed on me. I told her that I had no insurance, and that Dr. Kaul had provided his services and that of his facility for free ... I believe that Hafner went into great detail about a case in London that occurred in 1999 ... told me that Dr. Kaul fled the country before the authorities had completed their investigation and had been a fugitive."**

Defendant Hafner's continued employment by the State of New Jersey is consistent with its knowing/willing/culpable participation in the commission of the massive crimes of **The Kaul Cases** Defendants. Kaul, will in due course, take ownership of its assets.

37. May 20, 2018 – Letter from Kaul to Defendant/U.S.D.C.-Newark re: Defendant Przybylski (Exhibit 12 – KAUL:0066):

**"The Board of Directors also concluded that Dr. Przybylski violated Section A.4 by misrepresenting the standard of care when he testified that antibiotic treatment ..."**

**The Kaul Cases** Defendant Przybylski testified that every aspect of the care Kaul delivered to his patients constituted a **"gross deviation"** from the standard of care. Ninety percent (90%) of his practice is devoted to making money from testifying against other physicians and medical politics. The remainder (10%) is spent in clinical care.

38.     June 18, 2018 – Letter from Kaul to Defendant Murphy (Exhibit 13 – KAUL:0075):

**"On May 24, 2018 I filed a complaint against Przybylski with the Wisconsin Medical Board that included a copy of the aforementioned disciplinary notice (Exhibit 10}. Przybylski admitted under cross-examination on May 6, 2013 that there are no specific standards that pertain to the performance of lumbar fusions. This contradicted his prior written and oral testimony, which he provided under oath with knowing falsity. It has therefore been established that there are no commonly accepted standards for the performance of lumbar fusions, and thus your report that my care deviated from such a standard is contradicted by legal precedent. You might not have known this fact when you agreed to provide an opinion against me, but you do now, and if you chose to ignore this fact, then I will ensure your misconduct comes to the attention of the American Association of Orthopedic Surgeons, the Yale New Haven Medical Center and the Connecticut Medical Board.**

**I hope, Dr. Murphy, that as a member of the medical profession you understand the serious consequences of your actions in court, and particularly those that involve the provision of testimony under oath. This case is frivolous and is a direct consequence of the professional jealousy and political corruption that caused the illegal revocation of my license. Kaul v Christie is a case with conclusive evidence, that I firmly believe will be successful, and once the claims have been proved I will move to have undone all of the frivolous malpractice lawsuits that were decided against me. I will also move to have disciplinary proceedings instituted against the**
**'experts' involved in these cases, of which you were one.**
**I hope you give this letter the serious consideration it deserves, and thoughtfully weigh the professional exposure to which you will be subjected, should you decide to testify."**

39.     June 27, 2018 – Letter from Kaul to Marna Borgstrom, CEO Yale New Haven Health System (Exhibit 13 – KAUL:0079):

**"Murphy's written and pre-trial oral testimony was provided both in the context of his professional association with the Yale New Haven Health System, and while he was physically on the premises of the hospital. Murphy used this association to bolster his fraudulent testimony and manufacture a clinical standard that he knew was false, and it was from this false standard that he claimed my care had deviated. Murphy's dishonest testimony, under the doctrine of Respondent**

Superior and general theories of various liability, has caused the Yale New Haven Health System to become liable for his unlawful conduct, and the damage it caused to my economic and professional standing."

**40.** June 30, 2018 – Case Numbers: Allstate v Kaul (AM-000723-16T4) + Kaul v Kaul (A-2201-16T1) + Park v Kaul (A-004575-16T3): Letter from Kaul to NJ Chief Justice Stuart Rabner

**"Dear Chief Justice Rabner,**

**I write this letter in furtherance of my request, detailed in a letter dated April 27, 2018 (copy enclosed), that New Jersey Administrative Law Judge, Jay Howard Solomon and New Jersey physicians, Gregory Przybylski, MD and Andrew Kaufman, MD, be referred to the Department of Justice and the Office of the New Jersey Attorney General, for having collectively committed <u>two hundred and seventy-eight (278) separate instances of perjury and evidential omissions, misrepresentations and gross mischaracterizations</u>. These individuals committed these offenses in a state administrative proceeding that commenced on April 9, 2013, concluded on December 13, 2013 and resulted in the illegal revocation of my New Jersey medical license. A letter was sent to each of the seven (7) Justices of the New Jersey Supreme Court (copies enclosed).**

**On or about May 13, 2018, I received a letter, dated May 11, 2018, from the Clerk, with the subject title, 'Re: Letter to Justice LaVecchia dated April 27, 2018' (copy enclosed). The unsigned letter informed me that <u>no action would be taken</u>, unless and until the New Jersey Appellate Court entered an order or judgment in a case that involved me. This condition has now been met in three (3) cases:"**

The NJ Court failed to refer the matter for investigation to either state/federal authorities, as the Court had conspired with the State of New Jersey against Kaul, in aiding/abetting its conversion into a **"racketeering enterprise"** by <u>The Kaul Cases</u> Defendants in collusion/conspiracy with the executive branch of the State.

**41.** August 11, 2018 – Case Number: 19-49-007483 – IN THE MATTER OF THE APPLICATION FOR LICENSE TO PRACTICE AS A MEDICAL PHYSICIAN AND SURGEON OF RICHARD ARJUN KAUL, MD (IN PENNSYLVANIA): Letter from Kaul to PA Governor, Thomas Wolf:

**"This letter stems from an application for medical licensure that I submitted on September 22, 2017 to the Pennsylvania Medical Board ("PMB"). The PMB allowed itself in approximately March 2018, to become entangled in a racketeering conspiracy and scheme that commenced in approximately 2008 in New Jersey that involves, amongst others, the New Jersey Board of Medical Examiners ("NJBME") and ex-Governor, Christopher J. Christie. The facts and circumstances of these schemes are detailed in two lawsuits that I filed in the**

United States District Court: (i) Kaul v Christie, et al: 16-CV-02364; (ii) Kaul v Christie et al: 18-CV-08086

On July 24, 2018, the PMB denied my application for licensure, notwithstanding the fact that it I had provided overwhelming evidence that state actors and agencies, involved in the revocation of my license, had engaged in an eight-year (8) campaign of Racketeering, Perjury, Obstruction of Justice and Evidence Tampering (**Appendix 5**)."

Kaul submitted an overwhelming amount of evidence to K11-1 Defendant PMB regarding the crimes of **The Kaul Cases** Defendants, but Defendants Allstate/Hafner/Christie/Kaufman continued their **"pattern of racketeering"** into the State of Pennsylvania, by converting Defendant PMB into a **"racketeering enterprise"** through which it committed the RICO predicate acts of mail fraud/wire/fraud/conspiracy/obstruction of justice/coercion, the latter being exacted by it and the **"FC"** threatening Defendant PMB that its legitimate orders would be ignored in other American states. Defendant NJBME and **"FC"** knew its threat constituted/constitutes a violation of the Commerce Clause and usurped/usurps federal authority. Defendant NJBME/Hafner and **"FC"** are continuing to commit this crime across the United States against thousands of physicians, in order to expand their control/power of the business of so-called physician regulation/certification, in order to generate further billions in profit and further subjugate/control the physician workforce to serve for-profit healthcare corporations, such as **The Kaul Cases** Defendants Allstate/Geico and the corporations that invest in them.

42.    August 12, 2018 – Case Numbers: Allstate v Casatelli (UNN-L-1762-12) + Allstate v Kaul (UNN-L-322-15) + Santos v Kaul (UNN-L-3322-15): Letter from Kaul to NJ State Court Judge, Mark P. Ciarrocca:

**"Dear Judge Ciarrocca**

**I write this letter to bring to the Court' attention two issues that have come to my attention within the last twenty-four (24) hours, that I believe will effect the judicial administration of the above matters. These issues support an argument that I have been advancing since June 2012, that the administrative and state judicial apparatus in New Jersey is corrupt and has engaged against me, in a six (6) year campaign of Obstruction of Justice and Evidence Tampering. This argument is the reason I sought the United States District Court, Southern District of New York as the venue for Kaul v Christie (16-CV-02364-Filed February 22, 2016), and is the reason I am moving in the Second Circuit Federal Court of Appeals, to have Kaul v Christie (18-CV-08086- Filed April 9, 2018) remain in the Southern District of New York."**

**"On August 11, 2018 I discovered that the audio file had been truncated, and that it stopped at a point just before the commencement of argument regarding**

**Allstate's motion for default judgment, this being the segment in which I raised the issue of political corruption in the Christie administration."**

The state court judge failed to refer the crimes of **The Kaul Cases** Defendants to investigative/prosecutorial authorities, as he was aiding/abetting the crimes by attempting to provide cover through tampering with court recordings, that contained evidence that incriminated Defendant Christie. The judge was appointed to the bench by Defendant Christie.

**43.** September 20, 2018 – Case No. Kaul v Stolz: 18-CV-01489:

**"This case is a massive Fraud on the Court, in which the trustee, Daniel Stolz and his co-conspirators (Mark Manigan, Esq + Henry Bloom + Eric Katz, Esq + Sean Callagy, Esq + Darry Neier, CPA + Atkins + William Speed) converted the United States Bankruptcy Court into a racketeering enterprise, that through the commission of the predicate acts of bribery + fraud + extortion + embezzlement + kickbacks + mail fraud + wire fraud, advanced their criminal scheme to defraud the estate+ creditors of $45 million owed in accounts receivable.**

**Wasserman received a letter from Kaul, dated December 15, 2015, in which Kaul warned him that if evidence emerged that he had engaged in criminal conduct, then Kaul would have him held criminally liable. He died eight (8) weeks later. During this case two of the doctors that worked for Kaul died. Korean anesthesiologist, Dong Kwak died in late 2017, after suffering several heart attacks and strokes consequent to the stress associated with ..."**

**The Kaul Cases** Defendants continued their **"pattern of racketeering"** into the United States Bankruptcy Court for the District of New Jersey, through the commission of the RICO predicate acts of trustee/judicial bribery and mail/wire fraud and obstruction of justice. This court, as with every other court within the geographic boundaries of the State of New Jersey was converted into a massive **"racketeering enterprise",** from which illegal judgments were rendered (June 17, 2013 to July 30, 2020), which were then entered on the court record of all courts within not just the United States, but the world. **The Kaul Cases** Defendants have committed a 'Fraud on the World Court' and are thus liable in international courts.

**44.** September 21, 2018 – Case Numbers: Kaul v Christie (16-CV-02364 – K1) + Kaul v Christie (18-CV-08086 – K2): Affidavit of Dr. Arnold Erwin Feldman (Exhibit 13 – KAUL:0081):

**"There is a doctor in New Jersey, Richard Kaul, who is performing fusions, but they are going to get him."**

**The Kaul Cases** Defendants commenced conspiring against Kaul in 2005, after he had performed the first ever outpatient minimally invasive spine fusion, using a percutaneous technique he invented, as demonstrated in the above video. Their

motivation, other than greed, was pure arrogance and a belief that their crimes would not be exposed, and even if Kaul initiated legal action, they had corrupted/controlled the judges within administrative/state/bankruptcy/federal courts within the geographic boundaries of the State of New Jersey, and his cases would be quashed out of the public eye. They also believed that Kaul would never have his story told, as the media had been corrupted/controlled, and that he would be rapidly bankrupted and just, as stated in April 2021 by the Office of the NJ AG, **"pack his bags and leave"**. No license, no money, no friends, no livelihood, no place to live, no place to sleep, no car, no food, no possessions and a reputation forever destroyed. **The Kaul Cases** Defendants stole everything, except Kaul's determination and doggedness to bring these individuals to justice, not just for himself, but for every human whose life they have destroyed, and to show the public, that in America it doesn't matter what title you possess, how much money you make or what friends you believe you have, nobody is above the law, from the President of the United States to the CEOs of publicly traded corporations. Nobody is **"too big to fail"** (UK-1777 re: Monarchy view of British rule of America: US-2008 re: US mortgage fraud) as **"the bigger they are, the harder they fall."** (US-1777 re: Colonialists view of British rule of America; Kaul-2021 re: **The Kaul Cases** Defendants convictions).

**45.**    September 24, 2018 – Case Numbers: Allstate v Kaul (UNN-L-322-15) + Allstate v Casatelli (UNN-L-1762-12) + Sica v Kaul (ESX-L-7421-12) + Park v Kaul (BER-L-7116-14) + Santos v Kaul (UNN  L-3322-15) + McLean v Kaul (ESX-L-802-14) + Economou v Kaul (BER-L-8607-13) + Kaul v Kaul (FM-18-254-06): Letter from Kaul to NJ Supreme Court Judge, Barry Albin

**"Cases 1 to 7 are a direct consequence of the illegal suspension/revocation of my New Jersey medical license (April 2, 2012 + March 12, 2014), in which defendants in Kaul v Christie: 16-CV- 02364 ("K1") + Kaul v Christie: 18-CV-08086 ("K2") committed a massive Fraud on the Court. (Kaul v Christie: 16-CV-08086: D.E. 225) as is detailed in 'The Solomon Critique'. This matter has been referred to J.P. Coney, Chief of the Fraud+ Public Corruption Unit at the Office of the US Attorney in Washington, DC, in light of its criminal nature, and will be referred to every State Attorney General."**

**I must also inform the Court that I will, in due course, be moving to have every state court judgment, that was entered against me and or my corporations, in every case that was a consequence of the illegal suspension/revocation of my medical license. I have notified the insurance carriers that paid these illegally procured judgments and have requested that that they initiate insurance fraud investigations against the plaintiffs and their respective counsel, again with a view to criminal prosecutions.**

**I will undo all of the injustices that were committed against me + my children + my estate + my reputation, that commenced in or around 2008 and continue to this day in the New Jersey State Superior Court System, in the above cases."**

**"I believe it is important for this Court to know that Defendant Christie, an individual ... almost became the President of the United States, stands accused in the International Criminal Court of having violated Article 7, Section 1, paragraph (b) of the Rome Statute of the International Criminal Court ... request that this Court refer the within matters to J.P. Coney, Chief of the Fraud + Public Corruption Unit of the Office of the US Attorney, with a recommendation that his office file criminal charges against the aforementioned defendants."**

Every judge on the NJ Supreme Court was copied, but none reported the offenses. The state court's failure to report the crimes of **The Kaul Cases** Defendants to state/federal investigative/prosecutorial authorities, constitutes claim evidence in all cases, including K11-4. The law and legal/judicial codes of conduct hold liable those who fail to report knowledge of crimes, as well as assigning culpability.

**46.** September 25 + 28, 2018 – Case Number: Kaul v Christie (16-CV-02364 – K1): Letters from Kaul to K11-3 Defendant/U.S.M.J. Mannion

**"I would request (Exhibit 1) that the Court grant my application ... (i) Arrest Warrant for Defendant Crist ..."** (September 25, 2018)

**"The defendants are responsible for these deaths [Kwak + Narag], and I will be seeking to have manslaughter charges brought against both the corporate and personal defendants."**

**... the sequence of events, in order that if Defendant Crist/counsel repeat/continue their recalcitrance and or disregard for the authority of the United States District Court, then he, upon motion, be brought forthwith to the Court by the USMS, and have published such an order in 'The Muhlenberg Weekly' + 'The Morning Call'. The former is the student newspaper for the college of which he is the Chair of the Board of Trustees, and the latter is the local newspaper for Allentown, Pennsylvania, the location of Muhlenberg College. Defendants Allstate + Crist have for many decades used the media to publicly humiliate and attack physicians, who cared for their injured clients and to whom they owe money. This pattern of misconduct would not be inconsistent with Defendant Crist having used his political and economic influence in Pennsylvania to obstruct my application for a medical license."** (September 28, 2018)

**"Finally, counsel's often repeated suggestion of a 'defense' that because Defendant Crist is no longer the head of Defendant Allstate New Jersey Insurance Company, that he therefore cannot be sued, is without merit ... regardless of his reconfigured relationship with Defendant Allstate, and by virtue of his ownership of significant stock, has a fiduciary responsibility to report shareholders that he has been named as a defendant in Kaul v Christie: 18-CV-08086 ... Counsel for Defendant Crist has accepted service. Two doctors are dead and further evidence has emerged of a conspiracy that is indeed "vast".** (September 28, 2018).

Both domestic and International law/courts hold liable any persons/parties/states that participate/profit from the proceeds of crime. Thus, any persons/parties/states within any commercial nexus to Defendant Allstate to the third degree, are subject to administrative/civil/criminal prosecution. Defendant

Defendant/U.S.M.J. Mannion failed to issue an arrest warrant, to compel **The Kaul Cases Defendant**, Richard Crist, to answer or otherwise plead. This fact constitutes claim evidence in K11-4 a fact that is consistent with **The Kaul Cases** Defendants' corruption of the legislative/executive/judicial branches of the State of New Jersey, and of federal/bankruptcy courts located within the geographic boundaries of the State of New Jersey.

**47.**    October 18 + 20 2018 – Case Number: 18-49-008536 – IN THE MATTER OF THE APPLICATION FOR LICENSE TO PRACTICE AS A MEDICAL PHYSICIAN AND SURGEON OF RICHARD ARJUN KAUL, MD (IN PENNSYLVANIA): Letter from Kaul to Counsel for The Kaul Cases Defendant, PMB:

**"The PMB and its counsel have violated their code of professional conduct, Pennsylvania state law and federal law by failing to report the crimes of K2 defendants to the Fraud + Public Corruption Unit of the United States Department of Justice, and in failing to do so have aided and abetted their racketeering and anti-trust violations."** (September 18, 2020)

**"Discovery sought … All documents and communications between The Office of the New Jersey Attorney General and the Office of the Pennsylvania Attorney General, referring or relating to Richard Arjun Kaul, his application for medical licensure in Pennsylvania and or any of the documents filed in Case 18-49-008536 for the defined period."** (September 18, 2020)

**"Provide dates for oral examination under oath of all members of the Pennsylvania Medical Board."** (September 20, 2020)

**"I understand that you and the PMB are attempting to fashion a Rooker-Feldman defense, should claims be asserted against you and the PMB in the United States District Court. With all due respect, however, your efforts are futile, as there [sic] the record/evidence indicate [sic] that I have not been afforded substantive due process. A charade of due process is an insufficient defense."** (September 20, 2018).

**"… lawsuit will be filed against, amongst others, the Federation of State Medical Boards. The action will be initiated in the United States Federal Court [sic] … and will seek to have its Interstate Agreement declared illegal. I understand that the PMB is a signatory to this agreement."**

**The Kaul Cases** Defendants have continued to conspire and have continued to obstruct justice (2018 to 2021) by failing to produce the evidence as required by law.

Obstruction of justice is a RICO predicate act. Thus, this constitutes an **"open-ended ongoing pattern of racketeering"** for which RICO is the only remedy to mitigate any further injury to the fundamental legal integrity of the entire system of American physician licensing, and the legal reputation every American state and the United States.

**48.** November 19, 2018 – Case Number: K1: Kaul v Christie (16-CV-02364): Letter from Kaul to Defendant U.S.M.J. Mannion re: RICO claim against Defendant Allstate:

**"Judge Kenneth Grispin must recuse himself because he has been the subject of two interlocutory appeals filed by Kaul since July 2017 … because his actions, words and appearance of impropriety have proved he is unable to adjudicate the matter in a fair and unbiased manner … because Kaul and Grispin became adversaries when Kaul filed for interlocutory review of Grispin's orders."**

**"Shortly after the filing of these motions, on July 31 2018 Judge Kenneth Grispin suddenly retired, and the motions were denied on August 9, 2018 by his successor, Mark P. Ciarrocca, a lawyer appointed to the bench by K2 Defendant Christie."**

The entire NJ state court system has been corrupted by **The Kaul Cases** Defendants, which is why it aided and abetted a **"pattern of racketeering"** in the Union County Court, with a well-rehearsed **"switch and bait"** type scheme. **The Kaul Cases** Defendants initiate this scheme when a litigant threatens to expose a corrupt judge and or dismantle/disrupt the commission of their crimes within the NJ state court system. **The Kaul Cases** Defendants bribed Defendant Christie, who controlled the state courts and ordered judges to violate the law and have entered a $6 million judgment against Kaul in February 2019. This fraudulent legal instrument, as with the illegal revocation (March 24, 2014) and every other NJ state court judgement, were then entered onto the record of the courts of other American states and the United States, thus depriving them of their constitutionally protected right to honest services. A felony punishable with life in jail.

**49.** November 22, 2018 – Case Numbers: K1: Kaul v Christie (16-CV-02364) + K2: Kaul v Christie (18-CV-08086): Letter from Kaul to Cliff Asness, CEO, AQR Capital Management:

**"The total monetary damages sought are in excess of $28,000 trillion, for which Allstate is liable for at least $2 trillion, a number that exceeds ten percent (10%) of their current market capitalization of approximately $33.3 billion."**

**"Allstate has failed to disclose the lawsuit in any of its quarterly 10K SEC filings. Defendant Allstate has concealed this information from its shareholders and the equities market. There are two other defendants, TD Bank, NA + Geico, both publicly traded on the NYSE, that are similarly delinquent in their 10K SEC filings."**

"... **International Criminal Court ... Defendant Allstate has become vicariously liable, consequent to having bribed Governor Christie.**"

**The Kaul Cases** Defendants failed to disclose the lawsuits to the market because they had conspired with judges in the United States District Court to have the cases dismissed and failed to consider the weakness that the licensing reciprocity element of the **"FC"** conferred on them in the context of the RICO doctrine of **"new racketeering injuries"**. Basic logic and law abandoned in an abundance of **"arrogance"** and stupidity.

50.    December 4, 2018 to March 15, 2021 – The Kaul Cases (Exhibit 14 to 22 – KAUL:0097 to 0444):

Within this three-year section of **The Kaul Cases** is evidence that leaves no question of material fact as to the proof of Kaul's claims to the requisite standard for summary judgment.

Contained within the entire evidential vault of **The Kaul Cases** is evidence sufficient to secure criminal convictions of the within Defendants.

**CONCLUSIVE EVIDENCE**:

51. February 11, 2019 – '**The Solomon Critique 2**' (Exhibit 20 – KAUL:0182 to 0342):

Evidence of the commission of hundreds of the RICO predicate acts of perjury/mail fraud/wire fraud/evidence tampering/obstruction of justice/conspiracy/subornation of perjury. Evidence of perjury by six (6) of the eleven (11) patients (all of whom improved after having been operated on by Kaul). Five (5) of the eleven (11) did not testify, but **The Kaul Cases** Defendants, Gregory Przybylski/Doreen Hafner/Jay Howard Solomon conspired to, and did defraud the court record with false testimony regarding the care they received from Kaul. This perjury was then used by **The Kaul Cases** Defendant, Jay Howard Solomon, to revoke Kaul's license and impose with Defendant NJBME an illegal 'fine' of $475,000.

**The Kaul Cases** Defendants continue to use the US mail/wires/United States District Court to transmit this knowingly illegal legal instrument as their only defense against the claims of **The Kaul Cases**, despite the fact that the evidence of '**The Solomon Critique 2**', (twenty-seven thousand (27,000) lines transcript/twenty-two thousand (22,000), which is their evidence, proves that the revocation was procured illegally and is illegal.

52. February 11, 2019 – K1 - Motion for Summary Judgment re: Allstate (Exhibit 18 – KAUL:0128 to 178):

The evidence of '**The Solomon Critique**' and '**The Solomon Critique 2**' satisfies the **"no genuine issue of material fact"** summary judgment standard. **The Kaul Cases**

Defendants have failed to contest/rebut/refute/address the claim conclusive evidence submitted in support of the motion for summary judgment.

**53.** March 3, 2021 – **The Kaul Cases** Defendants, Allstate/Geico motion for **"clarification"** (Exhibit 21 -KAUL:0343 to 0364):

This submission is conclusive evidence that **The Kaul Cases** Defendants have no defense, legally cognizable or not, to any of Kaul's claims.

**54.** March 15, 2021 – Kaul notice to SCOTUS re: Fraud on the Court/Nullity of Orders District of New Jersey (Exhibit 22 – KAUL:0365 to 0444):

**The Kaul Cases** Defendants are foreclosed from defending themselves against Kaul's claims in any court within the geographic boundaries of the State of New Jersey and are subject to default/summary judgment in the other ninety-three (93) district courts, within the geo-political boundaries of the United States of America.

26

# **Statement of Fact**

### **Fraudulent medical malpractice claims**:

55. In a period from at least 2009 to 2018, multiple lawsuits were filed against Kaul for alleged medical malpractice. The clinical notes in all of these cases evidence that there had been no malpractice, as in over ninety percent (90%) of these cases, the patients; pain/disability improved and in the remaining ten percent (10%) it remained the same. The majority of these fraudulent insurance claims were filed after the widely publicized illegal suspension/revocation of Kaul's NJ license (2012/2014) in NJ state courts corrupted/controlled by Defendants Christie/Allstate/Brown. In the period from 2012 to 2015 on at least seven (7) occasions, the Defendants defrauded Kaul's medical malpractice carriers. The theft included the following amounts: **(i)** $200,000; **(ii)** 450,000: **(iii)** 125,000: **(iv)** 425,000; **(v)** 750,000; **(vi)** 1,000,000; **(vii)** 605,000. A percentage of these monies constituted kickbacks to Defendant Christie and his political campaigns for the offices of the 2013 NJ Governor/2016 Republican Presidential nomination.

56. From 2009 to 2016, Defendants Allstate/Hafner used the US mail/wires to propagate these knowing fraudulent judgments to every state/federal healthcare agency, including the National Practitioners Data Bank.

57. These fraudulent judgments have been reported and re-reported hundreds of times over the US mail/wires and into the public domain using the media/internet.

58. On May 27, 2020, these fraudulent judgments were reported by the State of Pennsylvania, in a proposed order that granted Kaul's application for licensure. These fraudulent judgments, a perpetuation/consequence of the Defendants' crimes, constitute an obstruction of justice that will significantly impede Kaul's ability to procure medical malpractice insurance for future medical malpractice, unless made null/void with restitution of all monies to his prior medical malpractice carriers.

59. The Pennsylvania Medical Board, a defendant in K11-1, conspired/colluded with Defendants NJBME/Hafner/Allstate to continue violating Kaul's legal rights by filing an untimely order to review the May 27, 2020 order of the State of Pennsylvania. However, on February 8, 2021, **after** Kaul had filed: **(i)** a petition for a writ of mandamus in the Supreme Court of Pennsylvania (December 2, 2020); **(ii)** motion for judicial disclosure of conflicts of interest-ex parte communications; **(iii)** K11-1 (includes Defendants Pennsylvania Medical Board/Mark B. Woodland-President of PMB/University of Pittsburgh (employs member of Defendant PMB), Defendant PMB adopted in its entirety the May 27, 2020 opinion/order.

60.     The May 27, 2020, however, perpetuates the Defendants schemes in that it requires Kaul to undertake a cost prohibitive 'remediation' course, employ a physician

monitor for five (5) years, a period for which his license will remain on probation. The order is engineered to entrap Kaul and further deprives Kaul of any right to defend himself against any future arbitrary/capricious/patently illegal efforts to defraud Kaul of the property of his PA medical license. As of March 15, 2021, Kaul and Defendants PMB/Woodland/University of Pittsburgh are adversaries in the United States District Court for the Northern District of Texas (K11-1). Kaul will be moving in the Supreme Court of Pennsylvania/PA Legislature to have an independent ombudsman/committee oversee Defendants PMB/Woodland/University of Pittsburgh. The oversight/watchdog element will be incorporated into **The Kaul Act**, a piece of legislation purposed to protect physicians' constitutional right to due process, in regard to the property of their medical license.

**61.**   Since at least the late 1970s for-profit corporations (insurance/pharmaceutical/medical device/hospital) have increasingly and with lethal impunity, deprived American physicians of their legal rights/property/livelihood/liberty and on many tragic occasions, their lives (400 suicides/year). This genocidal scheme has been perpetrated in conspiracy/collusion with corrupt politicians/judges/journalists, in violation of RICO/Antitrust law and in the sole pursuit of corporate/executive profit.

**62.**   Cited below are some examples of the blatant fraud committed by the Defendants and their equally culpable clients/patients through/by/with the politico-legal apparatus of the State of New Jersey.

**63.**   **DOLORES SICA:**

**Dolores Sica v Richard Kaul, MD et al: ESX-L-7421-12** - Lawyer/Law Firm - Abbott Brown/Lomurro/Schottland Law: Judge/Court - NJ Superior Court: Essex County: Insurance Carrier - Caitlin/Rockbridge: Physician - Michael Murphy, MD: Amount of insurance fraud - Approximately $1.5 million (Kaul/Bergen Passaic Surgical Center)

July 5, 2007 - Consultation:

**"This is a 50-year-old female, who has a history that goes back approximately five to six months and is one of severe pain in the lower back, which goes into the left leg ... The patient states that walking has become difficult ... going to the bathroom also are difficult."**

March 12, 2008 - Follow-Up Consultation:

**"The patient was in today after having last been seen on 02/23/08 at which time the patient underwent the third in a series of three radiofrequency lesioning of the lumbar facet joints. The patient is having an excellent outcome to the neurotomies of the lumbar facet joints and has done very well with regards to her lower back."**

January 8, 2009 - Letter from Sica to Kaul:

"I will never forget you for your kindness and excellent work ... I hope and pray life gives you the best in life because you deserve it. Thank you again for all the help you have given me."

October 5, 2012 - Malpractice claim filed:

"Dolores Sica was caused severe injuries, causing her great pain and suffering, causing her to seek further medical treatment and incur further medical treatment ... disabling her from her normal activities ... caused to seek medical treatment ... disabled from her normal activities and employment."

In 2017, as part of Kaul's motion to vacate a default judgment, Kaul submitted a chronology of the preceding/surrounding political/legal/medical/media events.

January 11, 2017 - Sica v Kaul: Chronology of Defendants Professional Jealousy/Political Corruption/Evidence Tampering + Kaul's Professional/Personal History:

"... upper crust British accent ... widespread publicity that both attacked Dr. Kaul's reputation, and disseminated information about his assets ..."

"Dr. Kaul was credentialed by a state licensed surgical center to perform minimally invasive spine surgery. The granting of privileges was based on his qualifications, credentials, experience, peer recommendations and possession of insurance coverage. From 2002 5to 2012, Dr. Kaul obtained minimally invasive spine surgery privileges at least six (6) state licensed surgical centers ..."

"Cheryl Schwartz described how Kuren had improved after the surgery, [lumbar spinal fusion] and then decided to sue after she tripped, and a fish tank had fallen on her leg."

"The pattern is almost identical, and both cases involve neurosurgeons. Schwartz concluded the letter by stating "She did this herself and she is to blame not him. I think this is insanity.""

"So, the surgical procedures performed by Dr. Kaul in this case are commonly and ubiquitously performed by anesthesiologists, physiatrists, neurosurgeons and orthopedic surgeons. Furthermore, we have the benefit of two- and three-dimensional imaging studies taken after Dr. Kaul's procedure that show that the hardware he implanted was appropriately positioned and deployed."

"What did Heary say to you at your first appointment?" Kuren stated "He spoke to me about Dr. Kaul." The neurosurgeons regularly engaged in slanderous gossip about Dr. Kaul ..."

**"The proceeding exposed the medical board, under the Christie regime, to be a state agency that performed his political 'dirty work'. Christie used the medical board in a quid pro quo scheme with neurosurgeons …"**

**"Truth + Justice - Dr. Kaul will submit an application for a medical license in New York State."** (On February 8, 2021, the Pennsylvania Medical Board concurred with the May 27, 2020 order of the State of Pennsylvania to grant Kaul a license. In early 2021, Kaul submitted an application to the State of New York. The matter is pending. In due course, Kaul will move Governor Philip Murphy to have Kaul's NJ license reinstated with a public apology/compensation).

January 6, 2017 - Sica v Kaul: ESX-L-7421-12: K8 - Kaul CRITIQUE OF 'EXPERT' REPORTS:

Kaul submitted fact that proved the three so called 'experts' (Murphy/Skolnick/Deluty) were not qualified under the law to testify as to the standard regarding the performance of minimally invasive spine surgery:

**"Murphy is not qualified to opine because he has no education, training, experience, or qualifications in minimally invasive spine surgery … Murphy has no education, training, qualifications or experience in interventional spinal techniques. Murphy has rendered similarly flawed reports for the same counsel [Defendant Brown] in matters that were part of the plaintiff's bar 'feeding frenzy'.**

**"Sica's ongoing pain is a consequence … the two destabilizing surgeries performed with antiquated techniques, by a neurosurgeon. Sica did well after the Dr. Kaul surgery."**

February 24, 2017 - Sica v Kaul: ESX-L-7412-12: K8 - Reply to Plaintiff's opposition to motion to vacate default judgment:

Defendant Brown opposed Kaul's motion to vacate the default judgment, and thus Kaul alerted the court to crimes orchestrated by Defendant Christie/State of New Jersey, that included the felony of Evidence Tampering. In early 2017, Kaul made oral argument in front of Judge Annette Scoca. Defendant Brown's colleague, Matthew Schiappa was present

**"Within these arguments the 'excusable neglect' and 'meritorious defense' elements are substantiated by the plaintiff's allegations of forged transcripts [The Solomon Critique: K1-D.E. 225 + The Solomon Critique 2: K1-D.E. 299], corruption of public officials, racketeering, mail fraud, wire fraud, new evidence and obstruction of justice. The evidence necessary to prove these elements, as is articulated in the BRIEF, did not become available to Dr. Kaul until recently."**

February 2, 2018 - Sica v Kaul: ESX-L-7412-12: K8 - Kaul motion for summary judgment/dismissal of Plaintiff's Amended Complaint:

Kaul, cognizant of the facts that Defendant Brown had no qualified experts and the case was filed after the statute of limitations, filed a motion to have the case dismissed:

**"... either suspend or revoke Kaul's medical license ... based on the fraudulent opinions of neurosurgeons, Gregory Przybylski, MD, and interventional pain physician, Andrew Kaufman, MD, that Kaul had allegedly deviated from the standard of care because he did not possess training or board certification, in either orthopedics or neurosurgery. These two individuals also opined, with knowing falsity that the care Kaul delivered to certain patients allegedly deviated from the standard of care."**

**"Here, summary judgment is appropriate for the reasons articulated below. There are no genuine issues of material fact regarding the admitted lack of any generally accepted standard in the field of minimally invasive spine surgery, and the fact that the Plaintiff's experts pursuant to Edward Nicholas v Christopher Mynster (NJ Supreme Court - April 25, 2013) are not qualified to opine regarding the standard (even if one existed, which it does not) for minimally invasive spine surgery."**

The state court denied Kaul's motion, as it was in collusion/conspiracy with **The Kaul Cases Defendants**, which include the State of New Jersey. By 2018, Judge Scoca had removed herself from the case, recognizing the criminal liability of the matter, and was replaced by Judge Jeffrey Beacham, a jurist who used the bench to perpetuate the Defendants' crimes.

May 18, 2018 - Sica v Kaul: ESX-L-7412-12: K8 - Court Order re: scheduling of trial:

Long-time NJ state court judge, Dennis Carey, entered a trial-date order despite knowing that the revocation of Kaul's license was illegal, and with the intent of permitting Defendant Brown to introduce the revocation into evidence, in order to prejudice the jury and secure a judgment against Kaul. Defendant Brown had already received monies from the Bergen Passaic Surgical Center. Carey permitted his court to be corrupted by the Defendants.

June 18, 2018 - Sica v Kaul: ESX-L-7412-12: K8 - Letter from Kaul to Defendant Murphy re: Professional Liability + Fraud:

Kaul, recognizing that Defendant Murphy has committed a 'Fraud on the Court' and forewarned him of his liability. As a consequence of the letter, Defendant Murphy withdrew from the case.

**"The evidence in Kaul v Christie proves that the conspiracy that caused the revocation of my license of my license was conducted over a protracted period, involved multiple parties in different states, and schemes in which patients were encouraged by orthopedic surgeons and neurosurgeons to file frivolous lawsuits**

against me. If evidence emerges, as the federal case proceeds, that you were part of this conspiracy, then your name and that of your practice, will be added to the list of defendants."

"This case is frivolous and is a direct consequence of the professional jealousy and political corruption that caused the illegal revocation of my license. Kaul v Christie is a case with conclusive evidence, that I firmly believe will be successful ... move to have disciplinary proceedings instituted against the 'experts' involved in these cases, of which you were one."

June 27, 2018 - Sica v Kaul: ESX-L-7412-12: K8 - Letter from Kaul to Marna P. Bergstrom, CEO, Yale New Haven Health System re: Fraud Complaint against Michael Murphy, MD:

Kaul noticed the Yale New Haven Health System, one that conducts healthcare business with Defendant Murphy, of its vicarious liability.

"Murphy's knowingly fraudulent 'expert' testimony caused a number of these frivolous cases to be settled by my insurance carrier, with whom I have filed a complaint regarding the fraud and perjury committed by Murphy, the patient[s] and their lawyers."

"Murphy continues his misconduct to this day, despite having been forewarned of its serious consequences."

July 23, 2018 - Sica v Kaul: ESX-L-7412-12: K8 - Letter from Kaul to NJ state court judge, Dennis Carey, III re: adjournment of trial:

Kaul, having procured an expert in the field of minimally invasive spine surgery, did inform the Essex County Court and Defendant Brown, with a request for an adjournment of the trial.

"... I sent Plaintiff's counsel an email that informed him that I would be submitting a letter on Monday July 23, 2018 ... I have received no response."

July 27, 2018 - Sica v Kaul: ESX-L-7412-12: K8 - Court Order re: scheduling of trial:

The court, corrupted by the Defendants, and in seeking to have expedited a judgment against Kaul, did adjourn the trial by only four weeks, in full knowledge that Sica had not been produced for discovery and it would be impossible for Kaul to prepare for trial.

64.   **LAURA MCLEAN:**

**Laura McLean v Richard Kaul, MD et al: ESX-L-802-14**

Lawyer/Law Firm - Bendit Weinstock/Lomurro Law/Abbott Brown: Judge/Court - NJ Superior Court, Essex County: Physician - Michael Murphy, MD: Amount of insurance fraud - Approximately $1 million (Kaul/New Jersey Spine and Rehabilitation Surgical Center)

March 30, 2012 - Lumbar Interbody Spinal Fusion:

The clinical evidence substantiated the need for surgery.

**"The patient is a female in her 50s who was initially consulted on April 3, 2012 having sustained injuries to her cervical and lumbosacral spine."**

April 10, 2012 - Consultation:

The follow-up note indicated that the surgery had improved the patient's condition.

**"The patient ... is doing very well with an improvement of symptomatology in the lower back and the legs ... The patient is making excellent progress in the postsurgical phase."**

In 2014, Defendant Brown submitted a knowingly false legal instrument into a corrupted state court, purposed to defraud Kaul's medical malpractice carrier.

In early 2017, Kaul made oral argument in front of Judge Annette Scoca in support of his motion to vacate a default judgment. Defendant Brown's associate, Matthew Schiappa was present with his client, Laura McLean. The latter individual briskly walked into the courtroom and upon the judge entering, she did rapidly move from the sitting to the standing to the sitting position. It was at this hearing that Kaul informed Judge Scoca of the falsification of the opinion (December 13, 2013) of **The Kaul Cases** Defendant/NJ OAL Judge, Jay Howard Solomon. Judge Scoca appeared to be shocked and asked Kaul: **"Do you have evidence?"** to which Kaul responded **"Yes"**. Schiappa, despite knowing that of **The Kaul Cases** Defendants crimes, characterized as **"specious"** this irrefutable fact, that of evidence tampering.

### 65.   **FRANCES KUREN:**

### **Frances Kuren v Richard Kaul, MD et al: BER-L-2867-11**

Lawyer/Law Firm - John Hoyt/Hoyt + Hoyt: Judge/Court - NJ Superior Court: Bergen County: Physicians - Defendant Kaufman/The Kaul Cases Defendant, Gregory Przybylski, MD: Amount of insurance fraud - Approximately $2 million (Kaul/Bergen Passaic Surgery Center)

April 4, 2008 - Initial Consultation:

Kaul documented Kuren's severe pain/disability at the initial consultation.

**"... the patient has continued to experience back and leg symptomatology, which is most likely attributable to ongoing intervertebral and lumbar facet pathology."**

August 8, 2008 - Follow-Up Consultation:

Kaul's surgery caused a diminution in Kuren's pain/disability.

**"The patient comes in today after having undergone a revision of lumbar interbody fusion ... the patient seemed to be doing very well ... patient seems very happy with the outcome of the surgery ..."**

In 2006 Kuren was operated on by orthopedic spine surgeon Arash Emami, whose fusion surgery failed and caused nerve damage that resulted in Kuren developing a foot drop/persistent pain. Kaul was revising this failed operation. Emami was recruited by Defendant Hafner to testify against Kaul in the administrative proceedings (April 9 to June 28, 2013) that resulted in the illegal revocation of his license (March 24, 2014).

October 27, 2010 - Malpractice Claim Filed:

Kuren was encouraged by The Kaul Cases Defendant, Robert Heary, MD (neurosurgeon) to file a complaint/lawsuit against Kaul with **The Kaul Cases** Defendant, NJBME, and in the NJ Superior Court. Kuren's lawyer submitted a knowingly false legal instrument that defrauded the medical malpractice carriers of Kaul/Bergen Passaic Surgical Center of almost $2 million.

**"In or about 2008 defendants rendered medical care to plaintiff. The medical care rendered by defendants fell below accepted standards of medical care and deviated from the accepted standards of care. As a direct and proximate result of such deviations, plaintiff was severely injured, was caused to expend great sums to remedy her resultant medical conditions and remains severely injured and damaged."**

Kaul obtained surveillance footage of Kuren that showed her conducting activities she/her lawyer had falsely claimed Kaul's surgery had prevented her from doing so. On September 17, 2009, Cheryl Schwartz, an acquaintance of Kuren/patient of Kaul submitted a letter to **The Kaul Cases** Defendant, NJBME, who had commenced an investigation of Kaul ordered by Defendant Christie, who had received bribes from, amongst others, **The Kaul Cases** Defendant Heary and **The Kaul Cases** Defendant, Congress of Neurological Surgeons, all purposed to eliminate Kaul from the American minimally invasive spine surgery market, in order to illegally monopolize it, along with **The Kaul Cases** Defendants, Atlantic Health System/University Hospital.

January 15, 2013 - Kuren v Kaul: BER-L-2867-11 - K8: Letter from Juliana Barno Spitzer, Esq to Kaul re: K1/K2/K5/K11-2 Defendant Heary obstruction of justice:

34

**"This issue was raised with Judge Slomenski ... regarding Dr. Harry so the Court can enter an Order compelling Dr. Heary to appear at the courthouse for his deposition or a Bench Warrant will be issued for his arrest."**

Defendant Heary, after having conspired with Kuren and many of **The Kaul Cases** Defendants to have Kaul's license revoked and have initiated schemes to recruit Kaul's patients to sue him, did then conspire with politicians/lawyers/judges to obstruct justice and further violate Kaul's constitutionally protected right to due process, while having adopted the color of state, consequent to a **"symbiotic"** relationship with state actors.

In a period from late 2012 to the present, Defendant Heary, in collusion/conspiracy with the NJ state government and medical board/administrative/state/bankruptcy/federal courts within the geographic boundaries of New Jersey has evaded justice.

In June 2013, Kaul served Defendant Heary with a subpoena to testify in the NJ OAL, but he failed to appear (June 27, 2013) and **The Kaul Cases** Defendant Solomon refused to enter an order compelling him to appear and then promptly closed the case on June 28, 2013.

In 2020, in K5, Defendant Heary conspired with K11-1 Defendant/Senator Cory Booker to have the United States District Court for the District of Columbia enter an order that prevented Kaul from prosecuting Heary.

On March 3, 2021, **The Kaul Cases** Defendants filed a motion in K5 in the United States District Court for the District of New Jersey-Newark (Defendant in K11-1) in front of U.S.D.J. Vazquez (Defendant in K11-3) that seeks to have an order entered that absolves the Defendants of their legal obligation to respond to claims filed by Kaul in other courts of the United States District Court.

**The Kaul Cases** Defendants are defenseless and guilty of the levied charges. The testimony of any one of **The Kaul Cases** Defendants/their co-conspirators/Third Party Witnesses, will irrefutably prove their guilt to a criminal standard.

March 22, 2013 - Kuren v Kaul: BER-L-2867-11 - K8: Letter from Juliana Barno Spitzer, Esq to Kaul re: arrest warrant for K1/K2/K5/K11-2 Defendant Heary:

Defendant Heary, after having conspired with Kuren to have Kaul's license revoked, obstructed/ignored court orders for his deposition. Kaul, having become aware that Defendant Heary was central to the conspiracy, moved to have him arrested/deposed:

**"After the arrest, the court will then set a date for Dr. Heary's testimony."**

Defendant Heary's state lawyer produced him for deposition in late 2013, after the conclusion of the hearing in the NJ OAL (April 9 to June 28, 2013), but before K2/K5/K11-2 Defendant/NJ OAL Judge Jay Howard Solomon rendered his fraudulent opinion (December 13, 2013). Kaul attended the deposition with his lawyer, who had

retained a court videographer. Kuren's lawyer, John Hoyt, became very agitated about the filming and screamed:

**"This is not Dr. Kaul's fucking deposition"**

Defendant Heary appeared extremely anxious, and Hoyt demanded the videographer be removed. He then began his examination of Defendant Heary, who testified that Kaul's use of unilateral facet screws was within the standard of care, a statement that contradicted/undermined the testimony/reports (April 2, 2012 to June 28, 2013-BDS-08959-12) provided by K1/K2/K5/K11-2 Defendant/neurosurgeon, Gregory Przybylski, MD that Kaul's placement of unilateral facet screws allegedly constituted a **"gross deviation"** from the standard of care. This fraudulent testimony was incorporated by Defendant Solomon into his knowingly illegal order to revoke Kaul's license.

On March 22, 2013, Kaul filed a lawsuit (BER-L-2256-13) against: **(i)** Robert Heary, MD (neurosurgeon); **(ii)** William Mitchell, MD (neurosurgeon); **(iii)** Frank Moore, MD (neurosurgeon); **(iv)** Gregory Przybylski, MD (neurosurgeon): (v) Peter Carmel, MD (neurosurgeon), the thrust of which pertained to a massive conspiracy to illegally eliminate Kaul.

The case was dismissed on November 15, 2013 for lack of prosecution as Kaul's then lawyer, John Whipple, unexpectedly withdrew from the case and Kaul was unable to find another lawyer willing to litigate the matter. In retrospect it would have made no difference as Defendant Christie had converted the judicial arms of the State of New Jersey into a **"racketeering enterprise"**, that he exploited in furtherance of his political ambitions. Defendant Christie's **"pattern of racketeering"** within state/federal investigative/prosecutorial agencies commenced in the late 1990s and involved an abuse of power in which he entrapped his political opponents in sting operations that he used to extort money/political favors under threat of incarceration. Democratic politician, Lou Manzo, was one such individual. In 2014 he published a book entitled: **"Ruthless Ambition: The Rise and Fall of Chris Christie"**. An article published on April 27, 2014 in the Hudson Reporter, states:

**"From the beginning, Manzo's legal team contended that the charges were part of a conspiracy by some members of the U.S. Attorney's office to get Gov. Christopher Christie elected governor, something Christie's office denies. The Republican governor had been the U.S. Attorney in New Jersey at the launch of the investigation, and many of the people who were involved with it have moved on to work under him when he was elected governor in November 2009. Almost all of the politicians arrested in the sting were Democrats."**

In a period from late 2012 to 2013, Defendant Christie perpetrated the RICO predicate act of the trafficking of chemical weapons to Syrian rebel forces, in violation of NJ state law/US federal law/international law (Rome Treaty). On October 15, 2020, Defendant Christie admitted to knowing that these agents would be, and were used, to murder in the most horrific manner innocent children/women/men in the 2011 Syrian civil war. On

November 11, 2015, the International Criminal Court in The Hague became aware of these crimes, and in a seemingly unrelated factual matter, it extended its jurisdiction to investigate war crimes committed by the State of Israel against Palestinians. That jurisdiction, as its international mandate authorizes, extends to persons who have committed crimes against humanity in signatory states, of which Jordan is one. The Port of Aqaba in Jordan was the entry point of the chemical weapon components. On April 28, 2013 in the London Independent, its chief Middle East correspondent, Robert Fisk stated:

**"And if we mention Saddam's chemical weapons, there's another glitch: because the components of these vile weapons were manufactured by a factory in New Jersey and sent to Baghdad by the US."**

On October 16, 2017, Kaul sent a letter to NJ Governor candidate, Phillip Murphy, that requested he have Defendant Christie investigated if he were to become Governor. In the letter Kaul states:

**"I will continue to pursue and publicize this issue until I find the truth, and as suggested in the letter from the ICC, I intend on contacting international authorities to have the matter independently investigated. I hope that if you become the Governor, you will employ state resources to ascertain the culpability of the named offenders. These heinous crimes must not go unpunished, and I will not rest till those responsible are brought to justice."**

Murphy has not investigated these crimes.

### 66.   **MARIETTA ERNST:**

#### **Marietta Ernst v Richard Kaul et al: OCN-L-2256-12:**

Lawyer/Law Firm - WEISS & PAARZ: Pamela Brown Jones: Judge/Court - NJ Superior Court, Ocean County: Physician - Defendant Murphy: Amount of insurance fraud - Approximately $500,000 (Kaul/New Jersey Spine and Rehabilitation Surgical Center)

August 17, 2010 - Lumbar Interbody Spinal Fusion

Kaul noted the clinical evidence in support of his recommendation for a minimally invasive lumbar fusion, to which Ernst consented.

**"The patient was seen at consult on October 20, 2009. The patient has been evaluated and has persistent low back and leg pain which has not improved with conservative treatment."**

July 5, 2011 - Consultation:

Ernst improved after the successful surgery.

**"The patient comes in today after having last been seen on 05/30/2011 at which time the patient was doing very well status post lumbar interbody fusion at the L3-4 level."**

Ernst gave a video testimonial in which she stated:

<u>(2) Dr. Kaul - YouTube</u>

**"My life now feels complete because I can do whatever I want to do."**

<u>July 23, 2012 - Malpractice claim filed</u>:

Ernst, having been recruited by Defendant Hafner, was referred to a so called 'politically connected' law firm, that then used the US mail/wires to transmit a knowingly fraudulent legal instrument, that was submitted into the apparatus of the American legal system, an act that constitutes a 'Fraud on the Court' and an ongoing **"racketeering injury"** to Kaul. This fraudulent judgment, as with every other, was reported to the National Practitioners Data Bank and is cited in the May 27, 2020 opinion issued by the State of Pennsylvania. (the order/opinion is published on a state issued document, that is now in the public domain). Kaul's malpractice carrier was defrauded consequent to a massive **"racketeering"** scheme orchestrated by Defendant Christie and perpetrated through the State of New Jersey, in collusion/conspiracy with <u>**The Kaul Cases**</u> Defendants.

**"Defendants Kaul, Lager, Datta and Shahid were negligent in their care and treatment of the plaintiff and or deviated from the applicable standards of care during the time each provided care to the plaintiff ... The above said deviations and negligence by defendants Kaul, Lager, Datta and Shahid were a proximate cause of severe and permanent neurological and physical damage to plaintiff, and/or substantially increased her risk of same, as well as causing her to incur losses, damages and expenses with respect thereto."**

67.   **PATRICIA MAZE:**

**<u>Patricia Maze v Richard Kaul et al: ESX-L-10253-10</u>**

Lawyer/Law Firm - John Hoyt/Hoyt + Hoyt: Judge/Court - NJ Superior Court: Essex Physician - Defendant Kaufman/**The Kaul Cases** Defendant Przybylski: Amount of insurance fraud - approximately $2 million (Kaul/Bergen Passaic Surgical Center)

<u>November 21, 2008 - Lumbar Interbody Spinal Fusion</u>:

Kaul identified the clinical evidence on which his treatment plan was based.

**"The patient was initially consulted on 11/08/2007. At that time, she was a 44-year-old female ... continued to experience back and leg symptomatology and at her**

**initial consult had positive neurological and musculoskeletal findings which supported the recommendation for the lumbar discogram."**

January 8, 2009 - Consultation:

Maze improved after Kaul had performed a minimally invasive lumbar fusion.

**" .. has been significant improvement in her lower back and leg symptomatology and that she seems to be making a significant improvement in her condition."**

December 14, 2010 - Malpractice claim filed:

Maze, a friend of Kuren, was similarly encouraged by Kaul's competitors to file a knowingly fraudulent lawsuit and submit a complaint to **The Kaul Cases** Defendant, NJBME. Maze, as with Kuren, was told by her lawyer, that the State of New Jersey/NJ AG were planning to revoke Kaul's license, and that he would not be in a position to contest the claims, a claim from which she knew she would illegally defraud Kaul's medical malpractice carrier.

**"As a direct and proximate result of such deviations, plaintiff was severely injured, was caused to expend great sums to remedy her resultant medical conditions and remains severely injured and damaged."**

Maze and her lawyer became unjustly enriched in late 2013/early 2014.

**Fraudulent claim by State of New Jersey/Defendants NJBME/Hafner/Kaufman and The Kaul Cases Defendant, Gregory Przybylski/Jay Howard Solomon re: Kaul lack of qualifications to perform minimally invasive spine surgery:**

### 68. **STATE OF NEW JERSEY v RICHARD ARJUN KAUL: BDS-08959-2012:**

March 25, 2012 - Letter from Defendant Kaufman to K2/K5/K11-2 Defendant Hafner re: standard of care:

In approximately 2006, Defendant Kaufman commenced conspiring with **The Kaul Cases** Defendants to have Kaul's license revoked and attempt to eliminate him from the practice of medicine, for no reason other than professional jealousy, and did, on March 25, 2012, use the US mail/wires to submit a knowingly fraudulent report to Defendant Hafner.

In the report, Defendant Kaufman did falsely state:

**"… in performing total discectomies as well as fusions with the use of pedicle screws in both the lumbar spine and cervical spine has overstepped the bounds of Interventional Pain Management and as such has put patients at great risk.**

**This would be considered a gross deviation in the accepted standards of medical practice."**

Defendant Kaufman submitted this sworn statement with full knowledge of its falsity. The standard of care is determined not by education/training/qualifications/ but by how the procedure is performed. To perform a lumbar spinal fusion requires that the degenerated intervertebral disc be removed and replaced with either a bone graft and or a synthetic implant. It is also required that there be some form of postoperative spinal immobilization, in order for the spine to fuse. This can be achieved with either an external brace or internal construct, such as pedicle/facet screws. Kaul performed all of his spinal fusions according to these requirements. Defendant Kaufman knew this, as he reviewed the records of the patients about whom Kaul had testified on February 3, 2010, but he lied:

**"I have been asked to review the following documents ... Dr. Kaul's C.V. Transcript of meeting with NJ Board of Medicine February 3, 2010 ... Patient Records: George Housman, Sherita Lawson, Kenneth Sabo, Stephen Siefried, Tara Zetterberg."**

November 16, 2015 - Letter from Kaul to K2/K5/K7 Defendant, William Roeder:

The central principle of the equal protection clause of the United States Constitution pertains to equality of treatment/rights under the law. **The Kaul Cases** Defendants knowingly/willfully violated Kaul's rights, in that there were many other minimally invasive spine surgeons who had been performing and continue to perform minimally invasive discectomies/fusions in the State of New Jersey. There were also, and there continue to be, many minimally invasive spine surgeons who have far less successful clinical records than Kaul and far greater complication rates. In the period from 2002 to 2012, Kaul performed approximately eight hundred (800) minimally invasive spine surgeries with good to very good outcomes in 90-95% of cases (average is 65-70%) with a complication rate of 0.1% (average is 5-15%). In March 2005, Kaul performed the first outpatient minimally invasive lumbar spinal fusion, through the use of a novel technique he invented. This technique, in 2021, is the global standard of care.

Below are links to some of the fusion procedures performed by Kaul:

(2) NJSR - Richard Raebiger - YouTube

(2) Percutaneous Lumbar Fusion - YouTube

(2) Gina Arnone - New Jersey Spine and Rehabilitation - YouTube

(2) News 12 New Jersey: Dr. Richard A. Kaul - YouTube

Kaul established that **The Kaul Cases** Defendant, NJBME, applied a different standard to **The Kaul Cases** Defendant, Heary, as this individual has for many decades

participated in schemes of public corruption with NJ state/federal politicians, including Defendant Christie. In a letter sent to the executive director of Defendant NJBME, Kaul provided the State of New Jersey an opportunity to prove it was in compliance with the law. It proved it was not, in not having taken any licensing action against **The Kaul Cases** Defendant, Heary, who lied to a patient he turned into a quadriplegic through his gross incompetence. Kaul was attacked because he was successful, a direct consequence of his superior competence, while Defendant Heary continues to receive $3.1 million from the State of New Jersey, in addition to tens of millions of dollars from his private practice. Kaul did not bribe politicians/judges, while that is the modus operandi of many of **The Kaul Cases** Defendants. In the letter, Kaul states:

**"I would like to file a formal complaint against New Jersey neurosurgeon Dr. Robert Heary for using his professional neurosurgical societies to bribe Christopher J. Christie in 2010 to have the New Jersey medical board revoke my license."**

**"Robert Heary should have been disciplined in 2002 after he lied about his qualifications to patient Joseph Howard, who he then paralyzed from the neck down through his grossly negligent surgery ... $5.2 million verdict for the thirty-five-year-old man."**

**"I believe these documents are relevant to the political corruption that now clearly defines Christopher J. Christie and, without whom, Dr. Robert Heary could not have perpetrated his crime."**

Kaul received no response to the letter and no action was taken against Defendant Heary. **The Kaul Cases** Defendant, Roeder, testified against Kaul on May 23, 2013.

### Fraudulent $6 million Allstate Judgment Against Kaul + Uncontested Facts Regarding Defendants Corruption of NJ State Court System

**69.**     Commencing in 2018, Kaul submitted a series of letters into the state court system, that sought the crimes of **The Kaul Cases** Defendants be referred to state/federal investigative/prosecutorial authorities. The crimes were NOT reported and the only response Kaul received (May 11, 2018) from the NJ Supreme Court was to inform him that no action would be initiated until the within referenced cases were filed in the appellate court. The law mandates otherwise and obligates any person/agency/court to refer a case when there exists probable cause that a crime/s have been committed. The reason for the refusal to refer was that the Defendants had/have corrupted the NJ Supreme Court.

The evidence underpinning the irrefutable facts is as below:
April 27, 2018 - Letter from Kaul to NJ Supreme Court Justice, Barry Albin:

**"Fraud on the Court ... The purpose of this letter is to request that this Court refer this matter to the Department of Justice and the Office of the New Jersey Attorney General, as it constitutes a Fraud on the Court, that must lead to the criminal convictions of Jay Howard Solomon, Gregory Przybylski and Andrew Kaufman."**

May 11, 2018 - Unsigned letter from the NJ Supreme Court to Kaul:

**"... this Office will be taking no action with your papers."**

June 30, 2018 - Letter from Kaul to NJ Supreme Court Justice, Barry Albin:

It should be noted that Geri Albin, Esq, is a partner with the law firm of Saiber, LLC, the firm that represents **The Kaul Cases** Defendant, Allstate Insurance Company.

**"On or about May 13, 2018, I received a letter, dated May 11, 2018, from the Clerk, with the subject title, 'Re: Letter to Justice LaVecchia dated April 27, 2018' (copy enclosed). The unsigned letter informed me that no action would be taken, unless and until the New Jersey Appellate Court entered an order or judgment in a case that involved me. This condition has now been met in three (3) cases:"**

**"The testimony details misconduct of public servants who held senior positions within the Office of the Attorney General and alludes to their politically motivated abuse of the power of public office ... But as ... Richard Nixon and any number of other people found out, it's always the <u>cover up</u> that gets you."**

**"The canons of judicial conduct require that members of the judiciary report illegal conduct to the appropriate authorities, and do not permit themselves or their benches to participate in any <u>cover up</u> or become a party to a crime. Corruption within state courts is not an unfamiliar issue with the Department of Justice."**

The matter has still not been referred, and there continues to exist an obligation to refer the matter.

70.   September 24, 2018 - Letter from Kaul to NJ Supreme Court Justice, Barry Albin:

Defendant Brown, in collusion/conspiracy with Defendant Christie, **The Kaul Cases** Defendants and other lawyer co-conspirators (William Crutchlow, Esq/Jeffrey Quinn, Esq/Robert A. Solomon, Esq), did with knowledge of the illegality of its overall scheme to continue to conspire with state court judges to use the NJ state courts to collect unlawful debt. A violation of RICO. The Kaul Cases Defendant, NJBME, committed the same crime with their attempt to collect the illegal 'fine' of $475,000, that it imposed on Kaul on March 24, 2014, as part of its overall scheme to illegally revoke Kaul's license. The latter, in addition, violates the law set forth by SCOTUS in Timbs v Indiana. Kaul submitted a petition that caused judges within the

state court system to recognize that their facilitation of the Defendants crimes was being increasingly exposed, a recognition that caused them to withdraw from the Defendants 'crucible of corruption':

**"Fraud on the Court + Obstruction of Justice + Money Laundering + Mail Fraud + Wire Fraud ... I must also inform the Court that I will, in due course, be moving to have every state court judgment that was entered against me and or my corporations, in every case that was a consequence of the illegal suspension/revocation of my medical license."**

**"I will undo all of the injustices that were committed against me + my children + my estate + my reputation, that commenced in or around 2008 and continue to this day in the New Jersey State Superior Court System ..."**

**"I will ensure that defendants Christie + Solomon + Przybylski + Kaufman + Hafner are criminally prosecuted, be it in the United States, foreign jurisdictions or both ..."**

**"I would also request that this Court refer the within matters to J.P. Coney, Chief of the Fraud + Public Corruption Unit of the Office of the US Attorney, with a recommendation that his office file criminal charges against the aforementioned defendants."**

As of March 8, 2021, the matter has still not been referred to the US DOJ, but there continues a legal obligation to do so. The NJ Superior Court continues to act in violation of the law.

**71.** January 16, 2019 - Kaul motion for disqualification of state court judge, Mark P. Ciarrocca in Allstate v Kaul (UNN-L-322-15):

**The Kaul Cases** Defendant, Allstate Insurance Company, having thoroughly corrupted the Union County Court of the NJ Superior Court system, and having ordered its judges to perpetrate a scheme that violated Kaul's constitutionally protected right to due process, did on or about January 8, 2019 file a motion to have Judge Mark Ciarrocca, enter a default judgment.

**"Judge Mark P. Ciarrocca must be disqualified from the case because he was appointed to the bench by K2 defendant, Christopher J. Christie, and because his actions, words and appearance of impropriety have proved his [sic] is unable to adjudicate the matter in a fair and unbiased manner."**

The scheme perpetrated by **The Kaul Cases** Defendants, and orchestrated by Defendant Christie/Allstate Insurance Company, involves having corrupted administrative/state/bankruptcy/federal courts within the geographic boundaries of New Jersey, enter knowingly illegal judgments that are then propagated into the entire

43

American state/federal judiciary to provide cover for their crimes, under the guise of seemingly legitimate legal orders. The greater the crime, the greater must be the cover.

72.    January 22, 2019 - Letter from Kaul to NJ Supreme Court Justice, Barry Albin re: immediate stay on Allstate v Kaul (UNN-L-322-15):

Ciarrocca knew he had no authority to adjudicate the matter, as Kaul had filed a motion for his disqualification on January 16, 2019, but yet he continued, in knowing violation of the law, to remain in the case, under orders from Defendant Christie/Allstate, and with the understanding that his recusal would expose his participation in schemes of judicial corruption. **The Kaul Cases** Defendant, Allstate's **"pattern"** of judicial/political corruption has infected the entire State of New Jersey.

Consequent to Ciarrocca's refusal to disqualify himself, Kaul submitted a petition to the Supreme Court of New Jersey to have entered a writ of mandamus ordering his disqualification and an immediate stay on the case:

**"Enter an order that immediately disqualifies Judge Mark P. Ciarrocca from the case ..."**

**"The fraud in this matter [illegal revocation Kaul's license], one that was orchestrated by corrupt state actors under the direction of K2 defendant Christie, is truly staggering, and as Kaul has pled in both K1 + K2, some of the defendants will be criminally convicted. Kaul does not believe that there has ever been such a deeply, widely and as well-organized criminal enterprise as the one that came into being when K2 defendant Christie, turned the State of New Jersey into a racketeering enterprise ... Defendant Allstate has used the state courts to file three (3) frivolous evidence-free lawsuits against Kaul since 2006."**

Neither Albin nor the court refused/contested/rebutted/addressed the within facts, which caused an admission of their truth. Similarly, neither Albin nor any judges on the NJ Supreme Court referred the crimes (inclusive of chemical weapon trafficking) to state/federal investigative/prosecutorial authorities, because they had been co-conspirators in Defendant Christie's conversion of the State of New Jersey into a **"racketeering enterprise"**.

73.    January 25, 2019 - Order entered by Ciarrocca in Allstate v Kaul (UNN-L-322-15):

Ciarrocca, cognizant of his participation in Defendant Christie/Allstate's conversion of the NJ Superior Court system into a **"racketeering enterprise"**, did nonetheless enter a knowingly illegal judgment against Kaul. The fraudulent judgment was almost $6 million and consisted of Ciarrocca affirming Allstate's false claims that Kaul had committed insurance fraud. Allstate, having 'purchased' the Union County Court/Ciarrocca and the January 25, 2019 order, then propagated this knowingly fraudulent legal instrument across the US mail/wires into the American federal court

system, as part of their defense against Kaul's claims in **The Kaul Cases**, thus committing a massive 'Fraud on the Court'.

On March 8, 2019, Kaul filed a Notice of Appeal in the NJ Appellate Court, in which he stated:

**"Kaul filed a motion to recuse the judges, Kenneth Grispin and Mark P. Ciarrocca, based on unrefuted allegations of bribery"**

**"The Court erred when Judge Mark P. Ciarrocca failed to recuse himself, after Kaul filed a motion that alerted the Court to the fact that he had been appointed by Christopher J. Christie, Esq, the ex-governor of NJ, and an individual who is now a defendant in Kaul v Christie: 18-CV-08086.**

74.     On March 14, 2019, **The Kaul Cases** Defendant, Allstate, as part of their illegal scheme, did have the Clerk of the Appellate Court **"raise the issue"** of whether Kaul had the right to appeal, as there allegedly remained other unadjudicated claims in the case. The case thus became stalled in the lower court, to give Ciarrocca just enough time to remove himself from the matter, but not before entering a knowingly illegal judgment of almost $6 million against Kaul. On March 6, 2019, Ciarrocca was replaced by Judge Alan G. Lesnewich and a settlement conference was scheduled for April 4, 2019. **The Kaul Cases** Defendant, Allstate, through its scheme of judicial corruption obstructs/perverts the course of justice in state/federal courts within the geographic boundaries of New Jersey by co-opting the U.S.D.C(Newark)/U.S.C.A. 3rd Circuit and the Union County Court/State Appellate Court into entering orders that the corrupted judges know are purposed to obstruct Allstate's opposition from either procuring discovery and or prosecuting a case through the appellate courts. This occurred in K1, when U.S.D.J./K5 Defendant, Brian Martinotti dismissed the case on July 29, 2019, knowing that all claims had not been adjudicated and then the Third Circuit intentionally delayed its order till May 27, 2020, refusing jurisdiction, because all claims had not been adjudicated. The case, then came back under the jurisdiction of the district court (U.S.D.J./K11-3 Defendant Vazquez), who then waited till November 5, 2020 to dismiss the case, which is currently on appeal in the Third Circuit. Kaul describes this scheme in K11-3 as resembling the precept in Jean-Paul Satre's **"No Exit"**. The **"No Exit Scheme"**.

75.     On March 3, 2021, Defendants Allstate/Geico filed a decidedly unhinged motion in K11-1 Defendant District of New Jersey-Newark, in front of K11-3 Defendant/U.S.D.J. Vazquez, that seeks to have entered an order that permits Defendants Allstate/Geico from not having to respond to claims filed by Kaul in other courts of the United States District Court. Bizarrely, Defendants Allstate/Geico admit that K1 is on appeal in the Third Circuit, but yet still believe Defendant DNJ-Newark has any jurisdiction, let alone jurisdiction over the entire United States District Court. It is noteworthy that the brief was only signed by counsel for Defendants Allstate/Geico. No counsel for any of the other K1 Defendants placed their signatures on this piece of legal desperation. It is also noteworthy that Defendant/U.S.D.J. Vazquez, in full knowledge that the law prohibits

him from having any involvement in any of **The Kaul Cases**, did assign a return date for the motion. The motion and Defendant Vazquez's aiding and abetting of Defendants Allstate/Geico 'Fraud on the Court' is further evidence, if any is needed, of the proof of Kaul's claims in K11-1/K11-3, i.e., those of judicial corruption/racketeering within Defendant DNJ. Kaul will be submitting a letter into the United States District Court to establish that any orders issued by Defendant/U.S.D.J. Vazquez will have no legal weight/binding authority on any other American court (state/federal) and will be null/void.

76.     In the motion, Defendants Allstate/Geico devote inordinate resources to whining about how much money the litigation has cost/is costing them, without having provided any specifics, but conveniently and not surprisingly, choose to ignore the fact that their crimes of judicial corruption are responsible for the protracted litigation. Defendants Allstate/Geico have been 'running away' from Kaul since February 22, 2016 (K1 filed), while perpetrating massive schemes of corruption against the United States and its court.

77.     Further evidence of Defendants Allstate/Geico corruption of Defendant DNJ-Newark is found in the fact that on December 12, 2020, the United States District Court for the District of Columbia severed and transferred K5 to the DNJ-Camden (Exhibit ---), after Defendants Allstate/Geico had corrupted the judge by funneling bribes through her previous law firm, Boise/Schiller/Flexner, LLP. The Clerk of the Court transferred the case to the DNJ-Camden, which immediately entered an ORDER FOR SCHEDULING CONFERENCE, that obligated the Defendants to confer prior to the January 26, 2021 conference. However, the Defendants ignored Kaul's email requests to confer and from December 17 to 21, 2020, did submit seven (7) motions that sought to have K5 transferred to Defendant DNJ-Newark. On December 22, 2020, Defendant/Chief Judge Wolfson entered an order that she knew was purposed to aid and abet **The Kaul Cases** Defendants crimes against the United States, its Court, its People and Kaul. From December 29, 2020 to January 14, 2020, the K5 Defendants did file twenty-six (26) submissions purposed to have U.S.M.J./Defendant Dickson enter an order staying Kaul's prosecution of the case and on January 14, 2020, K5 was stayed. U.S.M.J./Defendant Dickson, having committed a knowing 'Fraud on the Court' then received an order from **The Kaul Cases** Defendants, Allstate/Geico, to remove himself from the case, an order he obeyed. The typical tactic of having a corrupted judge enter illegal orders and when the threat of exposure becomes too great, the judge is ordered to either retire/have the Chief Judge reassign him (just as the Catholic Church/Bishops/Pope reassigned perverted priests to different dioceses)/have him remove himself.

78.     The analogies between a corrupt judiciary and the Catholic Church stem, not surprisingly, from an abuse of power and the public's astoundingly blind faith in the integrity of the individuals that wear a black robe/sit on elevated benches/receive honorifics on a daily basis. A person wearing a black cassock/robe is, as with all humans, flawed, and possesses a complete download of Original Sin. The only difference between these individuals and most of the rest of humanity is that the

majority of society unquestioningly trusts them. It is this element in conjunction with the immense power society has given them that causes some of them to become criminals, just as did certain Catholic priests. The story of man's corruption by power began with the birth of man.

79.     In the motion filed in K1 on March 3, 2021 by Defendants Allstate/Geico, they submit a table that evidences their corruption of Defendant DNJ-Newark, a table that shows the absolute corruption they have wrecked on Defendant DNJ-Newark. It is also a table that shows how in their frenzied five (5) year scheme (February 22, 2016 to February 22, 2021) to obstruct justice, in order to prevent Kaul from further exposing their prior criminal acts (2006 to 2016), their increasingly desperate/corrupt practices have become a net/death trap of their own making, and one in which they have unwittingly ensnared themselves. Defendants Allstate/Geico are in an increasingly isolated position, in that they had Defendants/U.S.D.J. Vazquez-U.S.M.J. Dickson stay K2/K3/K4/K5/dismiss P1/P2, which thus restricted them to K1, a case they admit is on appeal in the Third Circuit and a case, therefore, that has no jurisdiction/authority/amendment/so called **"clarification"** power over any aspect of K1. They are in the midst of defeat and the rout, already in effect, will intensify as **The Kaul Cases** expand inexorably, into both domestic (state/federal) and international courts. **The Kaul Cases** Defendants, Allstate/Geico's pleas to want to conserve the resources of a **"sister"** court are further evidence of their judgment clouding desperation. Their only option is capitulation, a deed that will surely conserve the Court's resources.

80.     **The Kaul Cases** Defendants fifteen (15) year self-sabotaging crime spree is like the net of a fisherman, that is cast foolishly into unchecked winds, only to be blown back by the immutably unseen forces of that wind and entrap the fisherman in his own trap.

81.     Allstate's scheme/tactics of judicial/political/media/medical board corruption operate in the following manner:

82.     Allstate/Corporate Shareholders as Plaintiff/Bankruptcy Debtor - **(i)** permit physician/healthcare provider to treat clients/patients for 3-6 years; **(ii)** refuse to reimburse physician/healthcare provider for 3-6 years; **(iii)** after 3-6 years order state/federal investigative/prosecutorial authorities to initiate an administrative/civil/criminal investigation purposed to suspend/revoke professional licenses and or file criminal indictment (Allstate, through schemes of political corruption/bribery, manipulates state/federal politicians into abusing the power of public office to facilitate these investigations/prosecutions); **(iv)** ensure that all criminal investigations, in collusion/conspiracy with state/federal agencies, are conducted under the cover of administrative-medical board/civil litigation, in order to deprive physician/healthcare provider of their constitutional protections pursuant to the Fifth (5th) Amendment; **(v)** file evidence-free administrative/medical board/civil/criminal charges in courts in which the judges have been bribed; **(vi)** have the state AG issue a press release written by lawyers for Allstate, that falsely portray the physician/healthcare provider as guilty; **(vii)** have local media outlets, in which Allstate either holds shares/conducts business, publish slanderous stories/articles designed to

prejudice the public against the physicians/healthcare providers; **(viii)** have the state AG warn NJ lawyers either not to assist the physician/healthcare providers or if they do, to pressure them into settling the case, but only after they have extracted hundreds of thousands of dollars in so called 'legal fees' (the purpose is to exhaust the physician/healthcare provider financial resources); **(ix)** conspire with patients/lawyers to file knowingly false medical malpractice claims against the physician/healthcare provider as part of their strategy to overwhelm them with litigation/associated costs; **(x)** publicize and use the litigation to cause the physician/healthcare provider to become ostracized; **(xi)** use the state AG to propagate false narratives/confidential information about the physician/healthcare provider, in order to destroy the reputation of the physician/healthcare provider; **(xii)** have the corrupted judge deny all motions, including discovery, filed by the physician/healthcare provider; **(xiii)** have the corrupted judge grant all motions filed by Allstate; **(xiv)** funnel bribes to the corrupted judge each time he follows an order, thus ensuring the judge is tightly controlled; **(xv)** communicate with the corrupted judge through 'back-channel' private server systems; **(xvi)** instruct corrupted judges to withdraw from the bench or the case, if and when the Defendant files letters/motions for disqualification, based on allegations of bribery; **(xvii)** instruct corrupted judges not to disclose their financial holdings/conflicts of interest/ex parte communications to the record; **(xviii)** if judges do retire, ensure they do not disclose their crimes on the bench, by funneling work to them as partners in corrupted law firms; **(xix)** force settlement on physician/healthcare providers by initiating litigation against family/friends/employees/colleagues/acquaintances with threats/acts of license suspension/revocation and or arrest/criminal indictment/conviction/incarceration: **(xx)** if the case goes to trial, have the judge deny a jury/taint the jury with negative pre-trial publicity/have the judge restrict evidence submitted by the physician/healthcare provider/deny the physician/healthcare provider the right to depose corrupted politicians, and or the insurance executives/lawyers involved in bribing them; **(xxi)** have the corrupted bankruptcy judge/trustee file motions/enter orders to eliminate Allstate's debt to the physician/healthcare provider.

83.    <u>Allstate/Corporate Shareholders as Defendant</u> - **(i)** have the case transferred into a corrupted state/federal court within the geographic boundaries of the State of New Jersey; **(ii)** employ the tactics identified above.

84.    The Defendants knowingly/willfully/with malice aforethought did defraud: **(i)** Kaul; **(ii)** his malpractice carriers; **(iii)** the New Jersey taxpayer; **(iv)** the New Jersey public; **(v)** Kaul's patients: **(vi)** The New Jersey Superior Court; **(vii)** The United States Bankruptcy Court for the District of New Jersey; **(viii)** the American public of millions of dollars (tax revenue/income/medical malpractice funds), their right to honest services.

## Defendants Global Scheme of Obstruction of Justice:

85.    In a period from April 2, 2012, Defendant Hafner, in collusion/conspiracy with **The Kaul Cases** Defendants, did engineer and perpetrate a massive global scheme of obstruction of justice, by using the US mail and wires to co-opt both domestic/foreign

state medical boards/councils into not issuing Kaul a license/medical registration if he should apply.

**86.**    **The Kaul Cases** Defendants did participate in thousands of communications to the effect that because Kaul had personal/professional relationships with the international medical community, he would be able to obtain a license/registration in another state/country, and that this would provide him with monies he could use to have lawyers prosecute the Defendants in both domestic/foreign courts. The Defendants recognized that these prosecutions would expose their crimes and cause their economic decimation/reputation annihilation/incarceration.

**87.**    On February 8, 2021, the Pennsylvania Medical Board entered a FINAL ORDER, adopting an opinion issue on May 27, 2020 by David Green, Esq, an administrative hearing officer employed by the State of Pennsylvania. The order granted Kaul's application for licensure in the State of Pennsylvania. In support of this application, Kaul submitted evidence filed in **The Kaul Cases**, that proves the suspension/revocation (April 2, 2012/March 24, 2014) were and are illegal.

**88.**    The following facts expose the depth and breadth of the Defendants conspiracy to obstruct justice in every state medical board (---), the State of Pennsylvania (---), the United States District Court (---) and the United States Government (---). The facts of the Defendants scheme to obstruct justice/judicial corruption in the United States District Court, follow a similar **"pattern"** of corrupting or otherwise influencing judges/politicians into abusing their power to prevent Kaul from commencing discovery in any of **The Kaul Cases**. In the Defendants 'Conspiracy Room' the exchanges include, but are not limited to, discussions that if any one of the Defendants/co-conspirators/Third-Party Witnesses are subjected to oral examination by Kaul, it will result in the production of further highly incriminating evidence of their decades-long criminal enterprise/crimes.

**89.**    In a period from April 2, 2012 to the present Defendants FSMB/CTMB/NJBME did use the US mail/wires and engage in face-to-face meetings, the purpose of which was to attempt to obstruct Kaul from obtaining a medical license/registration anywhere in the United States and or the rest of the world. On or about the end of September/beginning of October, Defendant CTMB did deny Kaul's pre-application for medical licensure, based on the revocation by Defendant NJBME, despite being presented with evidence that the revocation was procured illegally.

**90.**    Defendant CTMB did admit to violating Kaul's constitutional rights by incorporating the illegal revocation (March 24, 2014) into its denial of Kaul's pre-application (September/October 2020).

**91.**    Defendant CTMB did use the US mail/wires to exchange information with Defendant CGLIC that related to **The Kaul Cases** Defendants scheme to attempt to provide cover for their crimes by eliminating Kaul from the practice of medicine/the United States by obstructing his efforts to procure a state license.

**92.**     Defendants CTMB/CGLIC did use the US mail/wires to exchange information with **The Kaul Cases** Defendants regarding Defendant Hafner's tactics of using the US mail/wires to disseminate a knowingly fraudulent legal instrument (revocation order of Defendant NJBME-March 24, 2014) to Defendant FSMB/National Practitioners Data Bank/DEA/Medicare/SMB/American Board of Anesthesiology and multiple other agencies identified in reports issued by the NPDB.

**93.**     Defendant Hafner did know that in using the US mail/wires to transmit a fraudulent legal instrument, she was committing a 'Fraud on the Court' against the United States Government/NPDB/Medicare/DEA, as she had planned with **The Kaul Cases** Defendants.

# Legal Claims

## RICO 1

### Enterprise - The State of New Jersey-Connecticut ("NJC-E")
### Defendant Persons - Christie/Brown/Hafner/Murphy
### Pattern of Racketeering/RICO Predicate Acts - Mail Fraud/Wire
### Fraud/Perjury/Conspiracy/Obstruction of Justice/Bribery/Kickbacks/Evidential
### Tampering/Witness Tampering

**94.** The Defendants are "persons" pursuant to RICO, and did, in a period commencing in 2012 conduct a "pattern of racketeering" through the State of New Jersey, through the commission and or subornation of thousands of acts of mail fraud/wire fraud/bribery/obstruction of justice/perjury/conspiracy.

**95.** The Defendants did knowingly and with malice, violate RICO with the intent and purpose of causing immense harm to the economic standing and reputation of Kaul, in order to attempt to prevent him from ever earning a livelihood anywhere in the world, and to strip him of his ability to support his children.

**96.** The Defendants were motivated to cause these **"racketeering injuries"** to Kaul as they believed it would further their economic and political agendas and did so in the knowledge that their crimes constituted a violation of RICO.

**97.** The Defendants believed that their crimes would go undetected because in their estimation, Kaul, having been driven into a state of poverty, would be unable to retain lawyers, without whom, they believed, he would not be able to initiate an investigation and prosecution of the CBM-AIF-E Defendants.

**98.** The Defendants also believed their crimes would go undetected because they believed that after having subjected Kaul to a four-year long campaign of widely publicized slanderous media attacks, he would become socially isolated, ostracized, living in a state of poverty and unable to find any material means to even survive.

**99.** The Defendants believed that their crimes would destroy Kaul, and that he would be forced to leave the country, and thus ensure their crimes went undetected.

**100.** The Defendants believed that even if Kaul attempted to have their crimes detected, it would be impossible as they calculated that their deprivation of Kaul's legal rights had been conducted under the color of state, through administrative/state/federal courts within the geographic boundaries of New Jersey, and that this charade would immunize them from prosecution.

**101.** The CBM-AIF-E Defendants believed that even if Kaul, without a lawyer, attempted to bring a prosecution against them, it would be quashed by judges they had

corrupted or controlled (politically/economically) in state/bankruptcy/federal courts within the geographic boundaries of New Jersey.

**102.** The CBM-AIF-E Defendants believed that even if Kaul, without a lawyer, attempted to bring a prosecution against them in a court outside of New Jersey, they would use their political influence to have the case transferred to the United States District Court for the District of New Jersey-Newark, a court whose judges they have corrupted, and a court whose judges are now Defendants in K11-3.

**103.** The CBM-AIF-E Defendants, in perpetrating their racketeering schemes, were cognizant of the fact that their crimes would defraud Kaul's medical malpractice carriers of millions of dollars, would cause these injured carriers to raise the cost of medical malpractice insurance, would defraud the public of their right to honest services and would defraud Kaul of the entirety of his assets and his reputation.

**104.** Despite being fully cognizant of the criminality of their schemes, the CBM-AIF-E Defendants did conspire and knowingly violate RICO, in the belief that their misconduct would, for the aforementioned reasons, go undetected.

**105.** In a period commencing in at least 2012, the CBM-AIF-E Defendants did conspire to and did conduct a "pattern of racketeering" as RICO "persons" through the CBM-AIF-E, in collusion and conspiracy with multiple co-conspirators (lawyers/judges/physicians/journalists/insurance executives/hospital executives) involving the judicial/political/physician regulation systems/courts of the State of New Jersey, the purpose of which was to further their economic/political agendas through the knowingly illegal exploitation of the economic/professional welfare of Kaul, and a defrauding of Kaul's medical malpractice insurance carriers.

**106.** The scheme consisted of the perpetration of thousands of RICO predicate acts, including mail fraud/wire fraud/obstruction of justice/perjury/bribery/kickbacks/conspiracy, conducted across the US mail and wires.

**107.** The purpose of the scheme was to destroy Kaul, by having him either jailed/deported/killed, in order to eliminate past financial debt, future financial liability and the threat his work posed to his competitors in the American minimally invasive spine surgery market.

**108.** **Defendant Christie + Defendant Hafner:**
Date range: 2010 to 2017.
Conduits of Communication + Bribery to Christie:
Through state government intermediaries.
Mode of communications: Email + Voice Message + SMS + Face-To-Face
Substance of communications:
(i) Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians. (ii) Scheme to obstruct justice by abusing the power of political/public office to corrupt NJ state court judges into entering

fraudulent judgments against Kaul and his medical malpractice carriers. **(iii)** Scheme to file complaints against Kaul with state and federal regulatory authorities. **(iv)** Scheme to participate in sham litigation against Kaul. **(v)** Scheme to participate in sham litigation against Kaul's physician employees. **(vi)** Scheme to revoke Kaul's license. **(vii)** Scheme to destroy Kaul's reputation. **(viii)** Scheme to destroy Kaul's economic standing. **(ix)** Scheme to have Kaul ostracized. **(x)** Scheme to have Kaul leave the United States. **(xi)** Scheme to have co-conspirator and NJ Administrative Law Judges, Jay Howard Solomon buttress co-conspirator, Gregory Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care. **(xii)** Scheme to have Defendant Hafner pervert the course of justice by buttressing Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care. **(xiii)** Scheme to engage in evidence tampering and perjury in the administrative board proceedings, that caused the revocation of Kaul's license, as evidenced in 'The Solomon Critique' (K1-D.E. 225 Page ID 4940) and 'The Solomon Critique 2' (K1-D.E. 299 Page ID 7202). **(xiv)** Scheme to violate Kaul's right to due process, his right to an impartial tribunal and his civil rights, through the commission of knowingly false testimony that Kaul had allegedly "grossly deviated" from the standard of care for reasons pertaining to qualifications, credentials, alternative privileges and hospital privileges. Defendant Hafner knew that under the law the standard of care is not determined by any of these reasons, but simply by the manner in which the care is delivered, but yet in this knowledge she abused the power of public office for personal and political gain, at the expense of the public. **(xv)** Scheme to abuse the power of public office and quasi-judicial proceedings to perpetrate a massive fraud on the public, by willfully misrepresenting that Kaul was not qualified, credentialed or licensed to perform minimally invasive spine surgery. The defendants knew that Kaul possessed a license to practice medicine and surgery, had been credentialed by at least six state licensed surgical centers to perform minimally invasive spine surgery, did not require alternative or hospital privileges to perform minimally invasive spine surgery, had commenced his training in minimally invasive spine surgery in 2002, three years before co-conspirator Gregory Przybylski, a market competitor and 'expert' for Defendant NJBME. **(xvi)** Scheme to propagate to the public, a knowingly false interpretation of the alternative privilege regulation, in the knowledge that they were abusing the power of public office for personal and political gain. The defendants knew that Kaul did not require alternative privileges to perform minimally invasive spine surgery in his outpatient surgical center. **(xvii)** Scheme to suppress evidence of the superior clinical outcomes of Kaul's minimally invasive spine surgery practice, by refusing to have Kaul's practice independently analyzed and monitored. **(xviii)** Scheme to engage in obstruction of justice by ignoring Kaul's written requests for an independent investigation of Kaul's claims of evidence tampering. **(xix)** Scheme to participate in a knowingly illegal system of physician regulation, that violated Kaul's civil rights, his constitutionally protected right to due process and his right to an impartial tribunal, by willfully conducting proceedings through and by Defendant NJBME, the New Jersey Office of Administrative Law and the Office of the New Jersey Attorney General. These governmental agencies are all subservient to the executive branch of state government. This is an illegal configuration that violates the separation of powers principle of the

United States Constitution, a principle that protects citizens due process rights when life, liberty and property are at stake. **(xx)** Scheme to abuse the authority of the office of the Governor of the State of New Jersey for the purposes of accepting bribes, as part of a series quid pro quo schemes purposed to have Defendant NJBME revoke Kaul's license + Scheme to violate Kaul's right to due process by failing to exclude Defendant Hafner from any further involvement in Kaul's case and or his application in 2014 for reinstatement of his medical license. This was a knowing and willful violation based on the fact that Kaul had filed an ethics complaint against Hafner in September 2013. **(xxi)** Scheme to deprive Kaul of his civil rights and right to due process by permitting Defendant Hafner, an individual involved in a personal relationship with Defendant Kaufman, who, like Defendant Kaufman, had demonstrated an inexplicable personal animus towards Kaul.

Tactics Employed:

The Defendants scheme involved the following tactics, at the center of which lay the 'pawn' like manipulation of Kaul's patients to provide false testimony against Kaul, and perjure themselves by claiming that their pain increased after the care they received from Kaul:

The illegal revocation of Kaul's license + The manipulation of public opinion against Kaul + The filing of multiple frivolous medical malpractice lawsuits in corrupted NJ state courts - Essex County/Union County):

**(i)** Conspire to and commit bribery by funneling bribes in a series of quid pro quo schemes to Defendant Christie from the NJ plaintiff's bar, Defendant Brown, the American Association of Orthopedic Surgeons and Defendant Murphy to have co-conspirator, New Jersey Board of Medical Examiners ("NJBME") revoke Kaul's license. **(ii)** Conspire to and collude with media co-conspirators, North Jersey Media Group/NJ. Com (Star Ledger) to publicize articles about the revocation/lawsuits, purposed to legitimize their crimes in the public eye and recruit more of Kaul's patients to file lawsuits. **(iii)** Conspire to and encourage patients to file lawsuits and complaints with co-conspirator, NJBME. **(iv)** Conspire to and encourage patients to file complaints with state and federal regulatory authorities, that the Defendants knew were false. **(v)** Conspired to and did participate in sham litigation and provided knowingly false testimony that caused the entry of multi-million-dollar judgments against Kaul and his medical malpractice carrier. **(vi)** Conspired to and did cause the filing/publication of these false judgments with the National Practitioners Data Bank, the State of New Jersey and in collusion with media co-conspirators, North Jersey Media Group/www.nj.com, into the public domain and onto the internet. **(vii)** Conspired to and did use the US mail and wires to cause a dissemination of these knowingly false judgments to members of the New Jersey medical/political/legal communities, the purpose of which was to aid and abet the destruction of Kaul's reputation. **(viii)** Conspired to and did provide knowingly false testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care because Kaul did not possess alternative privileges or hospital privileges. **(viii)** Conspired to and did provide knowingly fraudulent testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care, because Kaul's training did not involve an orthopedic or neurosurgical residency. **(ix)** Conspired to and did participate in sham litigation against Kaul's physician employees, falsely testifying that they were not

54

qualified to perform minimally invasive spine surgery and had committed insurance fraud. **(x)** Conspired to and did participate in sham litigation purposed to professionally ostracize Kaul, cause him to leave the United States and prevent him from publicly exposing the Defendants crimes. **(xi)** Use of the US mail and wires to send patients letters/contact via telephone encouraging them to file frivolous lawsuits against Kaul. **(xii)** Use of the US mail and wires to defraud patients of their right to honest services by communicating knowingly false information that Kaul was not qualified to perform minimally invasive spine surgery. **(xiii)** Use of the US mail and wires to send knowingly false information to personal injury attorneys that Kaul was not qualified to perform minimally invasive spine surgery, had committed insurance fraud and was going to be indicted by the US Attorney for the District of New Jersey. **(xiv)** Use of the US mail and wires to send knowingly false information to New Jersey politicians, encouraging them to coerce co-conspirator, NJBME, to revoke Kaul's license. **(xv)** Use of the US mail and wires to order NJ state court judges to enter judgments against Kaul and his malpractice carrier in any and all medical malpractice cases filed against him. **(xvi)** Conspire and collude with law/public relation/political lobbying firms to funnel kickbacks to Defendant Christie, as part of a knowingly illegal series of quid pro quo schemes, in which a percentage of the judgments were given to Christie in return for him using his executive power to have Kaul's license revoked, order corrupted state court judges to enter multi-million dollar judgments against Kaul/his medical malpractice carrier and order the New Jersey media to publicize each and every judgment. **(xvii)** Conspire and collude with the legal/political apparatus of the State of New Jersey to perpetrate a knowingly illegal scheme to defraud Kaul, his medical malpractice carrier and the public of their property, their right to honest services and medical care. **(xviii)** Conspire and collude to deprive Kaul of his constitutionally protected right to an impartial tribunal in proceedings, the outcomes of which resulted in the loss of his livelihood, property and liberty.
**109.**   **(xix)** Conspire and collude to use the US mail and wires to order members of the New Jersey medico-legal community to not provide expert testimony or legal services in his defense of these frivolous medical malpractice lawsuits. **(xx)** Conspire and collude to use the US mail and wires to transmit information in furtherance of Defendant Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have co-conspirator, NJBME, revoke Kaul's license. **(xxi)** Conspire and collude to obstruct justice by bribing or abusing the power of public office to corrupt state court judges into rendering multi-million-dollar judgments against Kaul and his medical malpractice carrier. **(xxii)** Conspire and collude to use the US mail and wires to transmit the illegal consequences of a massive 'Fraud on the Court' (the revocation/state court judgments) to the public, national (state/federal) and international healthcare agencies/regulatory bodies, in furtherance of the Defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment. **(xxiii)** Further evidence of both Defendant Hafner's abusive/corrupted/illegal state-of-mind and the abusiveness of the illegal system of physician regulation is found in a letter (Exhibit ---) transmitted by Defendant Hafner to Defendant NJBME using the US mail/wires, in which she re-publishes verbiage Kaul's then lawyer, Michael Keating, instructed him to include in his 2014/2015 application for reinstatement of his NJ license. In Defendant Hafner's letter (March 3, 2015), with

knowledge that the suspension/revocation of Kaul's license was illegal, Defendant Hafner, instead of reporting the crime to state/federal investigative/prosecutorial authorities, perpetuated the crime by using the US mail wires to further propagate the falsehoods that Kaul was not qualified to perform minimally invasive spine surgery and had injured patients. Defendant Hafner knew these were lies, but even into 2015 continued to commit a fraud against Kaul, the public and the United States.
Location:
Governor's Office in Trenton + Christie/Republican Political Fundraisers + Office of the NJ AG.

## 110. 95. **Defendant Christie + Defendant Brown**:
Date range: 2010 to 2017.

Conduits of Communication + Bribery to Christie:
Political lobbyists + Public Relation Firms (Mercury Public Relations + Princeton Public Relations) + Law Firm of Lomurro Law

Mode of communications: Email + Voice Message + SMS + Face-To-Face
Substance of communications: See above. As with Defendant Christie + Defendant Hafner.
Tactics Employed: See above. As with Defendant Christie + Defendant Hafner.
Location: Governor's Office in Trenton + Christie/Republican Political Fundraisers.

## 111. 96. **Defendant Hafner + Defendant Brown**:
Date range: 2010 to 2017.
Mode of communications: Email + Voice Message + SMS + Face-To-Face
Substance of communications: See above. As with Defendant Christie + Defendant Hafner.
Tactics Employed: See above. As with Defendant Christie + Defendant Hafner.
Location: Office of the NJ AG + Office of Lomurro Law + NJ Office of Administrative Law + New Jersey Superior State Court

## 112. 97. **Defendant Hafner + Defendant Murphy**:
Date range: 2010 to 2017.
Mode of communications: Email + Voice Message + SMS + Face-To-Face
Substance of communications: **(i)** Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians. **(ii)** Scheme to obstruct justice by abusing the power of political/public office to corrupt NJ state court judges into entering fraudulent judgments against Kaul and his medical malpractice carriers. **(iii)** Scheme to participate in sham litigation against Kaul. **(iv)** Scheme to participate in sham litigation against Kaul's physician employees. **(v)** Scheme to revoke Kaul's license. **(vi)** Scheme to use the NJ state court system to propagate the knowingly fraudulent arguments submitted by Defendants Hafner/Kaufman and co-conspirator, Gregory Przybylski, in the administrative board proceedings (April 9 to June 28, 2013). **(vii)** Scheme to use the NJ state court system to propagate the knowingly illegal opinion issued on December 13, 2013, by co-conspirator/administrative law judge, Jay Howard Solomon.

Tactics Employed: **(i)** Conspired to and did participate in sham litigation and provided knowingly false testimony that caused the entry of multi-million-dollar judgments against Kaul and his medical malpractice carrier. **(ii)** Conspired to and did cause the filing/publication of these false judgments with the National Practitioners Data Bank, the State of New Jersey and in collusion with media co-conspirators, North Jersey Media Group/www.nj.com, into the public domain and onto the internet. **(iii)** Conspired to and did provide knowingly false testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care because Kaul did not possess alternative privileges/hospital privileges and did not participate in an orthopedic/neurosurgical residency. **(iv)** Conspired to and did participate in sham litigation against Kaul's physician employees, falsely testifying that they were not qualified to perform minimally invasive spine surgery and had committed insurance fraud. **(v)** Conspired to and did participate in sham litigation purposed to professionally ostracize Kaul, cause him to leave the United States and prevent him from publicly exposing the Defendants crimes. **(vi)** Use of the US mail and wires to defraud patients of their right to honest services by communicating knowingly false information that Kaul was not qualified to perform minimally invasive spine surgery. **(vii)** Conspire and collude with the legal/political apparatus of the State of New Jersey to perpetrate a knowingly illegal scheme to defraud Kaul, his medical malpractice carrier and the public of their property, their right to honest services and medical care. **(viii)** Conspire and collude to deprive Kaul of his constitutionally protected right to an impartial tribunal in proceedings, the outcomes of which resulted in the loss of his livelihood, property and liberty.
Location: Office of the NJ AG + Law Firm of Lomurro Law + NJ State Superior Court.

## 113. 96.    **Defendant Brown + Defendant Murphy:**
Date range: 2010 to 2018.
Mode of communications: Email + Voice Message + SMS + Face-To-Face
Substance of communications: **(i)** Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians. **(ii)** Scheme to obstruct justice by corrupting NJ state court judges into entering fraudulent judgments against Kaul and his medical malpractice carriers. **(iii)** Scheme to participate in sham litigation against Kaul. **(iv)** Scheme to participate in sham litigation against Kaul's physician employees. **(v)** Scheme to use the NJ state court system to propagate the knowingly fraudulent arguments submitted by Defendants Hafner/Kaufman and co-conspirator, Gregory Przybylski, in the administrative board proceedings (April 9 to June 28, 2013). **(vi)** Scheme to use the NJ state court system to propagate the knowingly illegal opinion issued on December 13, 2013, by co-conspirator/administrative law judge, Jay Howard Solomon.
Tactics Employed: **(i)** Conspired to and did participate in sham litigation and provided knowingly false testimony that caused the entry of multi-million-dollar judgments against Kaul and his medical malpractice carrier. **(ii)** Conspired to and did cause the filing/publication of these false judgments with the National Practitioners Data Bank, co-conspirator, State of New Jersey, and in collusion with media co-conspirators, North Jersey Media Group/www.nj.com, into the public domain and onto the internet. **(iii)** Conspired to and did provide knowingly false testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care because Kaul did

not possess alternative privileges/hospital privileges and did not participate in an orthopedic/neurosurgical residency. **(iv)** Conspired to and did participate in sham litigation against Kaul's physician employees, falsely testifying that they were not qualified to perform minimally invasive spine surgery and had committed insurance fraud. **(v)** Conspired to and did participate in sham litigation purposed to professionally ostracize Kaul, cause him to leave the United States and prevent him from publicly exposing the Defendants crimes. **(vi)** Use of the US mail and wires to defraud patients of their right to honest services by communicating knowingly false information that Kaul was not qualified to perform minimally invasive spine surgery. **(vii)** Conspire and collude with the legal/political apparatus of the State of New Jersey to perpetrate a knowingly illegal scheme to defraud Kaul, his medical malpractice carrier and the public of their property, their right to honest services and medical care. **(viii)** Conspire and collude to deprive Kaul of his constitutionally protected right to an impartial tribunal in proceedings, the outcomes of which resulted in the loss of his livelihood, property and liberty. **(ix)** Conspire to propagate and propagate within the New Jersey Superior Court system, the December 13, 2013 opinion of **The Kaul Cases** Defendant/co-conspirator, Jay Howard Solomon (NJ OAL Judge), a knowingly fraudulent legal instrument, the product of a massive 'Fraud on the Court' (revocation) committed by the K1/K2 Defendants. **(x)** Conspire to use and use the US mail and wires to transmit a knowingly fraudulent legal instrument in furtherance of the scheme to defraud Kaul/his medical malpractice carrier of their property. **(xi)** Conspire with judges in the New Jersey Superior Court system to use its legal apparatus to perpetuate the fraud committed in the NJ OAL, to defraud the public of its right to honest services through the commission of schemes of judicial corruption and to fraudulently obtain multi-million-dollar judgments from Kaul's malpractice carrier. **(xii)** Conspire with judges in the NJ Superior Court system to manufacture knowingly fraudulent legal judgments in an attempt to provide further legal cover for the crimes (2006 to 2018) committed by **The Kaul Cases** Defendants in administrative/state/bankruptcy/federal courts within the geographic boundaries of co-conspirator, State of New Jersey. **(xiii)** Conspire to propagate and propagate the knowingly false arguments submitted by **The Kaul Cases** Defendants, Kaufman/Przybylski/Hafner, in the administrative hearing (April 9 to June 28, 2013), by using the US mail/wires and the politico-legal apparatus of the State of New Jersey. **(xiv)** Conspire to provide kickbacks and provide kickbacks to **The Kaul Cases Defendant** Christie as part of a quid pro quo scheme, in which Defendant Christie abused the power of the state to have Kaul's license illegally revoked, have the event widely publicized for almost four (4) years, order courts within the geographic boundaries of New Jersey to deny/obstruct Kaul's defenses, expedite the entry of illegal judgments against Kaul/his medical malpractice carrier, have his AG continue to recruit/encourage Kaul's patients to sue him and order the entire politico-legal apparatus of the State of New Jersey to not provide Kaul with medical expert or legal assistance in his defense of the cases.

Location: Across the US mail and wires + Law Firm of Lomurro Law + NJ State Superior Court.

## RICO 2

**CGLIC/AQR/Christie/Allstate**
**CAC Association-In-Fact Enterprise ("CAC-AIF-E")**
**Defendant Persons - Christie/CGLIC/AQR/Allstate**
**Pattern of Racketeering/RICO Predicate Acts - Mail**
**Fraud/Wire/Conspiracy/Obstruction of Justice/Bribery/Kickbacks**

*114.* **99.** In a period that commenced in at least 2009, the Defendants devised, implemented and perpetrated a knowingly illegal scheme through a **"pattern of racketeering"** purposed to advance the economic/political interests of the Defendants, that was conducted by and through the CAC-AIF-E, that was aided/abetted by co-conspirators within the NJ political/medical/legal/judicial communities and was conducted under the cover of administrative/state/bankruptcy/federal courts within the geographic boundaries of co-conspirator State of New Jersey.

*115.* **100.** In 2009, Defendant Christie commenced preparations for his quest for the 2016 US Presidency and required vast sums of money. Defendant Christie obtained this money through a multitude of 'pay-to-play' and kickback schemes, at the center of which lay the racket of 'political campaign donations', a tool of modern-day American politics that attempts to legitimize and provide cover for what are no more than bribes and a scheme that is one of political corruption.

*116.* **101.** From 2002 to 2012, Kaul developed one of the most successful solo minimally invasive spine surgery practices in the US, in large part as a consequence of his having invented in 2005, a procedure that revolutionized spine surgery, which proved that spinal fusions can be performed in a minimally invasive manner on an outpatient basis. In 2021 this procedure is the standard of care. With the clinical success of the practice, came immense economic success, and in 2009 Kaul obtained one of the last surgical center licenses in New Jersey, and was scheduled to commence construction in 2013.

*117.* **102.** From 2005 to 2012, Kaul had provided minimally invasive spine surgical services to numerous clients of Defendants CGLIC and **The Kaul Cases** Defendant Allstate, of which Defendant AQR, was and is a major corporate shareholder, and thus these Defendants owed Kaul and his professional corporations substantial amounts of money, which they/shareholders did not want to pay, as payment reduced executive compensation/share price.

*118.* **103.** Defendants CGLIC/AQR recognized that Kaul's expanding minimally invasive spine surgery practice and the laudatory publicity surrounding it, in conjunction with the increasing number of physicians that Kaul was training, posed a threat to their executive/shareholder compensation.

*119.* **104.** Defendants CGLIC/AQR recognized that Kaul's provision of minimally invasive spine surgery resulted in superior patient clinical outcomes, that exceeded those found in patients treated by the more aggressive/older 'open' techniques, that resulted in

massive amounts of blood loss, markedly increased rates post-operative infection (5-15%: Kaul's infection rate in 2011 = 0%) and permanent damage to muscles/ligaments/bone surrounding the spinal canal, that resulted in increased post-surgery pain and paralysis.

120. **105.** Defendants CGLIC/AQR have a controlling role in the American healthcare sector, from which they generate billion-dollar profits, through the collection of health insurance premiums, the purpose of which is to remunerate physicians for the provision of clinical care. Only 10% of every premium dollar is spent on providing clinical care, while the remainder is diverted into executive/shareholder compensation.

121. **106.** Defendants CGLIC/AQR sought to have Kaul eliminated from the practice of medicine because he posed a threat to their executive/shareholder compensation. However, Defendants CGLIC/AQR and their counsel recognized that there was no legitimate or legal basis on which to effectuate this injury on Kaul, an injury they recognized would be illegal.

122. **107.** In approximately 2010, Defendants CGLIC/AQR, in recognizing that there was no legal means of eliminating Kaul from medical practice, commenced devising a knowingly illegal scheme to achieve this end, a scheme that would involve an illegal conspiracy with the political/legal/judicial/medical elements of the State of New Jersey.

123. **108.** Defendants CGLIC/AQR recognized that by co-opting the State of New Jersey, their crimes would be afforded an ostensibly legitimate cover, purposed to deceive the public into believing that Kaul's elimination from medicine was legitimate/legal and to mitigate the threat of civil/criminal prosecution and thus insulate executive/shareholder profit from negative publicity and or litigation.

124. **109.** In recognition of the aforementioned facts, Defendants CGLIC/AQR, in collusion/conspiracy with Defendant Christie, converted the State of New Jersey into a **"racketeering enterprise"** through the perpetration of a prolonged **"pattern of racketeering"** that involved the commission of hundreds of RICO predicate acts of mail fraud/wire fraud/conspiracy/obstruction of justice/bribery/kickbacks, the purpose of which was to eliminate their debt to Kaul and to eliminate the threat of any future financial liability from Kaul's expanding minimally invasive spine surgery practice.

125. **110.** Defendant Christie, in recognition that he required vast sums of money to fund his political ambitions, abused his executive power over the State of New Jersey to have manufactured knowingly false cases that Kaul was not qualified to perform minimally invasive spine surgery and had committed medical malpractice.

126. **111.** Defendants CGLIC/AQR/Christie, recognized that these cases (revocation/judgments/articles) were illegal/fraudulent, but persisted in using the political/judicial/legal/medical bodies of the State of New Jersey to perpetrate a massive 'Fraud on the Court' and on the public, in furtherance of their political and economic agendas, and did so by converting the State of New Jersey into a **"racketeering**

**enterprise"**, at the center of which lay multiple schemes of judicial/political corruption, facilitated by the inherently corrupt system of so called 'political campaign donations'.

127. 112. In a period from July 21, 2014 to July 30, 2020 Defendant CGLIC engaged in a **"pattern of racketeering"** with **The Kaul Cases** Defendant, Daniel Stolz, Esq (Chapter 7 Trustee: 13-23366 - United States Bankruptcy Court for the District of New Jersey) to eliminate their debt to Kaul/his corporations/creditors, and converted the United States Bankruptcy Court for the District of New Jersey into a **"racketeering enterprise"** that furthered the Defendants illegal scheme to destroy Kaul's economic standing/professional reputation. Defendant CGLIC and Stolz entered into secret deals facilitated by **The Kaul Cases** Defendant/Bankruptcy Judge, John Sherwood (Exhibit ---), the purpose of which was to conceal from public scrutiny their **"pattern of racketeering"** and judicial corruption.

128. 113. The Defendants believed that by undermining Kaul's position in the bankruptcy proceedings, it would undermine his position in every other proceeding in administrative/state/federal courts within the geographic boundaries of the State of New Jersey and would expedite the entry of judgments against him/his medical malpractice carrier. Orchestrating this grand scheme of corruption was Defendant Christie.

129. 114. The Defendants organized themselves with the conviction that their prolonged pattern of criminal conduct under the cover of the political/legal/judicial/medical/media elements of state, would leave Kaul with no option but to leave the country, if they were unable to have him jailed, cause him to commit suicide or be caused to otherwise die. This conviction fostered an air of impunity, in which they knowingly/willfully violated all elements of RICO and with a surety, albeit false, that they and their crimes would never be subjected to civil/criminal investigation/prosecution. However, the Defendants believed that even if they were prosecuted, they had corrupted the judges in the United States District Court for the District of New Jersey-Newark, and Kaul would have no legal foundation on which to bring claims in any district other than New Jersey-Newark.

130. 115. The Defendants, in their flagrant and knowing violation of the law, conspired with **The Kaul Cases** Defendants to ensure that every legal case brought against Kaul in any administrative/state/bankruptcy/federal court within the geographic boundaries of the State of New Jersey, resulted in a judgment against him, in order to provide further cover for their crimes and, at least in their minds, make it impossible for Kaul to expose their **"pattern of racketeering"**.

131. 116. Defendant Christie, in collusion/conspiracy with the other Defendants in this case and **The Kaul Cases** Defendants, discussed the illegality of the scheme and the civil/criminal penalties that would ensue if they were prosecuted in a court over which the Defendants had neither corrupted nor had any influence. However, the Defendants persisted in the commission of crimes consequent to their conviction that Kaul would either be jailed/deported/die and that even if he were not, he would fall into a state of poverty and would thus not be able to initiate litigation, and that even if he did, he would not be able to sustain it to discovery, trial and judgment.

132. 117. In a period until February 22, 2016 (K1 filing) Defendant Christie, in collusion/conspiracy with the other Defendants in this case and **The Kaul Cases** Defendants, did continue to have so called 'investigators' supposedly employed by the State of New Jersey, continue to harass and attempt to intimidate physicians that had worked with and for Kaul. One of these individuals, Dr. Luis Pacheco, informed Kaul in 2017, that up until early 2016, he had been subjected to approximately seven (7) visits, in which he was aggressively **"interrogated"** about any contact between himself and Kaul. Pacheco informed Kaul that the State was looking for evidence that Kaul was working as a doctor, in order to have him arrested and jailed, in a further effort to ensure that Kaul did not expose their criminal violations of RICO.

133. 118. **Defendant Christie + Defendant CGLIC**:
Date Range: 2010 to 2017.
Conduits of Communication + Bribery to Christie: Public Relation/Political Lobbying Firms (Mercury Public Relations + Princeton Public Relations) + Law/Political Lobbying Firms (Brach Eichler + Wolf Samson + Wasserman Jurista Stolz) + Through state government intermediary + Directly + Political campaign fundraisers + Political campaign donations.
Mode of Communications: Email + Face-To-Face.
Substance of Communications: **(i)** Scheme to revoke Kaul's license. **(ii)** Scheme to destroy Kaul's reputation. **(iii)** Scheme to destroy Kaul's economic standing. **(iv)** Scheme to have Kaul ostracized. **(v)** Scheme to have Kaul leave the United States. **(vi)** Scheme to use the bankruptcy proceedings to defraud Kaul of his assets, his real estate holdings and $ 45 million owed to him by insurance companies, including defendants Allstate + Geico. **(vii)** Scheme to conceal from Kaul the defendants' pattern of racketeering in the United States Bankruptcy Court for the District of New Jersey. **(viii)** Conspiracy to obstruct justice and have entered adverse rulings in all cases filed against Kaul in administrative/state/bankruptcy/federal courts within the geographic boundaries of New Jersey. **(viii)** Conspiracy to use the media to propagate the fraudulent judgments/rulings procured in these courts. **(ix)** Conspiracy to use the US mail and wires to disseminate these fraudulent judgments/rulings to every local/state/federal/international healthcare related agency, including the DEA, the National Practitioners Data Bank, every state medical board and every medical council in the world. **(x)** Conspiracy to prevent Kaul from ever finding any employment anywhere in the world, in order that he would never be able to expose the crimes of **The Kaul Cases** Defendants (in the period from April 2, 2012 to February 22, 2016, every time an article was published about one of the fraudulent cases, the journalist would ask a lawyer who had been associated with Kaul, whether he had left the country and if so, in what country was he residing - the purpose being to ascertain the likelihood that **The Kaul Cases** Defendants crimes would go undetected and to attempt to attack his position in that particular country.
Tactics Employed: **(i)** Use of US mail and wires to file false insurance fraud complaints against him with Defendant NJBME. **(ii)** Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery. **(iii)** Use of the US mail and wires to send false information to personal

injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud. **(iv)** Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked **(v)** Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license. **(vi)** Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States. **(vii)** Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow (works for the insurance industry) use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked. **(viii)** Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery. **(ix)** Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license. **(x)** Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHO RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license. **(xi)** Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine. **(xii)** Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license. **(xiii)** Use of the US mails and wires to transmit information in furtherance of their scheme of converting the United States Bankruptcy Court into a racketeering enterprise. **(xiv)** Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2'). **(xv)** Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment. **(xiv)** Use of the US mail and wires to attempt to have Kaul's medical school (Royal Free/UCL Medical School, London, UK) erase his degrees in medicine/surgery (M.B. B.S.).

Location: Governor's Office in Trenton + Christie/Republican Political Fundraisers + United States Bankruptcy Court for the District of New Jersey + Law Offices of Wasserman/Jurista/Stolz.

*134.* ### 1/9.   Defendant Christie + Defendant Allstate:

Date Range: See above. As with Defendant Christie + CGLIC.

Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + CGLIC.

Mode of Communications: See above. As with Defendant Christie + CGLIC.
Substance of Communications: See above. As with Defendant Christie + CGLIC.
Tactics Employed: See above. As with Defendant Christie + CGLIC.
Location: See above. As with Defendant Christie + CGLIC.

*125.* **120.   Defendant Christie + Defendant AQR**:
Date Range: See above. As with Defendant Christie + CGLIC.
Conduits of Communication + Bribery to Christie: See above. As with Defendant
Christie + CGLIC.
Mode of Communications: See above. As with Defendant Christie + CGLIC.
Substance of Communications: See above. As with Defendant Christie + CGLIC.
Tactics Employed: See above. As with Defendant Christie + CGLIC.
Location: See above. As with Defendant Christie + CGLIC.

*136.* **121.   Defendant CGLIC + Defendant AQR**:
Date Range: See above. As with Defendant Christie + CGLIC
Mode of Communications: As with Defendant Christie + CGLIC.
Substance of Communications: As with Defendant Christie + CGLIC.
Tactics Employed: As with Defendant Christie + CGLIC.
Location: As with Defendant Christie + CGLIC.

## RICO 3

### Enterprise – States New Jersey-Connecticut ("NJC-E")
### Defendant Persons - FSMB/CMB/Hafner
### Pattern of Racketeering/RICO Predicate Acts - Mail
### Fraud/Wire/Conspiracy/Obstruction of Justice/Bribery/Kickbacks

**Overview**:

*137.* **122.**   In a period commencing in approximately mid 2013 to late 2020, the Defendants
did conduct a **"pattern of racketeering"** through, by and in conjunction with the **"NJC-E"** the purpose of which was to attempt to eliminate Kaul from the practice of medicine
anywhere in the world/destroy his economic standing/destroy his reputation in order to
eradicate the debt owed to Kaul by, amongst others, **The Kaul Cases** Defendants
Allstate/Geico/CGLIC/AQR and to attempt to ensure that Kaul generated no future
liability.

*138.* **123.**   Defendant FSMB commands/controls/orchestrates and profits from a knowingly
illegal collaboration of state medical boards, that violates the Commerce Clause of the
United States Constitution. The FSMB: SMB (Federation of State Medical Boards: State
Medical Boards) Scheme **("F: SS"**) controls and exploits for profit the trillion-dollar
industry of American medicine/physician regulation, in collusion/conspiracy with for-profit corporations involved in the healthcare sector.

*13G*

**124.** The F: SS conducts its enterprise under the knowingly false guise that it **"protects the public"**, and is using an agreement entitled, the **"Interstate Agreement"** (so named to falsely convey legal legitimacy) to expand membership of state medical boards, in order to have Congress ratify the F: SS as the controlling authority in American medicine, in which all power is consolidated. The hospital/insurance/pharmaceutical industry **("HIPI")** politically supports the consolidation, as it streamlines their own axis of control of the healthcare sector, and thus maximizes their corporate/executive profit at the expense of the American public/medical profession.

*140.*

**125.** HIPI and F: SS have, since at least 1986 (enactment of the Healthcare Quality Improvement Act), conducted massive schemes of bribery/kickbacks through a HIPI-F: SS Association-In-Fact Enterprise **("HIPI-F: SS-AIF-E")** that itself, as a "person" pursuant to RICO, has converted the executive/legislative/judicial branches of state/federal government into **"racketeering enterprises"**. These **"enterprises"** further the economic/political agenda of the HIPI-F: SS-AIF-E.

*141.*

**126.** The true purpose of the **"Interstate Agreement"** is the furtherance of the F: SS, but the 'front' it provides is that it facilitates reciprocity of state licensure.

*142.*

**127.** The Defendants, cognizant of the illegality of their scheme, did, in collusion/conspiracy with **The Kaul Cases** Defendants, conduct their crimes using the US mail and wires and did conspire to use as cover, the **"Interstate Agreement"** and the executive/federal/legislative branches of state/federal government.

*143.*

**128.** Commencing in or around April 2012, Defendant Hafner used the US mail and wires to transmit a knowingly fraudulent legal instrument to state/federal/international healthcare regulatory/law enforcement agencies, that of the illegal suspension of Kaul's license. The purpose of these crimes was to attempt to destroy Kaul and to co-opt these unwitting agencies into both obstructing any future efforts by Kaul to re-commence the practice of medicine and to validate/provide cover for their prior crimes (bribery/racketeering/public corruption) and for future crimes that they conspired to commit (obstruction of justice/perjury/evidence tampering/witness tampering/fraud/judicial corruption).

*144.*

**129.** In a period from April 2012 to December 2020, Defendant Hafner, in collusion and conspiracy with, amongst others, Defendants FSMB/CMB sought to obstruct Kaul's efforts to re-commence the practice of medicine by denying his October 2020 pre-application for licensure in the State of Connecticut, as part of an illegal scheme that Defendants FSMB/CMB/Hafner knew was a perpetuation of the massive 'Fraud on the Court' that resulted in the illegal revocation of Kaul's NJ license on March 24, 2014.

*145.*

**130.** Defendant CMB, despite having knowledge that the NJ administrative proceedings (April 9, 2013 to June 28, 2013) were conducted illegally, and that the revocation was illegal and thus had no legal validity, did aid and abet a continuation of

the **"pattern of racketeering"** (2010 to 2020) in which Defendant Hafner was a principal perpetrator of state orchestrated fraud.

146. **182. Defendant FSMB + Defendant CMB:**
Date range: 2012 to 2020.
Mode of communications: Email + US mail
Substance of communications: **(i)** Scheme to prevent Kaul from obtaining a license/livelihood anywhere in the United States, in order to suppress his ability to earn money, in order to mitigate the threat of exposure of the crimes of **The Kaul Cases** Defendants that the money would afford. **(ii)** Scheme to coerce Kaul into submitting himself to the knowingly illegal revocation/'fine' ($475,000) entered by Defendant NJBME on March 24, 2014, in order to attempt to have Kaul validate the crimes of **The Kaul Cases** Defendants and prevent him from exposing them. **(iii)** Scheme to coerce Kaul into submitting himself to the crimes of **The Kaul Cases** Defendants, by attempting to foreclose him from obtaining a license/livelihood anywhere in the United States, in order to protect the monopoly of the **"One Unit"** (FSMB/SMB) on the multi-billion-dollar business of physician licensing/regulation (The **"One Unit"** recognizes that its monopolistic power would be diminished if one of its member states undermines the authority/power of another state. The **"One Unit"** is a federalized cartel, whose member states have relinquished sovereign immunity and are not **"state actors"** but are for-profit **"private actors"** and or trade associations). **(iv)** Scheme to prevent Kaul from obtaining a license anywhere in the world, in recognition that if Kaul did (on February 8, 2021 **The Kaul Cases** Defendant, PMB, adopted in its entirety the May 27, 2020 opinion/order of the State of Pennsylvania that granted Kaul's application for licensure), this fact, in conjunction with Kaul's widely publicized cases, it would set precedent for dismantling the **"One Unit"** i.e., destroying the monopoly (the irony is that it was **The Kaul Cases** Defendants that provided Kaul a public platform from which **The Kaul Cases** have reached millions of people in medicine/law/political/healthcare business). Tactics Employed: **(i)** Conspired to and did deny Kaul's October 2020 pre-application for licensure in the State of Connecticut. **(ii)** Conspired to and did use the US mail/wires to transmit the knowingly illegal instrument of the NJ revocation (March 24, 2014) in an attempt to foreclose Kaul from either ever recommencing the practice of medicine, or only recommencing under onerous conditions (exclude the practice of minimally invasive spine surgery) and only after he had submitted himself to the illegal revocation/'fine'. The psychopathology found in those involved in The Spanish Inquisition/The English Star Chamber/The Salem Witch Hunts is the exact psychopathology found in physicians/lawyers/bureaucrats sitting on state medical boards, an example being **The Kaul Cases** Defendant, Steven Lomazow. **(iii)** Location: Across the US mail/wires.

147. **183. Defendant FSMB + Defendant Hafner:**
See above. As with Defendant FSMB + Defendant CMB.

148. **184. Defendant CMB + Defendant Hafner:**
See above. As with Defendant FSMB + Defendant CMB.

## RICO 4

### Enterprise - State of New Jersey-Connecticut ("NJC-E")
### Defendant Persons - Kaufman/Brown/Hafner
### Pattern of Racketeering/RICO Predicate Acts - Mail
### Fraud/Wire/Conspiracy/Obstruction of Justice/Bribery/Kickbacks

### Overview

*149.* 165.   In a period commencing in or around 2009, Defendants Kaufman/Brown/Hafner did conduct a **"pattern of racketeering"** consisting of the commission of hundreds of the RICO predicate acts of mail fraud/wire fraud/conspiracy/obstruction of justice/bribery/kickbacks, and did convert the State of New Jersey into a **"enterprise"**, the purpose of which was to: (i) have Kaul's NJ license revoked; (ii) have entered multi-million dollar judgments by state courts; (iii) destroy Kaul's reputation by using the media and the US mail and wires to propagate knowing falsehoods that Kaul was not qualified to perform minimally invasive spine surgery/had committed insurance fraud/had injured patients/was to be indicted by the federal government/had illegally performed minimally invasive spine surgery in his Pompton Lakes Surgical Center.

*150.* 166.   The Defendants, cognizant of the illegality of their actions, did nonetheless perpetrate these crimes in furtherance of both their political/economic agendas and those of their co-conspirators and **The Kaul Cases** Defendants, all of whom believed that their crimes would go undetected under the cover of the state government/state courts/medical board/insurance industry.

*151.* 167.   The Defendants did knowingly and with malice/aforethought use fundamental elements of state to perpetrate their massive criminal scheme, a scheme that they knew would subject them to criminal indictments if exposed. The Defendants, though their extensive network of NJ lawyers/judges/physicians/insurance executives did use the US mail and wires to further their commission of the crime of 'Fraud on the Court' within the executive/legislative/judicial branches of the State of New Jersey and that of the United States.

*152.* 168.   The Defendants, in collusion/conspiracy with **The Kaul Cases** Defendants, did use the US mail and wires to transmit a knowingly fraudulent legal instrument, that of the revocation, to foreign medical boards/councils. The purpose of this international dissemination was to attempt to prevent Kaul from re-commencing clinical medicine, an occurrence the Defendants recognized would re-establish Kaul's livelihood and increase the likelihood that their crimes would be exposed.

*153.* 169.   On multiple occasions during the hearing in the NJ OAL (April 9 to June 28, 2013), a proceeding presided over by **The Kaul Cases** Defendant, Jay Howard Solomon, Esq, Defendant Brown appeared in the audience.

*154.* 140. During the aforementioned hearing, a series of Kaul's business competitors (Kenneth Rieger-orthopedic-affiliated with hospital/George Naseef-orthopedic-affiliated with hospital/Arash Emami-orthopedic-affiliated with hospital/Alfred Steinberger-neurosurgeon-affiliated with hospital), testified for Defendant Hafner.

*155.* 141. Defendant Kaufman engaged in healthcare business with these business competitors of Kaul and was affiliated with the same hospitals as these individuals. These hospitals also competed with Kaul for business in the minimally invasive spine surgery sector in New Jersey.

*156.* 142. Defendants Hafner/Kaufman, in furtherance of their scheme to attempt destroy Kaul, caused Defendant Brown to become associated with Rieger/Naseef/Emami/Steinberger, in order to have them provide testimony against Kaul in the frivolous medical malpractice claims filed by Defendant Brown, on behalf of patients that Defendant Hafner recruited through a prolonged campaign of manipulation, deceit and lies.

*157.* 143. In late 2013, after Defendant Kaufman and **The Kaul Cases** Defendant, Przybylski, had been exposed on cross examination as perjurers in the hearing in the NJ OAL (April 9 to June 28, 2013), they both withdrew from medical malpractice cases in which they had provided knowingly false 'expert' testimony against Kaul, that he was not qualified to perform minimally invasive spine surgery and had allegedly deviated from the standard of care. The patients on whom these individuals testified had all improved after the care they received from Kaul, as is evident from their clinical notes.

*158.* 144. All of the patients on whom the State of New Jersey based their case to revoke Kaul's license either improved or had accepted outcomes, as determined by all medical literature. From 2002 to 2012 Kaul performed eight hundred (800) minimally invasive spine surgeries with good to very good outcomes in 90-95% of cases (average is 65-70%) and a complication rate of 0.1% (average is 5-15%).

*159.* 145. Defendants Kaufman/Brown/Hafner, in collusion/conspiracy with **The Kaul Cases** Defendants, recruited and then funneled patients into the malpractice racket being orchestrated by **The Kaul Cases** Defendant, Christie. This individual received kickbacks from Defendant Brown and a multitude of other NJ personal injury lawyers, as part of a series of quid pro quo schemes, in which he abused the power of public office to commit judicial corruption/obstruct justice/cause the entry of multi-million-dollar judgments against Kaul and his malpractice carrier.

*160.* 146. **Defendant Kaufman + Defendant Brown**
Date range: 2012 to 2018.
Mode of communications: Email + Voice Message + SMS + Face-To-Face
Substance of communications: **(i)** Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians. **(ii)** Scheme to obstruct justice by corrupting NJ state court judges into entering fraudulent judgments against Kaul and his medical malpractice carriers. **(iii)** Scheme to participate in sham

litigation against Kaul. **(iv)** Scheme to participate in sham litigation against Kaul's physician employees. **(v)** Scheme to use the NJ state court system to propagate the knowingly fraudulent arguments submitted by Defendants Hafner/Kaufman and co-conspirator, Gregory Przybylski, in the administrative board proceedings (April 9 to June 28, 2013). **(vi)** Scheme to use the NJ state court system to propagate the knowingly illegal opinion issued on December 13, 2013, by co-conspirator/administrative law judge, Jay Howard Solomon.

Tactics Employed: **(i)** Conspired to and did participate in sham litigation and provided knowingly false testimony that caused the entry of multi-million-dollar judgments against Kaul and his medical malpractice carrier. **(ii)** Conspired to and did cause the filing/publication of these false judgments with the National Practitioners Data Bank, co-conspirator, State of New Jersey, and in collusion with media co-conspirators, North Jersey Media Group/www.nj.com, into the public domain and onto the internet. **(iii)** Conspired to and did provide knowingly false testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care because Kaul did not possess alternative privileges/hospital privileges and did not participate in an orthopedic/neurosurgical residency. **(iv)** Conspired to and did participate in sham litigation against Kaul's physician employees, falsely testifying that they were not qualified to perform minimally invasive spine surgery and had committed insurance fraud. **(v)** Conspired to and did participate in sham litigation purposed to professionally ostracize Kaul, cause him to leave the United States and prevent him from publicly exposing the Defendants crimes. **(vi)** Use of the US mail and wires to defraud patients of their right to honest services by communicating knowingly false information that Kaul was not qualified to perform minimally invasive spine surgery. **(vii)** Conspire and collude with the legal/political apparatus of the State of New Jersey to perpetrate a knowingly illegal scheme to defraud Kaul, his medical malpractice carrier and the public of their property, their right to honest services and medical care. **(viii)** Conspire and collude to deprive Kaul of his constitutionally protected right to an impartial tribunal in proceedings, the outcomes of which resulted in the loss of his livelihood, property and liberty. **(ix)** Conspire to propagate and propagate within the New Jersey Superior Court system, the December 13, 2013 opinion of **The Kaul Cases** Defendant/co-conspirator, Jay Howard Solomon (NJ OAL Judge), a knowingly fraudulent legal instrument, the product of a massive 'Fraud on the Court' (revocation) committed by **The Kaul Cases** Defendants. **(x)** Conspire to use and use the US mail and wires to transmit a knowingly fraudulent legal instrument in furtherance of the scheme to defraud Kaul/his malpractice carrier of their property. **(xi)** Conspire with judges in the New Jersey Superior Court system to use its legal apparatus to perpetuate the fraud committed in the NJ OAL, to defraud the public of its right to honest services through the commission of schemes of judicial corruption and to fraudulently obtain multi-million-dollar judgments from Kaul's malpractice carrier. **(xii)** Conspire with judges in the NJ Superior Court system to manufacture knowingly fraudulent legal judgments in an attempt to provide further legal cover for the crimes (2006 to 2018) committed by **The Kaul Cases** Defendants in administrative/state/bankruptcy/federal courts within the geographic boundaries of co-conspirator, State of New Jersey. **(xiii)** Conspire to propagate and propagate the knowingly false arguments submitted by **The Kaul Cases** Defendants, Kaufman/Przybylski/Hafner, in the administrative hearing (April 9 to June 28, 2013), by

using the US mail/wires and the politico-legal apparatus of the State of New Jersey. **(xiv)** Conspire to provide kickbacks and provide kickbacks to **The Kaul Cases Defendant** Christie as part of a quid pro quo scheme, in which Defendant Christie abused the power of the state to have Kaul's license illegally revoked, have the event widely publicized for almost four (4) years, order courts within the geographic boundaries of New Jersey to deny/obstruct Kaul's defenses, expedite the entry of illegal judgments against Kaul/his medical malpractice carrier, have his AG continue to recruit/encourage Kaul's patients to sue him and order the entire politico-legal apparatus of the State of New Jersey to not provide Kaul with medical expert or legal assistance in his defense of the cases.

Location: Across the US mail and wires + Law Firm of Lomurro Law + NJ State Superior Court.

## 147. **Defendant Kaufman + Defendant Hafner**

Date range: 2009 to 2021.

Mode of communications: Email + Voice Message + SMS + Face-To-Face

Substance of communications: **(i)** Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians. **(ii)** Scheme to obstruct justice by corrupting NJ state court judges into entering fraudulent judgments against Kaul and his medical malpractice carriers. **(iii)** Scheme to participate in sham litigation against Kaul. **(iv)** Scheme to participate in sham litigation against Kaul's physician employees. **(v)** Scheme to use the NJ state court system to propagate the knowingly fraudulent arguments submitted by Defendants Hafner/Kaufman and co-conspirator, Gregory Przybylski, in the administrative board proceedings (April 9 to June 28, 2013). **(vi)** Scheme to use the NJ state court system to propagate the knowingly illegal opinion issued on December 13, 2013, by co-conspirator/administrative law judge, Jay Howard Solomon. **(vii)** Scheme to corrupt judges in the United States District Court-District of New Jersey-Newark to obstruct justice and Kaul's prosecution of **The Kaul Cases**, in order to attempt to prevent Kaul from exposing the crimes of **The Kaul Cases** Defendants (2006 to 2021). **(viii)** Scheme to use the US mail/wires to attempt to destroy evidence of the crimes by coercing/co-opting/conspiring with co-conspirators/third-party witnesses to attempt to delete emails/texts/voice messages that are either incriminating/have any relation to Kaul.

Tactics Employed: **(i)** Conspired to and did participate in sham litigation and provided knowingly false testimony that caused the entry of multi-million-dollar judgments against Kaul and his medical malpractice carrier. **(ii)** Conspired to and did cause the filing/publication of these false judgments with the National Practitioners Data Bank, co-conspirator, State of New Jersey, and in collusion with media co-conspirators, North Jersey Media Group/www.nj.com, into the public domain and onto the internet. **(iii)** Conspired to and did provide knowingly false testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care because Kaul did not possess alternative privileges/hospital privileges and did not participate in an orthopedic/neurosurgical residency. **(iv)** Conspired to and did participate in sham litigation against Kaul's physician employees, falsely testifying that they were not qualified to perform minimally invasive spine surgery and had committed insurance fraud. **(v)** Conspired to and did participate in sham litigation purposed to professionally

ostracize Kaul, cause him to leave the United States and prevent him from publicly exposing the Defendants crimes. **(vi)** Use of the US mail and wires to defraud patients of their right to honest services by communicating knowingly false information that Kaul was not qualified to perform minimally invasive spine surgery. **(vii)** Conspire and collude with the legal/political apparatus of the State of New Jersey to perpetrate a knowingly illegal scheme to defraud Kaul, his medical malpractice carrier and the public of their property, their right to honest services and medical care. **(viii)** Conspire and collude to deprive Kaul of his constitutionally protected right to an impartial tribunal in proceedings, the outcomes of which resulted in the loss of his livelihood, property and liberty. **(ix)** Conspire to propagate and propagate within the New Jersey Superior Court system, the December 13, 2013 opinion of **The Kaul Cases** Defendant/co-conspirator, Jay Howard Solomon (NJ OAL Judge), a knowingly fraudulent legal instrument, the product of a massive 'Fraud on the Court' (revocation) committed by **The Kaul Cases** Defendants. **(x)** Conspire to use and use the US mail and wires to transmit a knowingly fraudulent legal instrument in furtherance of the scheme to defraud Kaul/his malpractice carrier of their property. **(xi)** Conspire with judges in the New Jersey Superior Court system to use its legal apparatus to perpetuate the fraud committed in the NJ OAL, to defraud the public of its right to honest services through the commission of schemes of judicial corruption and to fraudulently obtain multi-million-dollar judgments from Kaul's malpractice carrier. **(xii)** Conspire with judges in the NJ Superior Court system to manufacture knowingly fraudulent legal judgments in an attempt to provide further legal cover for the crimes (2006 to 2018) committed by **The Kaul Cases** Defendants in administrative/state/bankruptcy/federal courts within the geographic boundaries of co-conspirator, State of New Jersey. **(xiii)** Conspire to propagate and propagate the knowingly false arguments submitted by **The Kaul Cases** Defendants, Kaufman/Przybylski/Hafner, in the administrative hearing (April 9 to June 28, 2013), by using the US mail/wires and the politico-legal apparatus of the State of New Jersey. **(xiv)** Conspire to provide kickbacks and provide kickbacks to **The Kaul Cases Defendant** Christie as part of a quid pro quo scheme, in which Defendant Christie abused the power of the state to have Kaul's license illegally revoked, have the event widely publicized for almost four (4) years, order courts within the geographic boundaries of New Jersey to deny/obstruct Kaul's defenses, expedite the entry of illegal judgments against Kaul/his medical malpractice carrier, have his AG continue to recruit/encourage Kaul's patients to sue him and order the entire politico-legal apparatus of the State of New Jersey to not provide Kaul with medical expert or legal assistance in his defense of the cases. **(xv)** Conspire to destroy/tamper with evidence/witnesses and actually attempt to destroy/tamper with evidence/witnesses, in an attempt to obstruct justice and Kaul's prosecution of **The Kaul Cases**.
Location: Across the US mail and wires + Law Firm of Lomurro Law + NJ State Superior Court + Office of the NJ AG.

## *162.* 148.    Defendant Brown + Defendant Hafner
See above. As with Defendant Kaufman + Defendant Hafner.

**Antitrust/RICO**

**Enterprise - State of New Jersey-Connecticut ("NJC-E")**
**Defendant Persons - Kaufman/Christie/AQR**
**Pattern of Racketeering/RICO Predicate Acts - Mail**
**Fraud/Wire/Conspiracy/Obstruction of Justice/Bribery/Kickbacks**

**Overview**:

*163.* 149.   In a period commencing in or around 2009, the Defendants did conspire to commit and did commit knowing and malicious violations of antitrust law, the purpose of which was to further their political/economic agendas. The antitrust scheme consisted of boycotts/vertical agreements/horizontal agreements, per se violations of relevant state/federal law.

**Market Power**:

*164.* 150.   The two factors that explain why and how there exists constitutionally excessive power over the healthcare sector within the Office of the NJ Governor are: **(i)** the unconstitutional configuration of the mechanism of physician regulation; **(ii)** a system of so called 'political campaign donations' that is nothing more than a scheme of public corruption. The coalescing of these two factors with an abuse of political power for political/economic/personal gain accounts for the violations of antitrust law orchestrated by Defendant Christie in collusion/conspiracy with **The Kaul Cases** Defendants in a period commencing in 2006. For profit healthcare corporations (insurance/hospital/pharmaceutical/medical device) purchase power in the New Jersey healthcare market, through the purchasing of the executive/legislative/judicial branches of the state, a power that they then use to illegally eliminate competition through the commission of per se antitrust violations, the purpose of which is to monopolize the market to the grave/lethal detriment of the public. The injury to the public consists of reduced access to healthcare/increased cost/increased morbidity/increased mortality. The latter two injuries are evidenced in the devastating impact that COVID-19 had on the American public (there is a direct correlation between COVID-19 deaths and corruption in healthcare systems) and in the human catastrophe that is the so called **"opiate epidemic"**. K2/K5/K7 Defendant, NJBME, justifies its existence by claiming that it **"protects the public"**. This is a false claim, as it actually harms the public, in that it is nothing more than an anticompetitive **"racketeering"** weapon, used by politicians/judges/lawyers corrupted by for-profit healthcare corporations, who profit at the expense of human life and who have bribed their way into practicing medicine without a license.

*165.* 151.   The regulatory mechanism of physician regulation in New Jersey is illegal and exists in violation of the due process/impartial tribunal clauses of both Constitutions of the State and that of the United States. The three agencies involved in the process, AG/NJBME/OAL, are all under control of the executive branch of government, and the executive from 2009 to 2017 was Defendant Christie. K2/K5/K7 Defendant NJBME

remains in violation of the law promulgated in 2015 by the Supreme Court of the United States in North Carolina Dental Board v FTC, and thus it nor its members have any immunity.

**Foreclosure from the American/Global Healthcare Market:**

*166.* 162.   **The Kaul Cases** Defendants **"pattern of racketeering"** and per se antitrust violations (2006 to 2021) constitute violations of the law to a criminal standard, in that they conspired to commit and did commit the felonies of mail fraud/wire fraud/perjury/obstruction of justice/bribery/kickbacks that resulted in the illegal revocation (March 24, 2014) of Kaul's NJ license, its international dissemination using the US mail/wires to foreclose Kaul not just from the American healthcare market, but from that of the world, thus causing antitrust and **"racketeering"** injuries to the world healthcare market. Kaul was planning to further expand his global minimally invasive spine surgery business, when his license was illegally suspended/revoked, and his reputation maliciously destroyed by **The Kaul Cases** Defendants.

*167.* 163.   **The Kaul Cases** Defendants antitrust/racketeering crimes defrauded Kaul of almost a decade of his professional life or approximately twenty-five percent (25%), the equivalent or worse of being wrongly incarcerated for a decade of one's most productive years.

*168.* 164.   The Defendants in the conception/development/execution of their knowingly illegal antitrust scheme to restrict competition in the American minimally invasive spine surgery market, did recognize that their malicious manipulation of the market would cause immense mortality/morbidity to the American public.

*169.* 165.   The Defendants manipulation of the minimally invasive spine surgery market has contributed to the so called **"opiate epidemic"**, in that because it artificially reduced the availability of pain-relieving spine surgical services, patients were forced to resort to opiates for control of their pain.

*170.* 166.   However, the insurance industry, of which **The Kaul Cases** Defendants, Allstate/Geico are members, and from which Defendant AQR profits, has continued to restrict the pain market by using state/federal investigative/regulatory/prosecutorial authorities to eliminate physicians who treat pain, by having their licenses suspended/revoked and or incarcerated. The Defendants recognize that less healthcare is delivered if there are fewer physicians/patients and if regulatory obstacles/prosecutorial threats are levied. These manipulations cause artificially elevated profits, that are not a consequence of a superior service, but of a **"pattern of racketeering"** purposed to cause an antitrust injury and all its attendant consequences.

*171.* 167.   The Defendants were motivated to restrict the market, as they knew that a greater percentage of the public's auto and health insurance premiums would be diverted to them, in the form of increased political campaign donations/increased

executive compensation/increased share value/increased revenue from medical professional services.

*/7)* **158.** In approximately 2009, the Defendants, in collusion/conspiracy with **The Kaul Cases** Defendants, perpetrated an insurance/hospital industry scheme of bribery/public corruption/judicial corruption through the executive/legislative/judicial branches of the NJ state government. In the scheme, sham legislation was enacted to artificially restrict the performance of interventional pain/minimally invasive spine surgery in outpatient surgical centers, in order to divert this healthcare business into hospitals and to those physicians associated/employed with hospitals, for the purposes of assuming monopoly control.

*173* **159.** The insurance-hospital industries, in conspiring to manipulate and manipulating the minimally invasive spine surgery market, did recognize that both would illegally profit as spine care would be rendered less available due to its restriction/rationing to hospitals and thus the insurance industry, from which AQR profits, would report greater profits, that they knew, however, would be at the cost of human life. The restricted market was disproportionately/artificially/illegally directed to the hospital industry.

*174* **160.** The Defendants conducted their knowingly illegal antitrust scheme under the cover of the State of New Jersey, while using the US mail/wires to perpetrate a knowing falsehood that Kaul was performing minimally invasive spine surgery in a **"one-room"** surgical center, that of the NJSR Surgical Center. It is a four-thousand square foot (4,000) state-of-the-art Medicare certified, AAAHC accredited surgical center, in which Kaul had been credentialed to perform minimally invasive spine surgery, through a process that involved both the federal government and that of the State of New Jersey. The space consisted of: **(i)** patient reception; **(ii)** administrative office; **(iii)** staff kitchen; **(iv)** patient intake/clinical assessment area; **(v)** elevator to the second; **(vi)** steps to the second floor; **(vii)** second floor-patient bathroom; **(viii)** second floor-Class C Operating Room; **(ix)** preoperative patient area; **(x)** postoperative patient area. The **"one-room"** lie was a further attempt by the Defendants to provide cover/justification for their crimes and those of **The Kaul Cases** Defendants.

*175.* **161.** The Defendants scheme of premeditated antitrust violations were intended to economically harm Kaul/other minimally invasive spine surgeons/free standing surgical centers, while causing the neurosurgeons/orthopedic spine surgeons/hospitals-affiliated surgical centers/insurance industry to profit. The latter group, as with the insurance industry had engaged in massive/prolonged schemes of public corruption, partly under the guise of so called 'political campaign' donations.

*176* **162.** The Defendants antitrust scheme involved conspiracies with, amongst others: **(i)** patients to sue Kaul; **(ii)** spine device representatives to not supply Kaul with surgical product as part of a group boycott; **(iii)** patients to file complaints with K1/K2/K5/K7 Defendant NJBME to have Kaul's license revoked; **(iv)** personal injury lawyers, such as Defendant Brown, to file medical malpractice lawsuits; **(v)** state court judges to enter multi-million dollar judgments against Kaul; **(vi)** K2/K5 Defendant/NJ OAL Judge, Jay

74

Howard Solomon, to revoke Kaul's license (March 24, 2014); **(vii)** lawyers to not provide Kaul with legal assistance; **(viii)** judges in the United States Bankruptcy Court for the District of New Jersey to obstruct justice as detailed in K4; **(ix)** judges in the United States District Court for the District of New Jersey to obstruct justice as detailed in K11-3; **(x)** Federation of State Medical Boards/State Medical Boards to attempt to obstruct Kaul from obtaining a license in the United States; **(xi)** patients to stop treating with Kaul; **(xii)** other physicians to not refer patients to Kaul for minimally invasive spine surgery.

*177.* 163. The Defendants antitrust scheme/conspiracy was massive and extended into all elements of society: **(i)** NJ state/local/municipal government; **(ii)** NJ Supreme Court/Appellate Court/Superior Court/OAL/NJBME/Office of the AG/NJ State Bar; **(iii)** NJ Legislature. In 2015 Loretta Weinberg, a NJ career politician, sought to have enacted a bill regarding foreign convictions, that Defendant Christie/State AG considered applying retroactively to Kaul, despite the fact that they knew the UK case was a political prosecution, that had no legal equivalent in the US.

*178.* 164. The Defendants, in the commission of their knowingly per se antitrust violations, did orchestrate/participate/aid/abet a series of administrative hearings (April 2, 2012 to March 24, 2014) that were conducted illegally, in which there were two hundred and seventy-eight **(278)** separate instances of perjury/evidential falsification/witness tampering/evidential omission, that resulted in, amongst other things: **(i)** the illegal revocation of Kaul's license (March 24, 2014); **(ii)** the imposition of a knowingly illegal 'fine' of \$475,000; **(iii)** the entry of multi-million dollar state court judgments against Kaul/his malpractice carrier; **(iv)** the exclusion from the national minimally invasive spine surgery market of well qualified physicians who became fearful of losing their licenses/livelihoods; (v) an intentional injury to the minimally invasive spine surgery market.

*179.* 165. The Defendants, in collusion/conspiracy with **The Kaul Cases** Defendants, conspired to and did monopolize (2006 to 2021) the minimally invasive spine surgery market, a consequence of which has been a reduced availability of the service and an increase in cost to the public, in the form of elevated insurance deductibles and copays.

### Conspiracy-Antitrust-RICO:

*180.* 166. In a period that commenced in 2006, the Defendants and their co-conspirators, cognizant of the law, did conspire to violate and did violate, the provisions of RICO/Sherman-Clayton Acts. The scheme to eliminate Kaul initially involved rule of reason antitrust violations (2006), but rapidly progressed to per se violations when the former failed to complete its mission. However, despite the Defendants commission of per se violations, in collusion/conspiracy with the power of the executive/legislative/judicial branches of state government, they still were unable to complete their mission. In 2009, the Defendants with Defendant Christie at the helm, incorporated **"racketeering"** into their Kaul elimination scheme, but despite destroying his economic standing/professional reputation remained unable to have him

jailed/deported/killed and thus eliminated. By 2012/2013 the Defendants scheme had co-opted the NJ FBI field office/US Attorney (Paul Fishman) and every healthcare related agency/law enforcement bureau in the United States. But still, the Defendants failed to complete their mission. From 2012 to 2016, the Defendants/co-conspirators, in collusion/conspiracy with administrative/state/bankruptcy courts/judges within the geographic boundaries of the State of New Jersey continued to have entered knowingly illegal multi-million-dollar judgments entered against Kaul/his malpractice carrier. In this period, the Defendants conspired with **The Kaul Cases** Defendant, NJBME, to obstruct Kaul's 2014 application for license reinstatement, an act consistent with their guilty state-of-mind. The Defendants continued to disseminate every judgment against Kaul to every state/federal healthcare related/regulatory agency in the United States and across the media, as part of their Kaul elimination scheme. From 2013 to 2020, the Defendants/co-conspirators continued their crimes in the United States Bankruptcy Court for the District of New Jersey, causing immense injury to the businesses of hundreds of Kaul's creditors, many of whom were forced to file for bankruptcy, with hundreds of job losses. From 2016 to the present, the Defendants have continued their crimes in the United States District Court for the District of New Jersey/District of Columbia through their ongoing schemes of judicial corruption/public corruption/racketeering/antitrust violations, in an increasingly futile attempt to provide cover for their previous crimes, while continuing to fail to eliminate Kaul. In this period the Defendants continued to conspire with the Defendant federal/bankruptcy judges in the DNJ, to have entered orders that attempt to prevent Kaul from prosecuting them (2020) and or absolve them of their legal obligation to respond to claims filed against them by Kaul in other districts (2021). **The Kaul Cases** Defendants have been given enough rope, at the end of which they now find themselves. What began in 2005 with professional jealousy over Kaul inventing and performing the first minimally invasive outpatient spinal fusion, is in 2021, a scenario that will result in the incarceration of certain Defendants and a confiscation/lien by Kaul of all of their assets/future earnings.

191. 167. The antitrust claim is intertwined with a RICO claim, as the Defendants antitrust violations were the factual foundation from which the RICO predicate acts were then incorporated into the overall criminal scheme, a scheme that failed to eliminate Kaul, or as stated by Kaul's then-lawyer, Robert Conroy, on June 13, 2012 during a corrupted hearing in Trenton, NJ, in front of Defendant NJBME, to illegally rescind a consent agreement (signed May 9, 2012) into which Kaul had entered with the State of NJ:

**"Is his [Kaul] mere existence a risk?"**

192. 168. Conroy's question, maybe not unwittingly, pointed to the Defendants Kaul elimination scheme.

193. 169. Thus, plausibly pled within this hybrid claim, are facts that satisfy to the prevailing pleading standards of Rule 8/9 and Twombly/Iqbal the elements of RICO.

194. 170. In a period commencing in approximately 2009, the Defendants did conspire to conduct and did conduct a **"pattern of racketeering"** through the knowingly illegal

commission of hundreds of the RICO predicate acts of mail fraud/wire fraud/conspiracy/obstruction of justice/bribery/kickbacks in furtherance of both their political/economic agendas and those of their co-conspirators and **The Kaul Cases** Defendants. The purpose of these crimes was to have Kaul's license revoked/have entered multi-million-dollar state court judgments/destroy his reputation, the latter an attempt to prevent him from re-establishing his livelihood and exposing the Defendants' crimes and those of **The Kaul Cases** Defendants.

*105.* **171.** Defendants Christie/AQR did use the US mail and wires in furtherance of the afore-stated racket, as well as face-to-face meetings through which they conducted knowingly illegal quid pro quo schemes that involved the executive/legislative/judicial branches of the State of New Jersey, the NJBME, the NJ AG, the NJ OAL and the NJ State Court system.

*106.* **172.** The Defendants, cognizant of their conversion of the State of New Jersey into a racketeering **"enterprise"** and in full knowledge of its illegality, did recognize that the perpetration of their crimes required the knowing collaboration/conspiracy of a multitude of prominent judges/legal/political/medical/media/insurance/hospital executives and professionals. This list of co-conspirators/collaborators, a number of whom are Defendants within **The Kaul Cases** includes, but is not limited to: **(i)** Defendant Richard Crist; **(ii)** Defendant Jay Howard Solomon (K2/K5-state court judge) **(iii)** Defendant Kenneth Grispin (P2-state court judge); **(iv)** Defendant Jose Linares (K11-3-federal court judge); **(v)** Defendant Stewart Leviss, Esq (K11-3-lawyer for Defendants William Mitchell, MD/Marc Cohen, MD); **(vi)** Defendant John Robertelli, Esq (K11-1-lawyer for Defendant Geico); **(vii)** Defendant Steven Sweeney (K11-1-NJ Senate President); **(viii)** Defendant Cory Booker (K11-1-US Senator-NJ); **(ix)** Defendant Gregory Przybylski, MD (K1/K2/K5-2011 President of the North American Spine Society-neurosurgeon); **(x)** Defendant Peter Carmel, MD (K1-2011 President of the AMA-neurosurgeon); **(xi)** Defendant Warren Buffet (K1-CEO Berkshire Hathaway); **(xii)** Defendant Robert Garrett (K1/K2/K5-CEO of Defendant Hackensack University Medical Center); **(xiii)** Gannett Media.

*107.* **173.** Defendants Kaufman/Christie/AQR, in the conception/planning/execution of their crimes, did recognize that their corrupt use of the Office of the NJ AG/NJBME/NJ-OAL/NJ-State Court, although knowingly illegal, would provide massive cover for their massive crimes.

*108.* **174.** Defendants Kaufman/Christie/AQR, in the belief/conviction that Kaul would never expose their crimes, did knowingly and with malice/impunity violate RICO, in their pursuit of profit and political gain, but with the knowledge that if their crimes came to the attention of state/federal/international investigative/prosecutorial authorities, they would be incarcerated for a lengthy term in a domestic/foreign penitentiary.

*109.* **175.** Defendants Kaufman/Christie/AQR were convinced that their crimes would go undetected because they were sure Defendant Christie would become the 45th President of the United States, and that immunity would prevent Kaul from prosecuting

the President, and that without Christie as a Defendant, Kaul would be unable to prove his case. These beliefs were false, but their existence is evidence that **The Kaul Cases** Defendants believe they are above the law, or as Defendant Hafner (K2/K5-NJ Deputy AG) is prone to 'parroting' about innocent physicians whose lives she destroys: **"Dr. X believes he can thumb his nose at the law ... Dr. X doesn't get to write the rules."**

*190.* 1/6.   Defendant AQR, in its capacity as a major corporate shareholder in Defendant Allstate, did simultaneously conduct a **"pattern of racketeering"** as detailed above, while aiding and abetting Defendant Allstate's (K1/K2/K3/K5/K7/P1/P2) decades-long **"pattern of racketeering"** (mail fraud/wire fraud/subornation of perjury/obstruction of justice/bribery) through, by and with the **"enterprise"** of The State of New Jersey, through the exploitation of the health/economic welfare of the American public/medical profession.

*191.* 1/7.   Pursuant to RICO/doctrines of vicarious liability, Defendant AQR is liable for the crimes of Defendant Allstate, and Defendant Allstate is liable for the crimes of Defendant AQR.

*192.* 1/8.   **Defendant Kaufman + Defendant Christie**
Date range: 2010 to 2017.
Conduits of Communication + Bribery to Christie:
Through state government intermediaries.
Mode of communications: Email + Voice Message + SMS + Face-To-Face
Substance of communications:
**(i)** Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians. **(ii)** Scheme to obstruct justice by abusing the power of political/public office to corrupt NJ state court judges into entering fraudulent judgments against Kaul and his medical malpractice carriers. **(iii)** Scheme to file complaints against Kaul with state and federal regulatory authorities. **(iv)** Scheme to participate in sham litigation against Kaul. **(v)** Scheme to participate in sham litigation against Kaul's physician employees. **(vi)** Scheme to revoke Kaul's license. **(vii)** Scheme to destroy Kaul's reputation. **(viii)** Scheme to destroy Kaul's economic standing. **(ix)** Scheme to have Kaul ostracized. **(x)** Scheme to have Kaul leave the United States. **(xi)** Scheme to have co-conspirator and NJ Administrative Law Judges, Jay Howard Solomon buttress co-conspirator, Gregory Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care. **(xii)** Scheme to have Defendant Hafner pervert the course of justice by buttressing Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care. **(xiii)** Scheme to engage in evidence tampering and perjury in the administrative board proceedings, that caused the revocation of Kaul's license, as evidenced in 'The Solomon Critique' (K1-D.E. 225 Page ID 4940) and 'The Solomon Critique 2' (K1-D.E. 299 Page ID 7202). **(xiv)** Scheme to violate Kaul's right to due process, his right to an impartial tribunal and his civil rights, through the commission of knowingly false testimony that Kaul had allegedly "grossly deviated" from the standard of care for

reasons pertaining to qualifications, credentials, alternative privileges and hospital privileges. Defendant Hafner knew that under the law the standard of care is not determined by any of these reasons, but simply by the manner in which the care is delivered, but yet in this knowledge she abused the power of public office for personal and political gain, at the expense of the public. **(xv)** Scheme to abuse the power of public office and quasi-judicial proceedings to perpetrate a massive fraud on the public, by willfully misrepresenting that Kaul was not qualified, credentialed or licensed to perform minimally invasive spine surgery. The defendants knew that Kaul possessed a license to practice medicine and surgery, had been credentialed by at least six state licensed surgical centers to perform minimally invasive spine surgery, did not require alternative or hospital privileges to perform minimally invasive spine surgery, had commenced his training in minimally invasive spine surgery in 2002, three years before co-conspirator Gregory Przybylski, a market competitor and 'expert' for Defendant NJBME. **(xvi)** Scheme to propagate to the public, a knowingly false interpretation of the alternative privilege regulation, in the knowledge that they were abusing the power of public office for personal and political gain. The defendants knew that Kaul did not require alternative privileges to perform minimally invasive spine surgery in his outpatient surgical center. **(xvii)** Scheme to suppress evidence of the superior clinical outcomes of Kaul's minimally invasive spine surgery practice, by refusing to have Kaul's practice independently analyzed and monitored. **(xviii)** Scheme to engage in obstruction of justice by ignoring Kaul's written requests for an independent investigation of Kaul's claims of evidence tampering. **(xix)** Scheme to participate in a knowingly illegal system of physician regulation, that violated Kaul's civil rights, his constitutionally protected right to due process and his right to an impartial tribunal, by willfully conducting proceedings through and by Defendant NJBME, the New Jersey Office of Administrative Law and the Office of the New Jersey Attorney General. These governmental agencies are all subservient to the executive branch of state government. This is an illegal configuration that violates the separation of powers principle of the United States Constitution, a principle that protects citizens due process rights when life, liberty and property are at stake. **(xx)** Scheme to abuse the authority of the office of the Governor of the State of New Jersey for the purposes of accepting bribes, as part of a series quid pro quo schemes purposed to have Defendant NJBME revoke Kaul's license + Scheme to violate Kaul's right to due process by failing to exclude Defendant Hafner from any further involvement in Kaul's case and or his application in 2014 for reinstatement of his medical license. This was a knowing and willful violation based on the fact that Kaul had filed an ethics complaint against Hafner in September 2013. **(xxi)** Scheme to deprive Kaul of his civil rights and right to due process by permitting Defendant Hafner, an individual involved in a personal relationship with Defendant Kaufman, who, like Defendant Kaufman, had demonstrated an inexplicable personal animus towards Kaul.

Tactics Employed:

The Defendants scheme involved the following tactics, at the center of which lay the 'pawn' like manipulation of Kaul's patients to provide false testimony against Kaul, and perjure themselves by claiming that their pain increased after the care they received from Kaul:

2012 to 2016(The illegal revocation of Kaul's license + The manipulation of public opinion against Kaul + The filing of multiple frivolous medical malpractice lawsuits in corrupted NJ state courts - Essex County/Union County):

**(i)** Conspire to and commit bribery by funneling bribes in a series of quid pro quo schemes to Defendant Christie from the NJ plaintiff's bar, Defendant Brown, the American Association of Orthopedic Surgeons and Defendant Murphy to have co-conspirator, New Jersey Board of Medical Examiners ("NJBME") revoke Kaul's license. **(ii)** Conspire to and collude with media co-conspirators, North Jersey Media Group/NJ. Com (Star Ledger) to publicize articles about the revocation/lawsuits, purposed to legitimize their crimes in the public eye and recruit more of Kaul's patients to file lawsuits. **(iii)** Conspire to and encourage patients to file lawsuits and complaints with co-conspirator, NJBME. **(iv)** Conspire to and encourage patients to file complaints with state and federal regulatory authorities, that the Defendants knew were false. **(v)** Conspired to and did participate in sham litigation and provided knowingly false testimony that caused the entry of multi-million-dollar judgments against Kaul and his medical malpractice carrier. **(vi)** Conspired to and did cause the filing/publication of these false judgments with the National Practitioners Data Bank, the State of New Jersey and in collusion with media co-conspirators, North Jersey Media Group/www.nj.com, into the public domain and onto the internet. **(vii)** Conspired to and did use the US mail and wires to cause a dissemination of these knowingly false judgments to members of the New Jersey medical/political/legal communities, the purpose of which was to aid and abet the destruction of Kaul's reputation. **(viii)** Conspired to and did provide knowingly false testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care because Kaul did not possess alternative privileges or hospital privileges. **(viii)** Conspired to and did provide knowingly fraudulent testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care, because Kaul's training did not involve an orthopedic or neurosurgical residency. **(ix)** Conspired to and did participate in sham litigation against Kaul's physician employees, falsely testifying that they were not qualified to perform minimally invasive spine surgery and had committed insurance fraud. **(x)** Conspired to and did participate in sham litigation purposed to professionally ostracize Kaul, cause him to leave the United States and prevent him from publicly exposing the Defendants crimes. **(xi)** Use of the US mail and wires to send patients letters/contact via telephone encouraging them to file frivolous lawsuits against Kaul. **(xii)** Use of the US mail and wires to defraud patients of their right to honest services by communicating knowingly false information that Kaul was not qualified to perform minimally invasive spine surgery. **(xiii)** Use of the US mail and wires to send knowingly false information to personal injury attorneys that Kaul was not qualified to perform minimally invasive spine surgery, had committed insurance fraud and was going to be indicted by the US Attorney for the District of New Jersey. **(xiv)** Use of the US mail and wires to send knowingly false information to New Jersey politicians, encouraging them to coerce co-conspirator, NJBME, to revoke Kaul's license. **(xv)** Use of the US mail and wires to order NJ state court judges to enter judgments against Kaul and his malpractice carrier in any and all medical malpractice cases filed against him. **(xvi)** Conspire and collude with law/public relation/political lobbying firms to funnel kickbacks to Defendant Christie, as part of a knowingly illegal series of quid pro quo schemes, in which a

80

percentage of the judgments were given to Christie in return for him using his executive power to have Kaul's license revoked, order corrupted state court judges to enter multi-million dollar judgments against Kaul/his medical malpractice carrier and order the New Jersey media to publicize each and every judgment. **(xvii)** Conspire and collude with the legal/political apparatus of the State of New Jersey to perpetrate a knowingly illegal scheme to defraud Kaul, his medical malpractice carrier and the public of their property, their right to honest services and medical care. **(xviii)** Conspire and collude to deprive Kaul of his constitutionally protected right to an impartial tribunal in proceedings, the outcomes of which resulted in the loss of his livelihood, property and liberty. **(xix)** Conspire and collude to use the US mail and wires to order members of the New Jersey medico-legal community to not provide expert testimony or legal services in his defense of these frivolous medical malpractice lawsuits. **(xx)** Conspire and collude to use the US mail and wires to transmit information in furtherance of Defendant Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have co-conspirator, NJBME, revoke Kaul's license. **(xxi)** Conspire and collude to obstruct justice by bribing or abusing the power of public office to corrupt state court judges into rendering multi-million-dollar judgments against Kaul and his medical malpractice carrier. **(xxii)** Conspire and collude to use the US mail and wires to transmit the illegal consequences of a massive 'Fraud on the Court' (the revocation/state court judgments) to the public, national (state/federal) and international healthcare agencies/regulatory bodies, in furtherance of the Defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment.
Location:
Governor's Office in Trenton + Christie/Republican Political Fundraisers + Office of the NJ AG.

## 179. **Defendant Kaufman + Defendant AQR**
Date Range: 2010 to 2017.
Mode of Communications: Email + Face-To-Face.
Substance of Communications: **(i)** Scheme to revoke Kaul's license. **(ii)** Scheme to destroy Kaul's reputation. **(iii)** Scheme to destroy Kaul's economic standing. **(iv)** Scheme to have Kaul ostracized. **(v)** Scheme to have Kaul leave the United States. **(vi)** Scheme to use the bankruptcy proceedings to defraud Kaul of his assets, his real estate holdings and $ 45 million owed to him by insurance companies, including defendants Allstate + Geico. **(vii)** Scheme to conceal from Kaul the defendants' pattern of racketeering in the United States Bankruptcy Court for the District of New Jersey. **(viii)** Conspiracy to obstruct justice and have entered adverse rulings in all cases filed against Kaul in administrative/state/bankruptcy/federal courts within the geographic boundaries of New Jersey. **(viii)** Conspiracy to use the media to propagate the fraudulent judgments/rulings procured in these courts. **(ix)** Conspiracy to use the US mail and wires to disseminate these fraudulent judgments/rulings to every local/state/federal/international healthcare related agency, including the DEA, the National Practitioners Data Bank, every state medical board and every medical council in the world. **(x)** Conspiracy to prevent Kaul from ever finding any employment anywhere in the world, in order that he would never be able to expose the crimes of **The**

**Kaul Cases** Defendants (in the period from April 2, 2012 to February 22, 2016, every time an article was published about one of the fraudulent cases, the journalist would ask a lawyer who had been associated with Kaul, whether he had left the country and if so, in what country was he residing - the purpose being to ascertain the likelihood that **The Kaul Cases** Defendants crimes would go undetected and to attempt to attack his position in that particular country.

Tactics Employed: **(i)** Use of US mail and wires to file false insurance fraud complaints against him with Defendant NJBME. **(ii)** Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery. **(iii)** Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud. **(iv)** Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked **(v)** Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license. **(vi)** Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States. **(vii)** Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow (works for the insurance industry) use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked. **(viii)** Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery. **(ix)** Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license. **(x)** Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHO RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license. **(xi)** Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine. **(xii)** Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license. **(xiii)** Use of the US mails and wires to transmit information in furtherance of their scheme of converting the United States Bankruptcy Court into a racketeering enterprise. **(xiv)** Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2'). **(xv)** Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment. **(xiv)** Use of the US mail and

wires to attempt to have Kaul's medical school (Royal Free/UCL Medical School, London, UK) erase his degrees in medicine/surgery (M.B. B.S.).
Location: Governor's Office in Trenton + Christie/Republican Political Fundraisers + United States Bankruptcy Court for the District of New Jersey + Law Offices of Wasserman/Jurista/Stolz.

## 94. 180. **Defendant Christie + Defendant AQR**

Date Range: 2010 to 2017.
Conduits of Communication + Bribery to Christie: Public Relation/Political Lobbying Firms (Mercury Public Relations + Princeton Public Relations) + Law/Political Lobbying Firms (Brach Eichler + Wolf Samson + Wasserman Jurista Stolz) + Through state government intermediary + Directly + Political campaign fundraisers + Political campaign donations.
Mode of Communications: Email + Face-To-Face.
Substance of Communications: **(i)** Scheme to revoke Kaul's license. **(ii)** Scheme to destroy Kaul's reputation. **(iii)** Scheme to destroy Kaul's economic standing. **(iv)** Scheme to have Kaul ostracized. **(v)** Scheme to have Kaul leave the United States. **(vi)** Scheme to use the bankruptcy proceedings to defraud Kaul of his assets, his real estate holdings and $ 45 million owed to him by insurance companies, including defendants Allstate + Geico. **(vii)** Scheme to conceal from Kaul the defendants' pattern of racketeering in the United States Bankruptcy Court for the District of New Jersey. **(viii)** Conspiracy to obstruct justice and have entered adverse rulings in all cases filed against Kaul in administrative/state/bankruptcy/federal courts within the geographic boundaries of New Jersey. **(viii)** Conspiracy to use the media to propagate the fraudulent judgments/rulings procured in these courts. **(ix)** Conspiracy to use the US mail and wires to disseminate these fraudulent judgments/rulings to every local/state/federal/international healthcare related agency, including the DEA, the National Practitioners Data Bank, every state medical board and every medical council in the world. **(x)** Conspiracy to prevent Kaul from ever finding any employment anywhere in the world, in order that he would never be able to expose the crimes of **The Kaul Cases** Defendants (in the period from April 2, 2012 to February 22, 2016, every time an article was published about one of the fraudulent cases, the journalist would ask a lawyer who had been associated with Kaul, whether he had left the country and if so, in what country was he residing - the purpose being to ascertain the likelihood that **The Kaul Cases** Defendants crimes would go undetected and to attempt to attack his position in that particular country.
Tactics Employed: **(i)** Use of US mail and wires to file false insurance fraud complaints against him with Defendant NJBME. **(ii)** Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery. **(iii)** Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud. **(iv)** Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked **(v)** Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant

NJBME to revoke Kaul's license. **(vi)** Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States. **(vii)** Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow (works for the insurance industry) use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked. **(viii)** Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery. **(ix)** Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license. **(x)** Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHO RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license. **(xi)** Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine. **(xii)** Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license. **(xiii)** Use of the US mails and wires to transmit information in furtherance of their scheme of converting the United States Bankruptcy Court into a racketeering enterprise. **(xiv)** Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2'). **(xv)** Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment. **(xiv)** Use of the US mail and wires to attempt to have Kaul's medical school (Royal Free/UCL Medical School, London, UK) erase his degrees in medicine/surgery (M.B. B.S.).
Location: Governor's Office in Trenton + Christie/Republican Political Fundraisers + United States Bankruptcy Court for the District of New Jersey + Law Offices of Wasserman/Jurista/Stolz.

### RICO/Unjust Enrichment

**Enterprise - State of New Jersey-Connecticut-U.S.B.C.-DNJ ("NJC-US-E")**
**Defendant Persons - Kaufman/Christie/AQR/CGLIC**
**Pattern of Racketeering/RICO Predicate Acts - Mail**
**Fraud/Wire/Conspiracy/Obstruction of Justice/Bribery/Kickbacks**

Overview:

195. 191. In a period commencing in approximately 2009, the Defendants did conspire to conduct and did conduct a **"pattern of racketeering"** through the **"enterprise"** of the State of New Jersey and its executive/judicial/legislative branches in furtherance of both their political/economic agendas and those of their co-conspirators and **The Kaul Cases** Defendants.

196. 192. The Defendants' **"pattern of racketeering"** consisted of the knowingly illegal commission of thousands of the RICO predicate acts of mail fraud/wire fraud/conspiracy/obstruction of justice/bribery/kickbacks, all purposed to illegally divert monies/services from the American public/medical profession, a grand scheme of embezzlement.

197. 193. The Defendants, in an attempt to further bolster the cover provided by the State of New Jersey, did use a system of so called 'politically connected' law/public relation/political lobbying firms (**"secondary cover"**) through which were funneled bribes and information necessary for the commission of their crimes.

198. 194. The Defendants did knowingly commit hundreds of felonies in collusion/conspiracy with the executive/legislative/judicial branches of the NJ state government/NJ division of the judicial branch of the federal government, in the mistaken belief that their system of secondary cover would prevent Kaul and or any state/federal investigative/prosecutorial authorities from exposing their crimes.

199. 195. Defendants AQR/CGLIC did launder the proceeds of their crimes on the NYSE, through the investment in a multitude of other publicly traded corporations.

200. 196. The Defendants, in laundering their criminal proceeds through the NYSE, have converted it and the corporations in which they invested into **"racketeering enterprises"** that have defrauded the market/public of their right to honest services and made liable the NYSE pursuant to both civil/criminal RICO. The NYSE has aided/abetted the Defendants crimes of money-laundering.

201. 197. Defendant Christie, in recognition of the lack of regulation of hedge-funds, did convert Defendant AQR into a racketeering **"enterprise"** through which he conducted a **"pattern of racketeering"** through the acquisition of shares and the laundering of the financial proceeds derived from the **"pattern of racketeering"** conducted in the enterprise of the State of New Jersey, a violation pursuant to section 1962(a).

202. 188.   The Defendants' conducted an **"open-ended pattern of racketeering"** that is ongoing, has been in existence since at least 1999 and has victimized multiple physicians, who have either had their licenses suspended/revoked, been incarcerated and or committed suicide. The majority of these physicians are either Indian or Middle Eastern and the **"pattern"** poses a continuing threat.

203. 189.   The cause of the open-endedness pertains to: **(i)** the ongoing system of political campaign financing, wherein corporations/individuals such as the Defendants, can, by virtue of Citizens United, funnel unlimited amounts of so called 'dark money' into political campaign coffers and thus control state governments; **(ii)** the ongoing control of state medical boards (K1/K2/K5/K7) by state governments, which are themselves controlled by the insurance industry; **(iii)** the ongoing control of state courts by state governments, which are controlled by the insurance industry; **(iv)** the system whereby federal judges are appointees of the political establishment, which itself is controlled by the insurance industry.

204. 190.   This system denies substantive justice in potentially any American court, to any physician illegally deprived of his life/liberty/property by the insurance industry and poses an existential threat to the American medical profession and thus the American public.

205. 191.   The Defendants' knowing violation of RICO was conducted in conjunction with a plan to cause a knowingly illegal unjust enrichment of the Defendants that they intended would cause an illegitimate impoverishment of Kaul, for which they believed he would have no legal remedy, as the illegal revocation/judgments were perpetrated under the cover of the State of New Jersey. The Defendants conspired to have Kaul provide minimally invasive spine surgery services to the injured clients of **The Kaul Cases** Defendants, Allstate/Geico, two corporations in which Defendant AQR maintains a controlling position, with the intention of defrauding him of the property of his professional services.

206. 192.   Defendant AQR's (Allstate/Geico) scheme of unjust enrichment has been in existence for at least decades and has defrauded hundreds of millions of dollars from physicians, in the knowledge that the physician will provide care to injured clients expecting to be compensated at some point in the future (average time from service to payment is 2 years) through a no-fault arbitration system. The scheme has no intention of ever paying the physician, and once the physician's accounts receivable reaches a certain amount, Defendants AQR/Christie/CGLIC/Kaufman manufactured a false case to have the physician's license suspended/revoked and or have him indicted/incarcerated. The scheme was perpetrated in conspiracy/collusion with the State of New Jersey. This is no different to the state-sponsored terrorism conducted out of Iran. In both the motive consists of furthering political/economic agendas and the method involves using the law to both justify and provide cover for the crimes.

207. 193.   The elements and the pattern of criminal conduct of the Defendants scheme involved the perpetration of a massive lie, which included the knowing falsehoods that Kaul was not qualified to perform minimally invasive spine surgery, had committed insurance fraud and had injured patients. The Defendants knew these statements to be lies, but propagated them nonetheless, as they believed Kaul would not expose their crimes.

208. 194.   **Defendant Christie + Defendant CGLIC**
Date Range: 2010 to 2017.
Conduits of Communication + Bribery to Christie: Public Relation/Political Lobbying Firms (Mercury Public Relations + Princeton Public Relations) + Law/Political Lobbying Firms (Brach Eichler + Wolf Samson + Wasserman Jurista Stolz) + Through state government intermediary + Directly + Political campaign fundraisers + Political campaign donations.
Mode of Communications: Email + Face-To-Face.
Substance of Communications: **(i)** Scheme to revoke Kaul's license. **(ii)** Scheme to destroy Kaul's reputation. **(iii)** Scheme to destroy Kaul's economic standing. **(iv)** Scheme to have Kaul ostracized. **(v)** Scheme to have Kaul leave the United States. **(vi)** Scheme to use the bankruptcy proceedings to defraud Kaul of his assets, his real estate holdings and $ 45 million owed to him by insurance companies, including defendants Allstate + Geico. **(vii)** Scheme to conceal from Kaul the defendants' pattern of racketeering in the United States Bankruptcy Court for the District of New Jersey. **(viii)** Conspiracy to obstruct justice and have entered adverse rulings in all cases filed against Kaul in administrative/state/bankruptcy/federal courts within the geographic boundaries of New Jersey. **(viii)** Conspiracy to use the media to propagate the fraudulent judgments/rulings procured in these courts. **(ix)** Conspiracy to use the US mail and wires to disseminate these fraudulent judgments/rulings to every local/state/federal/international healthcare related agency, including the DEA, the National Practitioners Data Bank, every state medical board and every medical council in the world. **(x)** Conspiracy to prevent Kaul from ever finding any employment anywhere in the world, in order that he would never be able to expose the crimes of **The Kaul Cases** Defendants (in the period from April 2, 2012 to February 22, 2016, every time an article was published about one of the fraudulent cases, the journalist would ask a lawyer who had been associated with Kaul, whether he had left the country and if so, in what country was he residing - the purpose being to ascertain the likelihood that **The Kaul Cases** Defendants crimes would go undetected and to attempt to attack his position in that particular country.
Tactics Employed: **(i)** Use of US mail and wires to file false insurance fraud complaints against him with Defendant NJBME. **(ii)** Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery. **(iii)** Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud. **(iv)** Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked **(v)** Use of the US mail and wires to organize

and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license. **(vi)** Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States. **(vii)** Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow (works for the insurance industry) use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked. **(viii)** Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery. **(ix)** Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license. **(x)** Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHO RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license. **(xi)** Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine. **(xii)** Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license. **(xiii)** Use of the US mails and wires to transmit information in furtherance of their scheme of converting the United States Bankruptcy Court into a racketeering enterprise. **(xiv)** Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2'). **(xv)** Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment. **(xiv)** Use of the US mail and wires to attempt to have Kaul's medical school (Royal Free/UCL Medical School, London, UK) erase his degrees in medicine/surgery (M.B. B.S.).
<u>Location</u>: Governor's Office in Trenton + Christie/Republican Political Fundraisers + United States Bankruptcy Court for the District of New Jersey + Law Offices of Wasserman/Jurista/Stolz.

**209.** **165.** **Defendant Christie + Defendant AQR:**
<u>Date Range</u>: See above. As with Defendant Christie + CGLIC.
<u>Conduits of Communication + Bribery to Christie</u>: See above. As with Defendant Christie + CGLIC.
<u>Mode of Communications</u>: See above. As with Defendant Christie + CGLIC.
<u>Substance of Communications</u>: See above. As with Defendant Christie + CGLIC.
<u>Tactics Employed</u>: See above. As with Defendant Christie + CGLIC.
<u>Location</u>: See above. As with Defendant Christie + CGLIC.

210. **196.** **Defendant Christie + Defendant Kaufman:**

Date range: 2010 to 2017.

Conduits of Communication + Bribery to Christie:

Through state government intermediaries.

Mode of communications: Email + Voice Message + SMS + Face-To-Face

Substance of communications:

**(i)** Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians. **(ii)** Scheme to obstruct justice by abusing the power of political/public office to corrupt NJ state court judges into entering fraudulent judgments against Kaul and his medical malpractice carriers. **(iii)** Scheme to file complaints against Kaul with state and federal regulatory authorities. **(iv)** Scheme to participate in sham litigation against Kaul. **(v)** Scheme to participate in sham litigation against Kaul's physician employees. **(vi)** Scheme to revoke Kaul's license. **(vii)** Scheme to destroy Kaul's reputation. **(viii)** Scheme to destroy Kaul's economic standing. **(ix)** Scheme to have Kaul ostracized. **(x)** Scheme to have Kaul leave the United States. **(xi)** Scheme to have co-conspirator and NJ Administrative Law Judges, Jay Howard Solomon buttress co-conspirator, Gregory Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care. **(xii)** Scheme to have Defendant Hafner pervert the course of justice by buttressing Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care. **(xiii)** Scheme to engage in evidence tampering and perjury in the administrative board proceedings, that caused the revocation of Kaul's license, as evidenced in 'The Solomon Critique' (K1-D.E. 225 Page ID 4940) and 'The Solomon Critique 2' (K1-D.E. 299 Page ID 7202). **(xiv)** Scheme to violate Kaul's right to due process, his right to an impartial tribunal and his civil rights, through the commission of knowingly false testimony that Kaul had allegedly "grossly deviated" from the standard of care for reasons pertaining to qualifications, credentials, alternative privileges and hospital privileges. Defendant Hafner knew that under the law the standard of care is not determined by any of these reasons, but simply by the manner in which the care is delivered, but yet in this knowledge she abused the power of public office for personal and political gain, at the expense of the public. **(xv)** Scheme to abuse the power of public office and quasi-judicial proceedings to perpetrate a massive fraud on the public, by willfully misrepresenting that Kaul was not qualified, credentialed or licensed to perform minimally invasive spine surgery. The defendants knew that Kaul possessed a license to practice medicine and surgery, had been credentialed by at least six state licensed surgical centers to perform minimally invasive spine surgery, did not require alternative or hospital privileges to perform minimally invasive spine surgery, had commenced his training in minimally invasive spine surgery in 2002, three years before co-conspirator Gregory Przybylski, a market competitor and 'expert' for Defendant NJBME. **(xvi)** Scheme to propagate to the public, a knowingly false interpretation of the alternative privilege regulation, in the knowledge that they were abusing the power of public office for personal and political gain. The defendants knew that Kaul did not require alternative privileges to perform minimally invasive spine surgery in his outpatient surgical center. **(xvii)** Scheme to suppress evidence of the superior clinical

outcomes of Kaul's minimally invasive spine surgery practice, by refusing to have Kaul's practice independently analyzed and monitored. **(xviii)** Scheme to engage in obstruction of justice by ignoring Kaul's written requests for an independent investigation of Kaul's claims of evidence tampering. **(xix)** Scheme to participate in a knowingly illegal system of physician regulation, that violated Kaul's civil rights, his constitutionally protected right to due process and his right to an impartial tribunal, by willfully conducting proceedings through and by Defendant NJBME, the New Jersey Office of Administrative Law and the Office of the New Jersey Attorney General. These governmental agencies are all subservient to the executive branch of state government. This is an illegal configuration that violates the separation of powers principle of the United States Constitution, a principle that protects citizens due process rights when life, liberty and property are at stake. **(xx)** Scheme to abuse the authority of the office of the Governor of the State of New Jersey for the purposes of accepting bribes, as part of a series quid pro quo schemes purposed to have Defendant NJBME revoke Kaul's license + Scheme to violate Kaul's right to due process by failing to exclude Defendant Hafner from any further involvement in Kaul's case and or his application in 2014 for reinstatement of his medical license. This was a knowing and willful violation based on the fact that Kaul had filed an ethics complaint against Hafner in September 2013. **(xxi)** Scheme to deprive Kaul of his civil rights and right to due process by permitting Defendant Hafner, an individual involved in a personal relationship with Defendant Kaufman, who, like Defendant Kaufman, had demonstrated an inexplicable personal animus towards Kaul.

Tactics Employed:

The Defendants scheme involved the following tactics, at the center of which lay the 'pawn' like manipulation of Kaul's patients to provide false testimony against Kaul, and perjure themselves by claiming that their pain increased after the care they received from Kaul:

2012 to 2016(The illegal revocation of Kaul's license + The manipulation of public opinion against Kaul + The filing of multiple frivolous medical malpractice lawsuits in corrupted NJ state courts - Essex County/Union County):

**(i)** Conspire to and commit bribery by funneling bribes in a series of quid pro quo schemes to Defendant Christie from the NJ plaintiff's bar, Defendant Brown, the American Association of Orthopedic Surgeons and Defendant Murphy to have co-conspirator, New Jersey Board of Medical Examiners ("NJBME") revoke Kaul's license. **(ii)** Conspire to and collude with media co-conspirators, North Jersey Media Group/NJ. Com (Star Ledger) to publicize articles about the revocation/lawsuits, purposed to legitimize their crimes in the public eye and recruit more of Kaul's patients to file lawsuits. **(iii)** Conspire to and encourage patients to file lawsuits and complaints with co-conspirator, NJBME. **(iv)** Conspire to and encourage patients to file complaints with state and federal regulatory authorities, that the Defendants knew were false. **(v)** Conspired to and did participate in sham litigation and provided knowingly false testimony that caused the entry of multi-million-dollar judgments against Kaul and his medical malpractice carrier. **(vi)** Conspired to and did cause the filing/publication of these false judgments with the National Practitioners Data Bank, the State of New Jersey and in collusion with media co-conspirators, North Jersey Media Group/www.nj.com, into the public domain and onto the internet. **(vii)** Conspired to and

did use the US mail and wires to cause a dissemination of these knowingly false judgments to members of the New Jersey medical/political/legal communities, the purpose of which was to aid and abet the destruction of Kaul's reputation. **(viii)** Conspired to and did provide knowingly false testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care because Kaul did not possess alternative privileges or hospital privileges. **(viii)** Conspired to and did provide knowingly fraudulent testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care, because Kaul's training did not involve an orthopedic or neurosurgical residency. **(ix)** Conspired to and did participate in sham litigation against Kaul's physician employees, falsely testifying that they were not qualified to perform minimally invasive spine surgery and had committed insurance fraud. **(x)** Conspired to and did participate in sham litigation purposed to professionally ostracize Kaul, cause him to leave the United States and prevent him from publicly exposing the Defendants crimes. **(xi)** Use of the US mail and wires to send patients letters/contact via telephone encouraging them to file frivolous lawsuits against Kaul. **(xii)** Use of the US mail and wires to defraud patients of their right to honest services by communicating knowingly false information that Kaul was not qualified to perform minimally invasive spine surgery. **(xiii)** Use of the US mail and wires to send knowingly false information to personal injury attorneys that Kaul was not qualified to perform minimally invasive spine surgery, had committed insurance fraud and was going to be indicted by the US Attorney for the District of New Jersey. **(xiv)** Use of the US mail and wires to send knowingly false information to New Jersey politicians, encouraging them to coerce co-conspirator, NJBME, to revoke Kaul's license. **(xv)** Use of the US mail and wires to order NJ state court judges to enter judgments against Kaul and his malpractice carrier in any and all medical malpractice cases filed against him. **(xvi)** Conspire and collude with law/public relation/political lobbying firms to funnel kickbacks to Defendant Christie, as part of a knowingly illegal series of quid pro quo schemes, in which a percentage of the judgments were given to Christie in return for him using his executive power to have Kaul's license revoked, order corrupted state court judges to enter multi-million dollar judgments against Kaul/his medical malpractice carrier and order the New Jersey media to publicize each and every judgment. **(xvii)** Conspire and collude with the legal/political apparatus of the State of New Jersey to perpetrate a knowingly illegal scheme to defraud Kaul, his medical malpractice carrier and the public of their property, their right to honest services and medical care. **(xviii)** Conspire and collude to deprive Kaul of his constitutionally protected right to an impartial tribunal in proceedings, the outcomes of which resulted in the loss of his livelihood, property and liberty. **(xix)** Conspire and collude to use the US mail and wires to order members of the New Jersey medico-legal community to not provide expert testimony or legal services in his defense of these frivolous medical malpractice lawsuits. **(xx)** Conspire and collude to use the US mail and wires to transmit information in furtherance of Defendant Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have co-conspirator, NJBME, revoke Kaul's license. **(xxi)** Conspire and collude to obstruct justice by bribing or abusing the power of public office to corrupt state court judges into rendering multi-million-dollar judgments against Kaul and his medical malpractice carrier. **(xxii)** Conspire and collude to use the US mail and wires to transmit the illegal consequences of a massive 'Fraud on the Court' (the revocation/state court

judgments) to the public, national (state/federal) and international healthcare agencies/regulatory bodies, in furtherance of the Defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment.
Location:
Governor's Office in Trenton + Christie/Republican Political Fundraisers + Office of the NJ AG.

211.   197.   **Defendant AQR + Defendant Kaufman**
Date Range: See above. As with Defendant Christie + CGLIC.
Mode of Communications: See above. As with Defendant Christie + CGLIC.
Substance of Communications: See above. As with Defendant Christie + CGLIC.
Tactics Employed: See above. As with Defendant Christie + CGLIC.
Location: See above. As with Defendant Christie + CGLIC.

212.   198.   **Defendant CGLIC + Defendant Kaufman**
As with Defendant AQR + Defendant Kaufman.

# Relief

1.      Compensatory/Consequential/Punitive monetary damages, to be calculated as a percentage of the amount identified in K1: D.E. 1 Page ID 200.

2.      Injunctive/Declaratory Relief identified in K1: D.E. 1 Page ID 200.

3.      Immediate reinstatement of license to practice medicine/surgery in the State of New Jersey.

4.      Immediate transmission to all domestic (state/federal) and foreign healthcare regulatory agencies, including the NPDB/DEA/Medicare/American Board of Anesthesiology/All State Medical Boards that the revocation of Kaul's New Jersey license was procured illegally and is illegal.

5.      Immediate instruction to Medicare to reinstate Kaul's Medicare number.

6.      Immediate instruction to NPDB to expunge from the record all medical board/administrative/state court judgments/rulings that occurred in the period from April 2, 2012 to the present.

7.      Immediate instruction to the DEA to reinstate Kaul's DEA license.

8.      Immediate reinstatement of Kaul's state prescribing CDS license.

9.      Immediate restitution to Kaul of state licenses for the NJSR Surgical Center and NJSR Surgical Center II.

10.     Immediate instruction to the American Board of Anesthesiology to reinstate Kaul's board certification.

11.     Immediate transmission to all NJ hospitals/surgical centers that the revocation of Kaul's license was procured illegally and is illegal.

12.     Immediate instruction to the State of New Jersey to expunge from the record all civil judgments entered after February 2, 2010.

13.     Immediate transmission to all of Kaul's medical malpractice insurance carriers that all judgments paid out after February 2, 2010 were procured as a consequence of, and through a 'Fraud on the Court'.

14.     Immediate instruction to the United States Trustee that all orders/judgments entered in bankruptcy proceeding 13-23366 were procured as a consequence of, and through a 'Fraud on the Court'.

15.     Immediate instruction to the United States Trustee that all order/judgments entered in bankruptcy proceeding 13-2336 (June 17, 2013 to July 30, 2020) be reversed and or made null/void.

16.     Immediate instruction to the United States Trustee that all monies embezzled from the estate/not collected from insurance carriers (approximately $45 million) be returned into the possession of Kaul.

17.     Immediate instruction to the media outlets identified in K1 (D.E.1 Page 200) to publish nine hundred (900) word articles regarding **The Kaul Cases**, that must be pre-approved by Kaul.

18.     Immediate order to every state medical board to come into compliance with the due process clauses of the State Constitution and that of the United States and submit evidence of such compliance to the United States District Court and the United States Government, as part of a **"Reformation of American Medical Boards"**.

19.     Immediate order to every state medical board to come into compliance with the antitrust mandates of the Supreme Court of the United States in North Carolina Dental Board v FTC, and to submit evidence of such compliance to the United States District Court and the United States Government, as part of a **"Reformation of American Medical Boards"**.

20.     Immediate order mandating all members of all state medical boards to disclose to the public record their financial holdings/conflicts of interest/ex parte communications with any agents associated with: **(i)** the insurance/hospital/pharmaceutical/medical device industries; **(ii)** the legislative/executive/judicial branches of state/federal government, regarding any pending/future cases before them.

21.     Immediate order prohibiting any persons who are either themselves beneficiaries of the insurance/hospital/pharmaceutical/medical device industries or whose family members to the third degree are beneficiaries.

22.     Immediate order prohibiting any persons who are members of any state medical board and or family members to the third degree from receiving future material benefits from the insurance/hospital/pharmaceutical/medical device industries.

23.     Immediate order that all NJ state court judges involved in any of the civil cases filed/adjudicated against Kaul after February 3, 2010 disclose to the record for the period from 2006 to 2021 any and all: **(i)** conflicts of interest; **(ii)** ex parte communications; **(iii)** tangible/intangible benefits procured for themselves or family members to the third degree, from the insurance/hospital/pharmaceutical/medical device industries and through law firms/political lobbyists/public relation firms, regardless of whether they remain on the bench or not.

Dated: April 27, 2021

_____
RICHARD ARJUN KAUL, MD

# Exhibit 1

# UNITED STATES DISTRICT COURT
## for the District of New Jersey [LIVE
### Camden, NJ

Richard Arjun Kaul, et al.

Plaintiff,

v.

Case No.:
1:20-cv-18853-NLH-AMD
Magistrate Judge Ann Marie
Donic

FEDERATION OF STATE MEDICAL
BOARDS, et al.

Defendant.

## ORDER FOR SCHEDULING CONFERENCE

TO: All Counsel

IT IS on this Day December 16, 2020 ORDERED THAT:

(1) A Scheduling Conference shall be conducted before the undersigned at the Mitchell H. Cohen Building and U.S. Courthouse in Camden, Camden – Room 2010 on January 26, 2021 at 12:00 PM. See Fed. R. Civ. P. 16 and Local Civil Rule 16.1. The purpose of the conference is to focus counsel's attention on the issues actually in dispute and arrive at a schedule to manage discovery. The Court strives in all cases for a just, speedy and inexpensive determination of every action. Fed. R. Civ. P. 1. CCUNSEL MUST BE PREPARED TO COMPLETE ALL DISCOVERY AND BE READY FOR TRIAL WITHIN SIX (6) TO EIGHT (8) MONTHS OF THE SCHEDULING CONFERENCE IN MOST CASES. The Scheduling Order will reflect these goals.

(2) The form and timing of the disclosure requirements in Fed. R. Civ. P. 26 (a)(1) and L. Civ. R. 26.1 shall be followed. COUNSEL SHOULD NOT FILE THEIR DISCLOSURE ON CM/ECF.

(3) At least twenty–one (21) days prior to the conference scheduled herein, counsel shall confer pursuant to Fed. R. Civ. P. 26 (f). The parties shall submit a Joint Discovery Plan to the undersigned using the attached form no later than the time period provided for in L.Civ.R. 26.1(b)(2). Prior to the Rule 26 (f) conference, counsel shall also comply with Local Civil Rule 26.1 (d) concerning discovery of digital information. The form to be used for the Joint Discovery Plan can be retrieved from:
http://www.njd.uscourts.gov/sites/njd/files/R16DiscoveryPlanCamONLY.pdf.

(4) Counsel are further advised that unless the parties stipulate otherwise, and the Court concurs, the Rules limit the number of interrogatories (25) and depositions (10) which each party may seek. See Rules 26 (b), (d). Fed. R. Civ. P. 30 (d) (2) limits depositions to one day of seven hours. The Court may also regulate the conduct of depositions. See Hall v. Clifton Precision, 150 F.R.D. 525 (E.D. PA. 1993); Fed. R. Civ. P. 30(d) (1).

(5) At the conference with the Court, all parties who are not appearing pro se shall be

represented by counsel who shall be familiar with the file and shall have full authority to bind their clients in all pre–trial matters. Counsel shall also be prepared to discuss settlement. Clients or persons with authority over the matter shall be available by telephone. See Local Civil Rule 16.1 (a)(4);

(6) Counsel shall consult with their clients before the conference and be prepared to advise the Magistrate Judge whether the parties consent to trial before the Magistrate Judge. Local Civil Rule 73.1 (a).

(7) Counsel shall discuss with clients the Court's mediation prog·am. L.Civ.R. 301.1 (see attached notice). The Court will discuss mediation and other ADR options at the Initial Scheduling Conference.

(8) Counsel for plaintiff(s) shall notify any party who hereafter enters an appearance, of the above conference and forward to that party a copy hereof, to;;ether with a copy of any Scheduling Order entered as a result of this conference.

(9) The parties shall advise the District Judge and Magistrate Ju(.ge immediately if this matter has been settled or terminated so that the above conferen( e may be cancelled.

(10) Failure to comply with the terms hereof may result in the imposition of sanctions.

(11) Counsel are further advised that communications to the Court by FAX will be accepted. All communications to the Court shall be in writing or by telephone conference with prior approval.

Magistrate Judge Ann Marie Donio

## ALTERNATIVE DISPUTE RESOLUTION
### IN THE
### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

Mediation is the Alternative Dispute Resolution ("ADR") program in this Court. Mediation is governed by Local Civil Rule 301.1. The mediation program under this rule is supervised by a judicial officer (at present United States Magistrate Judge Madeline Cox-Arleo) who is available to answer any questions about the program.

Any district judge or magistrate judge may refer a civil action to mediation. This may be done without the consent of the parties. However, the Court encourages parties to confer among themselves and consent to mediation. Moreover, you are reminded that, when counsel confer pursuant to Rule 26 (f) of the Federal Rules of Civil Procedure and Local Civil Rule 26.1, one of the topics that must be addressed is the eligibility of a civil action for participation in ADR.

A civil action may be referred to mediation at any time. However, one of the advantages of mediation is that, if successful, it enables parties to avoid the time and expense of discovery and trial. Accordingly, the Court encourages parties to consent to mediation prior to or at the time that automatic disclosures are made pursuant to Rule 26 (a) (1) of the Federal Rules of Civil Procedure.

If parties consent to mediation, they may choose a mediator either from the list of certified mediators maintained by the Court or by the selection of a private mediator. If a civil action is referred to mediation without consent of the parties, the judicial officer responsible for supervision of the program will select the mediator.

Mediation is non-judgmental. The role of the mediator is to assist the parties in reaching a resolution of their dispute. The parties may confer with the mediator on an ex parte basis. Anything said to the mediator will be deemed to be confidential and will not be revealed to another party or to others without the party's consent. The mediator's hourly rate is $300.00, which is borne equally by the parties.

If you would like further information with regard to the mediation program please review the Guidelines for Mediation, which are available on the Court's Web Site www.njd.uscourts.gov and appear as Appendix Q to the Local Civil Rules. You may also make inquiries of the judicial officer responsible for supervision of the program.

Civil actions in which there are pro se parties (incarcerated or not) are not eligible for mediation.

*UNITED STATES DISTRICT COURT*

*DISTRICT OF NEW JERSEY*

Richard Arjun Kaul, et al.

                                 Plaintiff,

v.
                                 Case No.:
                                 1:20−cv−18853−NLH−AMD
                                 Magistrate Judge Ann Marie Donio

FEDERATION OF STATE MEDICAL
BOARDS, et al.

                               Defendant.

**JOINT PROPOSED DISCOVERY PLAN**
*A fillable copy of this form can be located at*
*http://www.njd.uscourts.gov/sites/njd/files/R16DiscoveryPlan CamONLY.pdf*

1.    Set forth the name of each attorney appearing, the firm name, address and telephone number and facsimile number of each, designating the party represented.

2.    Set forth a brief description of the case, including the causes of action and defenses asserted.

3.    Have settlement discussions taken place? Yes _____ No _____

      (a) What was plaintiff's last demand?

          (1) Monetary demand: $ _____
          (2) Non−monetary demand: _____

      (b) What was defendant's last offer?

          (1) Monetary offer: $ _____
          (2) Non−monetary offer: _____

4.    The parties [have _____ have not _____] met pursuant to Fed. R. Civ. P. 26(f):

5.    The parties [have _____ have not _____ ] exchanged the information required by Fed. R. Civ. P. 26(a)(1). If not, state the reason therefor.

6.    Explain any problems in connection with completing the disclosures required by Fed. R. Civ. P. 26(a)(1)

7.    The parties [have _____ have not _____] conducted discovery other than the above disclosures. If so, describe.

8.    Proposed Joint Discovery Plan:

      (a) Discovery is needed on the following subjects:

      (b) Discovery [should _____ should not _____ ] be conducted in phases or be limited to particular issues. Explain.

      (c) Proposed schedule:

(1) Fed. R. Civ. P. 26 Disclosures _____.

(2) E–Discovery conference pursuant to L. Civ. R. 26.1(.1)_____.

(3) Service of initial written discovery _____.

(4) Maximum of _____ Interrogatories by each party to each other party.

(5) Maximum of _____ depositions to be taken by each party.

(6) Motions to amend or to add parties to be filed by ___ _____.

(7) Factual discovery to be completed by _____.

(8) Plaintiff's expert report due on _____.

(9) Defendant's expert report due on _____.

(10) Expert depositions to be completed by _____.

(11) Dispositive motions to be filed by _____.

(d) Set forth any special discovery mechanism or procedure requested.

(e) A pretrial conference may take place on _____.

(f) Trial date: _____ (_____ Jury Trial; _____ Non–Jury Trial).


9.    Do you anticipate any special discovery needs (i.e., videotape/telephone depositions, problems with out–of–state witnesses or documents, etc)? Yes _____ No_____. If so, please explain.

10.   Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced? Yes _____ No _____.

If so, how will electronic discovery or data be disclosed or produced? Describe any agreements reached by the parties regarding same, including costs of discovery, production, related software, licensing agreements, etc.

11.   Do you anticipate entry of a Discovery Confidentiality Order? See L.Civ.R. 5.3(b) and Appendix S. Yes _____ No _____.

12.   Do you anticipate any discovery problem(s) not listed above? Describe. Yes _____ No _____.

13.   State whether this case is appropriate for voluntary arbitration (pursuant to Local Civil Rule 201.1 or otherwise) or mediation (pursuant to Local Civil Rule 301.1 or otherwise). If not, explain why and state whether any such procedure may be appropriate at a later time (i.e., after exchange of pretrial disclosures, after completion of depositions, after

disposition or dispositive motions, etc.).

14.   Is this case appropriate for bifurcation? Yes _____ No _____

15.   An interim status/settlement conference (with clients in attendance), should be held in

_____.

16.   We [do _____ do not _____ ] consent to the trial being conducted by a
Magistrate Judge.

17.   Identify any other issues to address at the Rule 16 Scheduling Conference.

_____
Attorney(s) for Plaintiff(s) / Date

_____
Attorney(s) for Defendant(s) / Date

## Other Events
1:20-cv-18853-NLH-AMD KAUL
et al v. FEDERATION OF STATE
MEDICAL BOARDS et al

PROSE

Paper recipients: 4          Mailing Labels

### U.S. District Court

### District of New Jersey [LIVE]

### Notice of Electronic Filing

The following transaction was entered on 12/16/2020 at 8:50 AM EST and filed on 12/16/2020
**Case Name:**          KAUL et al v. FEDERATION OF STATE MEDICAL BOARDS et al
**Case Number:**     1:20-cv-18853-NLH-AMD
**Filer:**
**Document Number:** 154

**Docket Text:**
**Clerk's Letter: Attorneys are not admitted to the Federal Bar of New Jersey. Notice has been
mailed to the attorneys' addresses. (dd, )**

### 1:20-cv-18853-NLH-AMD Notice has been electronically mailed to:

Caroline E Oks  coks@gibbonslaw.com

MICHAEL A. KOTULA  michael.kotula@rivkin.com

ROBERT J. MCGUIRE  robert.mcguire@dol.lps.state.nj.us, themegs1@gmail.com, ef-
judpros@dol.lps.state.nj.us

KENNETH M. BROWN  kbrown@wglaw.com

DAVID FOSTER HERMAN  dherman@atllp.com, david-herman-8332@ecf pacerpro.com,
gconroy@armstrongteasdale.com

THOMAS JOSEPH CAFFERTY  nlowy@gibbonslaw.com, tcafferty@gibbonslaw.com, ljames-
weir@gibbonslaw.com, mkhoyan@gibbonslaw.com

### 1:20-cv-18853-NLH-AMD Notice has been sent by regular U.S. Mail:
Edward George Sponzilli (908) 722-0755
NOMI IRENE LOWY
SCARINCI HOLLENBECK
1100 VALLEY BROOK AVENUE
PO BOX 790
LYNDHURST NJ 07071

NOMI IRENE LOWY
SCARINCI HOLLENBECK
1100 VALLEY BROOK AVENUE
PO BOX 790
LYNDHURST NJ 07071

Richard Arjun Kaul
440 c Somerset Drive
Pearl River NJ 10965
US
ARNOLD ERWIN FELDMAN
2000 Cheney Highway
Suite 103, #273
Titusville FL 32780
US

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

**www.drrichardkaul.com**
2021 JAN 15  A 10: 42

**January 11, 2021**

Honorable Freda Wolfson
Chief Judge
United States District Court]
District of New Jersey
50 Walnut Street
Newark, NJ 07102

**Re: Kaul v Federation: 20-CV-18853 - K5**
   **K11-1 Defendant DNJ-N lack of jurisdiction**
   **Remand of K5 to United States District Court for the District of New Jersey (Camden).**

**The Kaul Cases:**

K1 - Kaul v Christie: 16-CV-02364
K2 - Kaul v Christie: 18-CV-08086
K3 - Kaul v Schumer: 19-CV-13477
K4 - Kaul v Stolz: 18-CV-01489
K5 - Kaul v Federation: 20-CV-18853
K6 - State criminal indictment - Kaul v Kaufman
K7 - Kaul v Federation: 20-CV-01612
K11-1 - Kaul v Federation: Docket Number Pending (Northern District of Texas)
P1 - Kaul/Patel v Allstate: 19-CV-08946
P2 - Kaul/Patel v State of New Jersey/Crist: 19-CV-09232

Dear Chief Judge Wolfson,

I submit this letter/exhibits as evidence that K11-1 Defendant, District of New Jersey
(**"DNJ-N"**), in collusion/conspiracy with The Kaul Cases Defendants, continue to
obstruct justice and conduct an ongoing **"open-ended pattern of racketeering"**, by,
through and within Defendant DNJ-N.

K500001

The Defendants' obstruction of justice is an attempt to conceal their fifteen (15) year-long scheme of: **(1)** Racketeering; **(2)** Perjury; **(3)** Fraud; (4) Evidence/Witness Tampering; **(5)** Obstruction of Justice; (6) Public Corruption; **(7)** Judicial Corruption; **(8)** Bribery; **(9)** Kickbacks; **(10)** Manslaughter: **(11)** Conspiracy.

From December 14, 2020 to the present, the Defendants/Defendant DNJ-N have conspired to obstruct Kaul's prosecution of K5 by willfully and with knowledge of its illegality, NOT published to the court docket, critical documents submitted by Kaul. The purpose of this scheme is to suppress the truth, deceive the public and pervert the course of justice by improperly constricting the record for appellate review.

In order to rectify these wrongdoings and establish that Defendant DNJ-N is forever precluded from any administrative/ministerial/adjudicative functions in any cases in which Kaul is either a party or which involve Defendants Allstate/Geico, Kaul submits the following documents:

1. December 14, 2020: Letter from Kaul to Chief Judge Wolfson re: declaratory judgment re: nullity of all orders/judgments - RECEIVED IN DEFENDANT DNJ-N ON 12/15/20. **NOT PUBLISHED TO DOCKET**. (**Exhibit 1**)(K500006).

2. December 18, 2020: Letter from Kaul to Chief Judge Wolfson re: lack of jurisdiction - RECEIVED IN DEFENDANT DNJ-N ON 12/21/20. **NOT PUBLISHED TO DOCKET**. (**Exhibit 2**)(K500501).

3. December 27, 2020: Kaul response in Case No. 20-3522 to letter from Defendants Mitchell/Cohen. (**Exhibit 3**)(K500520).

4. December 30, 2020: Motion for disqualification U.S.D.J. Vazquez/U.S.M.J. Dickson - EMAILED ON DECEMBER 30, 2020 TO DEFENDANTS WHO CIRCULATED IT TO JUDGES VAZQUEZ/DICKSON. **NOT PUBLISHED TO DOCKET**. (**Exhibit 4**)(K500573).

5. January 5, 2021: Letter from Kaul to the Clerk of the U.S.C.A. for the Third Circuit re: motion for disqualification of U.S.D.J. Vazquez/U.S.M.J. Dickson/K11-1 with copy sent to Chief Judge Freda Wolfson - RECEIVED IN U.S.C.A. ON 01/06/21. PUBLISHED TO DOCKET. RECEIVED IN DEFENDANT DNJ-N ON 01/06/21. **NOT PUBLISHED TO DOCKET**. (**Exhibit 5**)(K500685).

6. January 5, 2021: Letter/motion from Kaul to Chief Judge Freda Wolfson re: order of denial of Defendants' plea to stay K5 + Re-transfer toi U.S.D.J Hillman - RECEIVED IN DEFENDANT DNJ-N ON 01/06/21. **NOT PUBLISHED TO DOCKET**. (**Exhibit 6**)(K500842).

7. January 7, 2021: Letter from Kaul to U.S.C.A. re: Form AO10 disclosures/Arrest of Defendants + Defendants' Counsel by US Marshals - RECEIVED IN U.S.C.A.

ON 01/08/21. PUBLISHED TO DOCKET. RECEIVED IN DEFENDANT DNJ-N ON 01/08/21. **NOT PUBLISHED TO DOCKET. (Exhibit 7** )(K500870).

8. January 7, 2021: Letter from Kaul to Chief Judge Freda Wolfson re: Arrest of Defendants **+** Defendants' Counsel by US Marshals - RECEIVED IN DEFENDANT DNJ-N ON 01/08/21. **NOT PUBLISHED TO DOCKET. (Exhibit 8**) (K500899).

9. January 8, 2021: Kaul complaint re: judicial misconduct Judges Vazquez/Dickson. **(Exhibit 9**)(K500902).

Kaul respectfully informs Defendant DNJ-N and all judges within its legal confines, that the highly incriminating evidence within The Kaul Cases will be submitted to: **(1)** The FBI (all central/field offices); **(2)** Office of every State Attorney General; **(3)** The Board of the NYSE: **(4)** SCOTUS; **(5)** The CEO of every S/P corporation/Vanguard/Blackrock/LSV/AQR/Boston Partners/State Street Corporation/Macquarie Group Limited/Wells Fargo/Goldman-Sachs.

Defendant Vanguard is named in K11-1 and Mercury Public Relations Director, Michael DuHaime will be named in K11-2, along with Boston Partners, Andrew Kolodny, MD, and the Massachusetts Medical Board.

K11-1 has been filed in the United States District Court for the Northern District of Texas, and K11-2 will be filed on January 12, 2021 in the District of Massachusetts. Further actions will be initiated as **"new racketeering injuries"** in every state that has effectively denied Kaul's applications for medical licensure. At this point in time there are thirty-nine (39).

As the Defendants know, their incarceration is an inevitability, and Kaul respectfully informs them that these most recent acts of obstruction of justice do provide irrefutable evidence in support of claims for summary judgment that Kaul will file in K11-1.

The Defendants are advised against any attempts to bribe/influence/otherwise corrupt any judges in any of the courts (district/appellate/supreme) in which Kaul has filed and will file cases. Kaul, as the Defendants are aware, will require that all judges assigned to The Kaul Cases periodically disclose to the record any/all past/present conflicts of interest/financial holdings in addition to those disclosed in Form AO10, in addition to those held (past/present) by any members of their family to the third-degree.

Kaul respectfully reminds the Defendants that litigation against their interests will commence in India in 2021.

This court does not have the authority to render any decisions/enter orders/opinions regarding any of The Kaul Cases. All orders/opinions currently on file are null and void and have no legal weight. This unrefuted fact was established on December 22, 2020.

On January 26, 2021 Kaul will move for summary judgment in K5 in the United States District Court for the District of New Jersey (Camden).

Kaul respectfully asserts that he remains open to the terms of settlement as set forth in the enclosed document.

Kaul believes it relevant that cases transferred from other districts to the District of New Jersey (Camden/Trenton) have for no legitimate cause been sent to Defendant DNJ-N:

1. K1 - D.E. 33 - TEXT ORDER REALLOCATING AND REASSIGNING CASE. Case Number 3:16-cv-2364. Case reallocated to the Newark vicinage and reassigned to Judge Kevin McNulty and Magistrate Judge Steven C. Mannion for all further proceedings. Judge Freda L. Wolfson, Magistrate Judge Douglas E. Arpert no longer assigned to case. So Ordered by Chief Judge Jerome B. Simandle on 5/2/.16. (mem,) (Entered: 05/02/2016).

2. P1 - D.E. 24 - TEXT ORDER REALLOCATING AND REASSIGNING CASE. Case Number 3:19-cv-8946. Case reallocated to Newark and reassigned to Judge Kevin McNulty and Magistrate Judge Steven C. Mannion for all further proceedings.Judge Freda L. Wolfson, Magistrate Judge Douglas E. Arpert no longer assigned to case. So Ordered by Chief Judge Jose L. Linares on 3/27/2019.

Kaul respectfully moves Chief Judge Fred Wolfson to certify that she has not engaged in any ex parte communications regarding any aspect of The Kaul Cases with any Defendants/Defendants Counsel or any agents of Defendants/Defendants Counsel, in the period from February 22, 2016 to the present.

Finally, Kaul will seek emergent relief in the Supreme Court of the United States if K5 is not immediately remanded to the District of New Jersey (Camden) and this Court fails to immediately refer the Defendants to the FBI.

I thank you for your attention to this very serious matter.

Yours sincerely

K500004

$\mathcal{R}\mathcal{K}_{-1}$

Richard Arjun Kaul, MD

cc: All Counsel of record
    All Parties with a legal or other interest
    U.S.C.A. for the Third Circuit
    SCOTUS
    Board of the NYSE
    Mortimer Buckley, CEO, The Vanguard Group
    The Washington Post

www.drrichardkaul.com

January 7, 2021

RECEIVED

JAN 25 2021

AT 8:30_____ .09
WILLIAM T. WALSH
CLERK

Chief Judge Freda Wolfson
United States District Court
District of New Jersey
50 Walnut Street
Newark, NJ 07102

**Re: Kaul v Federation: 20-CV-18853 - K5**
      **Arrest of Defendants + Defendants' Counsel by US Marshals.**

Dear Chief Judge Wolfson,

I write this letter to inform the United States District Court for the District of New Jersey that the Defendants have willfully, knowingly and in conspiracy violated the order issued on December 16, 2020 (D.E. 155) by this Court, in refusing to confer regarding a mandated Joint Discovery Plan.

On January 6, 2021 Kaul sent emails to Defendants' counsel, and received only two (2) responses. One from counsel for Defendant Allstate/Crist and the other from counsel for Defendant Congress of Neurological Surgeons. The cited excuses were: (i) the case is not assigned to Judge Donio; (ii) there is a pending application for a stay in the Newark district court.

The order is in effect and there has been no stay or modification of the order. Additionally, the Defendants know that the Newark district court is a Defendant in K11-1 (Kaul v Federation of State Medical Boards-United States District Court for the Northern District of Texas). This action precludes this court from any involvement, ever, (administrative/ministerial/adjudicative) in any cases related to me in any manner. Similarly, the Defendants know that Judges Vazquez/Dickson are subject to motions for disqualification, as they know that the U.S.C.A. for the Third Circuit issued a letter on December 18, 2020 (Case No. 20-3522 Document 9) that finds the Court lacks appellate jurisdiction. This latter point, that the outcome of a supposedly pending appeal will determine the outcome of K5, because (and now their argument betrays their utter

1

desperation) K1 and K5 are identical. The Defendants, as detailed in a letter you received from me on January 6, 2021, are foreclosed from applying for a stay. A copy of K11-1 was attached to this letter.

Thus, the Newark court is disqualified, Judges McNulty/Mannion/Martinotti/Vazquez/Dickson are disqualified and the Defendants are foreclosed from applying for a stay. However, the Defendants are ordered, pursuant to Rule 26(f) to confer at least twenty-one (21) days in advance of the scheduled conference on January 26, 2021, but have willfully violated that order.
I request that this Court: **(I)** enter an order of contempt and issue sanctions to include a referral to the Ethics Committee of their respective bars and monetary penalties: **(ii)** enter an order that deems the K5 claims to be proved; (iii) order that the United States Marshals Service immediately <u>arrest</u> the Defendants and their counsel and present them to this Court.

I would also like to inform this Court that the Defendants violations constitute undisputed facts/evidence that will be submitted in K11- in the United States District Court for the Northern District of Texas, in support of motions for summary judgment.

I thank you for your attention to this very serious matter.

Yours sincerely

$\zeta \chi_{-1}$

Richard Arjun Kaul, MD

cc: All Counsel via email.
    All parties with a legal or other interest.
    Mortimer Buckley, CEO, The Vanguard Group.
    U.S.C.A. for the Third Circuit.
    New York Times

**www.drrichardkaul.com**

**January 18, 2021**

Chief Judge Freda Wolfson
United States District Court
District of New Jersey
50 Walnut Street
Newark, NJ 07102

**Re: Kaul v Federation**
    **20-CV-18853 - K5 (District of New Jersey)**
    **Joint Discovery Plan - January 26, 2021, DNJ-Camden D.E. 155**

**The Kaul Cases:**

K1 - Kaul v Christie: 16-CV-02364
K2 - Kaul v Christie: 18-CV-08086
K3 - Kaul v Schumer: 19-CV-13477
K4 - Kaul v Stolz: 18-CV-01489
K5 - Kaul v Federation: 20-CV-18853
K6 - State criminal indictment v. Defendant Andrew Gregory Kaufman, MD
K7 - Kaul v Federation: 20-CV-01612
K11-1 - Kaul v Federation/Schumer: 21-CV-00057 (Northern District Texas)
P1: Kaul/Patel v Allstate: 19-CV-08946
P2: Kaul/Patel v State of New Jersey/Crist: 19-CV-09232

Dear Chief Judge Wolfson,

Please accept this letter as notice that pursuant to the prevailing law K5 cannot be
litigated in the District of New Jersey-Newark, as this court is a Defendant in K11-1
(**Exhibit 1**). Similarly, Judges Vazquez/Dickson are forever foreclosed from any further
involvement in any of The Kaul Cases, due to motions for their disqualification (**Exhibit
1**) and complaints to their disciplinary council. Please note that **Exhibit 1** was served on
Defendant DNJ-N on January 6, 2021, but has still not been published to the docket.
This submission contains the aforementioned motions for judicial disqualification.

Please also find enclosed a copy of a letter (**Exhibit 2**) that was served on Defendant DNJ-N on January 13, 2021. The U.S.C.A. for the Third Circuit received a copy on January 14, 2021 and although it pertains to K5, the Court published it to the K1 appellate docket (20-3522).

Thus, on January 26, 2021 the order for the Joint Discovery Plan will be heard in the United States District Court for the District of New Jersey-Camden, as per order D.E. 155. This order remains in effect. The Defendants continue to obstruct justice in refusing to confer as per the court's order. Tomorrow, I will submit to Judges Hillman/Donio a completed discovery proposal. I have forewarned the Defendants that their failure to comply with the order constitutes consent to motions for summary judgment. These motions will be brought against the relevant Defendants in K5 and K11-1.

Please also be informed that I am in the process of requesting state/federal prosecutorial authorities investigate the Defendants corruption of the judiciary in Defendant DNJ-N.

As always and from the commencement of The Kaul Cases on February 22, 2016, I remain open to settlement. In the meantime however, I will continue to aggressively prosecute the Defendants.

I thank you for your attention to this matter.

Yours sincerely

$\mathcal{R}\mathcal{K}_{-1}$

Richard Arjun Kaul, MD

cc: All Counsel of record
    All Parties with a legal or other interest
    Mortimer Buckley, CEO, The Vanguard Group
    CEOs top ten corporate shareholders of Allstate/Geico/TD
    Judge Hillman
    Judge Donio
    Clerk of the Court
    U.S.C.A. for the Third Circuit

2

**www.drrichardkaul.com** ---,

**January 14, 2021**

RECEIVED

JAN 2 1 2021

AT 8:30
WILLIAM T. WALSH, CLEI.M

The Honorable Noel Hillman
United States District Judge
Mitchell H. Cohen
Fourth & Cooper Street
Camden, NJ 08101

**Re: Kaul v Federation**
**20-CV-18853 - K5**
**Conference for Joint Discovery Plan (D.E. 155)**

Dear Judge Hillman,

I write this letter in response to the above letter, submitted by Stewart Leviss, counsel
for Defendant Marc Cohen. Mr. Leviss has lied in stating:

**" ... specifically the stay which is in effect with respect to the defendants' filing of
responsive pleadings."**

The Defendants, as the record proves, filed pleadings in the United States District Court
for the District of Columbia, and there is NO STAY on the record. With all due respect to
Mr. Leviss, if there were a stay, then why is he requesting there be another stay and of
course, as it really goes without saying, this Court would not have entered an order for a
Joint Discovery Plan if there were a stay.

Judges Vazquez/Dickson are disqualified and the District of New Jersey (Newark) is a
Defendant in Kaul v Federation: 21-CV-00060 (United States District Court for the
District of Northern Texas). Mr. Leviss; having been involved with ethics panels in the
State of New Jersey, is well aware that his lies constitute a violation of R.P.C. 3.3. -
Candor Toward the Tribunal. This Court (Camden) now has jurisdiction of this case. The
Third Circuit has taken the position that it does not have appellate jurisdiction of K1, as
the claims against Defendant Mitchell remain active. The Defendants failed to submit
argument by January 7, 2021, as ordered by the Third Circuit, to support their position

1

that appellate jurisdiction existed. It does not, and thus the Third Circuit remains in a position where it cannot adjudicate the merits of the K1 claims. Regardless of this procedural infirmity, from at least the Defendants' perspective, any Third Circuit adjudication would have no have no bearing on K5 as the evidential bases of K1 and K5 are different. For example, K5 includes the Defendants activating one of their undoubtedly well-practiced schemes of corruption of federal judges. This fact does not exist in K1.

Please find attached to this letter several recent submissions that evidence a degree of corruption more often seen in South American dictatorships. Not unexpectedly, Defendants DNJ-N continues to fail to publish to the docket this evidence of its crimes.

Finally, there exists a lot of criticism regarding the recent riots in DC. Physical violence, as my Indian countryman, Mahatma Gandhi espoused, is not the answer. He once said, in referencing the Old Testament:

**"If we all take an eye for an eye, then we will be blind"**

On January 6, 2021, almost seventy million(70,000,000) Americans reacted to a deep sense of frustration that the political/legal/business elites, the American Aristocracy/British Empire if you will, had exploited them for too long, and they reacted, but in an unproductive manner. Mandela, Gandhi, Jesus and Martin Luther King did not lie in their writings, did not engage in bribery/racketeering/kickbacks/perjury/extortion/fraud, but simply told the truth. Mr. Leviss and his cohort should do the same.

From the commencement of The Kaul Cases (February 22, 2016 to January 13, 2021) the Defendants have spent millions of dollars on propagating a lie that they are innocent. If they are so convinced of their innocence, then they should have no issue with presenting the evidence of their innocence in court.

Mr. Leviss will have to answer to the Ethics Committee of the New Jersey Supreme Court. His clients are close to having their clinical privileges revoked at the facilities in which they work. The medical community in New Jersey is distancing itself from Defendants Cohen/Mitchell. And the American justice system is being watched by those countries whom it oversees on issues of judicial corruption.

I recognize that although this letter, other than dismantling Mr. Leviss' argument, has tip-toed into the public's perception of how corrupt lawyers/judges twist the truth to pervert reality, I do respectfully inform this Court that I will be in attendance on January

2

26, 2021 at the United States District Court for the District of New Jersey (Camden) for the conference regarding the Joint Discovery Plan. My attendance will be recorded and I will submit this evidence to the U.S.C.A. for the Third Circuit and SCOTUS, in support of a petition that all cases in Defendant DNJ-N must be transferred out of that court.

Within the next six months, Defendant Allstate will experience a substantial reduction in market capitalization.

I thank you for your attention to this matter

Yours sincerely

$\mathcal{R} \mathcal{K}_{-1}$

Richard Arjun Kaul, MD

cc: All Counsel of Record
    All Parties with a legal or other interest
    U.S.C.A. for the Third Circuit
    CEOs of the top ten corporate shareholders of Defendant Allstate
    Mortimer Buckley, CEO, The Vanguard Group
    SCOTUS
    Chief Judge Freda Wolfson
    Clerk of the Court

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN**

RICHARD ARJUN KAUL, MD

Plaintiff                                    Civil Case No.

v.                                           ORDER COMPELLING DEFENDANTS
                                             TO CONFER WITH PLAINTIFF RE: RULE 26(f)

MICHAEL MURPHY, MD ET AL

IS ON THIS DAY OF_____ THAT THE COURT, AFTER HAVING REVIEWED
THE PARTIES SUBMISSIONS, AND CONSIDERED THE RELEVANT LAW, DOES HEREBY ORDER THE
DEFENDANTS IN THE ABOVE MATTER TO IMMEDIATELY CONFER WITH PLAINTIFF KAUL
PURSUANT TO RULE 26(f) OF THE FRCP.

IT IS SO ORDERED:


_____          _____
                                          U.S.M.J.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY-**
**CAMDEN**

RICHARD ARJUN KAUL, MD                    Civil Action No. PENDING

Plaintiff

v.

MICHAEL MURPHY, MD ET AL.

Defendants.

## PLAINTIFF MOTION TO COMPEL DEFENDANTS TO CONFER UNDER RULE 26(f)

For the reasons stated in the accompanying Memorandum, Plaintiff Richard Arjun Kaul,

respectfully moves the Court for an order directing Defendants Michael Murphy, Christopher J.

Christie, Abbott Brown, Allstate Insurance Company, AQR Capital, Doreen Annette Hafner,

Andrew Gregory Kaufman, Federation of State Medical Boards, Connecticut Medical Board and

New Jersey Board of Medical Examiners to confer with Plaintiff Kaul as required by Federal Rule

of Civil Procedure 26(f). Alternatively, Kaul requests the Court schedule an initial pretrial

conference.

Dated: April 27 2021                      Respectfully submitted.

By: _____

Richard Arjun Kaul, MD
Propria Persona Plaintiff
440c Somerset Drive
Pearl River, NY 10965
862 881 9703
drrichardkaul@gmail.com

1

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RICHARD ARJUN KAUL, MD                Civil Action No.

Plaintiff

v.

MICHAEL MURPHY, MD ET AL.

Defendants.

## MEMORANDUM SUPPORTING PLAINTIFF MOTION TO COMPEL DEFENDANTS TO CONFER UNDER RULE 26(f)

# Preliminary Statement

The Defendants continued obstruction of justice and a willful perpetuation of their knowingly illegal scheme to violate Kaul's rights (2006 to the present), compels Kaul to seek judicial relief, in order that he may vindicate his rights and dismantle the Defendants' scheme to pervert the course of justice.

The Kaul Cases commenced on February 2, 2016, and it was not until December 16, 2020 that an ORDER FOR SCHEDULING CONFERENCE was entered (K5-20-CV-18853: D.E. 155). The New Jersey K5 Defendants, with K11-4 Defendant Allstate at the helm, did have Defendant/U.S.D.J. Vazquez stay the case, after it was transferred from the U.S.D.C.-DNJ-Camden to the court in Newark, under order from Defendant/U.S.D.J. Wolfson, in violation of the law regarding discovery, and further evidence of the Defendants corruption of Defendant/U.S.D.C.-DNJ-Newark. K5 was filed on October 1, 2019 in the United States District Court for the District of Columbia (19-CV-3050), and on December 12, 2020, the Court granted the "NJ Defendants"

2

motion to sever and transfer the case to the District of New Jersey, based on their argument that the State of New Jersey had a **"greater interest"** in litigating the case than did the District of Columbia. The **"NJ Defendants"** however, failed to explain that the **"greater interest"** pertained to obstructing Kaul's prosecution, in order to suppress the emergence of evidence of their massive, long-standing, state-orchestrated criminal enterprise.

The evidence contained within the minds and digital repositories of **The Kaul Cases** Defendants, inclusive of all ISP/cellular providers, will prove Kaul's claims beyond any reasonable doubt, and cause to be concluded all his claims within the United States District Court.

These Defendants have accepted service, but are attempting, yet again, to unilaterally grant themselves an indefinite stay of discovery in contravention of Rule 26(f)'s express requirement that parties confer and commence discovery **"as soon as practicable"** after a complaint is filed. The Defendants have made no showing that conferring with Kaul is not **"practicable"**, nor can they satisfy the heavy burden necessary to justify a stay of discovery. Their refusal to permit discovery risks the loss of critical evidence as memories fade and witnesses relocate.

Their refusal will improperly and unnecessarily prolong this proceeding in violation of the policies of the Federal and Local Rules, and of the order of this Court. Kaul respectfully requests an order be entered compelling Defendants to confer with Kaul pursuant to and under Rule 26(f). Alternatively, Kaul requests this Court schedule an initial pretrial conference, which would have the effect of imposing a definite date for the required Rule 26(f) conference, in that under the rules, this must occur **"at least 14 days before the scheduled initial pretrial conference."**

3

## Facts

The evidence and plausibly pled facts in this case, absent any discovery, demonstrate multiple ongoing schemes of grand corruption and kleptocracy, that predated Defendant Christie, but schemes that he, though his abuse of the power of the office of the New Jersey Governor, did amplify and insinuate in an unprecedented manner, into the executive/legislative/judicial branches of the enterprise of the State of New Jersey. Defendant Christie did orchestrate, through a corrupt politico-judicial nexus, the conversion of the State of New Jersey into a **"racketeering enterprise"** that he extended into federal bankruptcy/district courts located within the geographic boundaries of New Jersey, through this nexus of lawyers/law firms/political lobbyists/public relations personnel/judges/politicians/hospitals/insurance companies. The Defendants propagated the products of these crimes into every state medical board and the entire United States District Court, in the knowledge of their illegality, and purposed to attempt to conceal their fifteen (15) year-long crime conspiracy (2006 to present).

On April 19, 2021, the Defendants do recognize that Kaul has exposed their long-standing **"pattern of racketeering"** and that of their co-conspirators (judges/politicians/insurance executives/hospital executives/physicians/lawyers/patients), which explains why they assumed the immense risk of evidencing their corruption judges in Defendant U.S.D.C.-Newark, by having K5 transferred from Camden to Newark and stayed. The Defendants' guilt and their guilty state-of-mind have obstructed justice since February 22, 2016, as is evident from the record of The Kaul Cases.

This Court has established that potentially dispositive motions be filed after discovery, and thus the Defendants are foreclosed from asserting discovery commence after adjudication of such motions. In fact, there exists no legal basis on which the Defendants can avoid their obligation to confer and provide discovery, and they, particularly the Defendant-Lawyers, recognize that failure to follow the law will subject them to Rule 37 sanctions.

4

The Defendants have been motivated to obstruct justice and delay discovery, with the intent of claiming that their recollection of facts is diminished by time. On, or about, April 16, 2021, Kaul had a conversation with Dr. Samuel Carruthers, a physician with whom Kaul had intermittently worked from 2007 to 2012. Carruthers is an anesthesiologist, who works with many New Jersey physicians who practice in the fields of interventional pain/minimally invasive spine surgery, and who have direct knowledge relevant to Kaul's claims. Carruthers has, on multiple occasions, communicated to Kaul evidence of the pled conspiracies, and comments such as **"if you had played the game, you would still be in practice"**. In this conversation Kaul asked Carruthers to what **"game"** he was referring, and Carruthers response was to the effect of **"you made enemies of the neurosurgeons by doing minimally invasive spine surgery … you should have stuck to interventional pain."** On April 18, 2021, Kaul telephoned Carruthers and asked that him to provide emails/texts in which Carruthers had exchanged information with third parties, regarding the subject matter of **The Kaul Cases**. Carruthers refused and attacked Kaul's training. Kaul informed Carruthers that the evidence was relevant to the proof of his claims. Carruthers claimed he had not read the Complaint and was therefore not obliged to provide the evidence. The phone call lasted approximately eleven (11) minutes, and shortly after its conclusion, Carruthers sent Kaul a text:

**"Please send all correspondence to my attorney joe Gorrell at brach Eichler. Please do not contact me or come near me or any member of my family. Any attempts will constitute harassment and/or trespassing."**

In a prior conversation, on or about April 11, 2021, Carruthers communicated to Kaul that the Defendants, when deposed, would claim that they **"can't remember"**.

In August 2018, Kaul had multiple communications with Dr. Harshu Chaobal, an anesthesiologist, who like Carruthers, was party to conversations with physicians with direct knowledge of the Defendants crimes. Chaobal's refusal to sign an affidavit containing information he provided orally to Kaul, is evidence of, and consistent with, the Defendants overall scheme to obstruct justice (**Exhibit 1**). Defendant Christie's version of medical 'omerta'.

5

Carruther's text contains verbiage remarkably like that emailed to Kaul by NJ Deputy AG, Robert McGuire, regarding Defendant Christie (**Exhibit 2**). Similarly, Defendant Brown has ignored Kaul's request to schedule a Rule 26(f) conference (**Exhibit 3**). This is further evidence, if any is needed, of the state orchestrated conspiracy to violate the authority/jurisdiction of the United States District Court and the law. Defendants Christie/Hafner/Kaufman continue to refuse to confer with Kaul (**Exhibit 4**).

Kaul needs to begin taking depositions promptly so that the testimony of Defendants and non-party witnesses can be preserved before memories allegedly fade.

6

# Argument

**Defendants have granted themselves an improper stay of discovery without "good cause"**

Under Federal Rule of Civil Procedure 26(f)(1),

Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, **the parties must confer as soon as practicable** – and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b).

Fed. R. Civ. P. 26(f)(1) (emphasis added). **"The rule provides that the meeting of the parties take place** *as soon as practicable***"** in order **"to assure . . . that the commencement of discovery is not delayed unduly."** Fed. R. Civ. P. 26(f) advisory committee's note (emphasis added). Starting discovery promptly prevents loss of evidence. Over time, memories fade, witnesses relocate, and documents are mislaid. *Cf.* *Clinton v. Jones*, 520 U.S. 681, 707-708 (U.S. 1997) **("delaying trial would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party.");** *United States v. Knox*, 2006 U.S. Dist. LEXIS 16913 (E.D. Va. Apr. 5, 2006) **("the delay has impacted evidence in a way characteristically associated with a lengthy delay, such as discovery problems, lost evidence, and relocated witnesses").** These considerations are especially critical here because Kaul's claims, at their heart, concern massive state-orchestrated schemes of fraud/perjury, perpetrated by New Jersey lawyers/judges/politicians, who have used their intimate knowledge of the law to attempt to destroy/conceal evidence of their crimes. In 2014, Defendant Christie dismissed all members of Defendant NJBME, in a 'hit' on his 'hitmen'. The minds of these individuals contain highly incriminating evidence, particularly that of lawyer, Jane DiGregorio, the only board member who, on June 13, 2012, voted NOT to rescind the consent order into which Kaul and Defendant NJBME had entered on May 9, 2012. Kaul inquired of his then lawyer, Bruce Crelin, as to the reason for DiGregorio's vote, and was

7

informed that she, as a lawyer, recognized the liability of rescinding the agreement on false premises. Consistent with **The Kaul Cases** Defendants utter disregard for the law, was the sinister way Defendant Christie ordered at least twenty (20) members of the Office of the New Jersey Attorney General to stand in a phalanx-like arrangement around the seated members of Defendant NJBME, with the clear intention of intimidation. This grossly abnormal abuse of power evidences a criminal state-of-mind, that is highly motivated to destroy/conceal and cause spoliation of evidence, and to threaten physician witnesses with professional ruination/incarceration if they provide evidence. The fabrication, falsification, distortion, and concealment of documentary evidence, makes witnesses' memories especially important. *Cf. Medlin v. Trull*, 2006 U.S. Dist. LEXIS 10525 (W.D.N.C. Feb. 21, 2006) (allegations of malicious prosecution and intentional infliction of emotional distress "involve a number of factual matters which cannot be easily substantiated by documentary evidence, and memories fade and witness become unavailable.").

By refusing to confer, Defendants effectively have granted themselves an improper stay of discovery. *See G.I. Home Dev. Corp. v. Town of Brookhaven*, 2008 U.S. Dist. LEXIS 26173, *2 (E.D.N.Y. Apr. 1, 2008) (a "request to defer the initial conference is, in effect, a request to stay discovery"); *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust*, 230 F.R.D. 398, 404 n.9 (D. Md. 2005) ("The individual defendants initially refused to produce any documents based on their pending motion to dismiss. There is no basis in the Local Rules or governing case law for what plaintiff correctly characterizes as defendants 'self-imposed stay of discovery.'"). In this District, discovery must start promptly, and stays of discovery are disfavored: "Motions . . . which seek to prohibit or delay discovery are not favored. In considering such motions, the Court needs to remain mindful of its responsibility to expedite discovery and minimize delay. Disruption or prolongation of the discovery schedule is normally in no one's interest. Matters of importance may be mislaid or avenues unexplored. A case becomes more of a management problem to the Court when it leaves the normal trial track." *Kron Medical Corp.*

8

*v. Groth,* 119 F.R.D. 636 (M.D.N.C. 1988); *see also Simpson v. Specialty Retail Concepts, Inc.,* 121 F.R.D. 261, 263 (M.D.N.C. 1988).

Discovery may be stayed only for "good cause." *See id.; United States v. Any & All Assets of Shane Co.,* 147 F.R.D. 99 (M.D.N.C. 1992) (A "motion to stay [discovery], in reality, seeks a protective order pursuant to Fed. R. Civ. P. 26(c) and thus the petitioner must show good cause for such an order.").

The Defendants have provided no "good cause" for refusing to confer and have provided no reason as to why a Rule 26(f) conference is not "practicable." The Defendants have exhausted their excuses/objections/arguments. Their misconduct has compromised federal judges/corporate shareholders/public, but they will, in all their criminal insanity, attempt to corrupt this Court, and take it down, with their "sinking ship". Legal crack addicts.

### Potential Motions To Dismiss Do Not Render Conferring with Plaintiffs Impracticable.

Motions to dismiss do not make a Rule 26(f) conference "impracticable," or provide "good cause" to delay discovery. "The obligation to participate in the Rule 26(f)] planning process is imposed on all parties that have appeared in the case, *including defendants who [have filed]. . . a pending Rule 12 motion.*" Fed. R. Civ. P. 26(f) advisory committee's note (emphasis added). "The 'good cause' requirement is not satisfied simply by filing a dispositive motion." *G.I. Home Dev. Corp.,* 2008 U.S. Dist. LEXIS 26173, at *2. "The law is clear in this court that there is no automatic stay of discovery pending the determination of a motion to dismiss." *Id.; see also Port Dock and Stone Corp. v. Oldcastle North East, Inc.,* No. CV 05-4294 (DRH), 2006 U.S. Dist. LEXIS 94944, *1 (E.D.N.Y. March 31, 2006) ("It is, of course, black letter law that the mere filing of a motion to dismiss the complaint does not constitute 'good cause' for the issuance of a discovery stay."); *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust,* 230 F.R.D. 398, 404 n.9 (D. Md. 2005) (there is "no basis" for refusing to participate in discovery "based on [a] pending motion to dismiss"). The court should not delay discovery pending resolution of a motion to dismiss unless there is an "immediate

9

and clear possibility" that the motions will entirely eliminate the need for discovery. *Simpson*, 121 F.R.D. at 263.

Here, there is no "immediate and clear possibility" that any potential Defendants motions to dismiss will find relief in the law, as the record in The Kaul Cases proves that the Defendants are utterly defenseless and are foreclosed from having the case transferred to Defendant/U.S.D.C.-Newark or Defendant/U.S.D.J.-Vazquez. However, even if in some abstraction of their perverted legal reasoning, they find temporary respite, discovery nonetheless would proceed because they are procedurally/substantively defenseless and would eventually be subject to document and deposition discovery.

## Potential Immunity Claims by Some Defendants Do Not Render a Conference Impracticable or Constitute Good Cause To Stay All Discovery.

Immunity claims that might be asserted by some—but not all—Defendants do not make conferring with Plaintiffs or starting discovery not practicable, or constitute good cause to stay all discovery. As an initial matter, the state Defendants clearly are not entitled to any immunity, as the evidence/facts set forth in Kaul's Complaint. i.e., that of perjury/fraud/evidence tampering/witness tampering, constitute a "pattern of racketeering" to a criminal standard, conduct outside the legal scope of official duty. Discovery should not be delayed based on potentially meritless immunity claims. *See, e.g., Waller v. Butkovich*, 584 F. Supp. 909, 948 n.15 (M.D.N.C. 1984) ("The Court has determined *sua sponte* that it need not further stay discovery against the government officials pending a separate 'threshold inquiry' regarding qualified immunity defenses that they may raise . . . [T]hey would be unsuccessful on the current state of the record."). Moreover, most of Kaul's claims will not have to contend with any potential immunity defense, and these claims will proceed and will require discovery from all Defendants. Qualified immunity is not immunity from third-party discovery. No reason exists to delay the required discovery planning conference or the commencement of discovery.

10

**Local Rule 26(f)(1) mandates a Fed.R.Civ.P. 26(f) conference.**

"Within thirty days after the first appearance of a defendant, the attorneys of record and any self-represented parties who have appeared in the case shall confer for the purposes described in Fed.R.Civ.P. 26(f)."

Defendants Christie/Hafner/Kaufman entered the case on April 12, 2021, but have ignored Kaul's requests to confer, in violation of local/federal rules. Neither Local Rule 16(b) nor Rule 26(f), however, requires the parties to delay conferring until after the clerk has scheduled a pretrial conference, nor is such delay permissible. "Rule 26(f) does not require the parties to delay conferring until after a scheduling conference has been held or a scheduling order has been issued." Scott v. Graphic Communs. Int'l Union, Local 97-B, No. 03-2005 92 Fed. Appx. 896, 901-902 (3d Cir., Mar. 17, 2004). To the contrary, "responsibility for arranging this conference and initiating discovery is placed squarely on the shoulders of the attorneys of record and not on the district court." Id.; see Fed. R. Civ. P. 26(a)(2) (counsel "are jointly responsible for arranging the conference.")

11

## Conclusion

For the foregoing reasons, Kaul respectfully requests this Court enter an order directing Defendants to confer with Kaul as required by Federal Rule of Civil Procedure 26(f). Alternatively, Kaul requests the Court schedule an initial pretrial conference.

Dated: April 27, 2021                                Respectfully submitted

                                                     _____
                                                     Richard Arjun Kaul, MD

# Exhibit 1

 Gmail

Richard Kaul <drrichardkaul@gmail.com>

## Kaul v Christie - 16-CV-02364 + 18-CV-08086

4 messages

**Richard Kaul** <drrichardkaul@gmail.com>
To: Harshu Chaobal <hchaobal@gmail.com>

Sun, Aug 5, 2018 at 7:47 AM

Harshu,

Please find attached a copy of your affidavit. The contents are based on conversations we have had within the last several months.

If there are any facts that you omitted to communicate, that you believe are relevant to the claims and issues of the cases, please call me (201 989 2299) and I will amend the document.

Otherwise please sign the affidavit and return by August 8, 2018.

Thank you in advance.

Regards,

Richard Arjun Kaul, MD

www.drrichardkaul.com

📄 **180804-Kaul v Christie-K2-Affidavit-Choabal.pdf**
64K

**Richard Kaul** <drrichardkaul@gmail.com>
To: Harshu Chaobal <hchaobal@gmail.com>

Sun, Aug 5, 2018 at 7:50 AM

Please find attached a copy with corrected signature line.

Regards,

Richard Arjun Kaul, MD

www.drrichardkaul.com

[Quoted text hidden]

📄 **180804-Kaul v Christie-K2-Affidavit-Choabal.pdf**
63K

**Richard Kaul** <drrichardkaul@gmail.com>
To: Harshu Chaobal <hchaobal@gmail.com>

Wed, Aug 8, 2018 at 6:47 AM

Harshu,

Can you please e-mail me a copy of the completed affidavit, and I will have someone collect the original at a place and time of your choosing.

Thank you in advance.

Regards,

Richard Arjun Kaul, MD

www.drrichardkaul.com

[Quoted text hidden]

**Richard Kaul** <drrichardkaul@gmail.com>
To: Harshu Chaobal <hchaobal@gmail.com>

Wed, Aug 8, 2018 at 4:30 PM

Harshu,

Please remember to e-mail me a copy of the completed affidavit.

Regards,

Richard Arjun Kaul, MD

www.drrichardkaul.com

[Quoted text hidden]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RICHARD ARJUN KAUL, MD

Plaintiff,

v.

CHRISTOPHER J. CHRISTIE, ESQ, et al.,

Defendants

CIVIL ACTION NO. 2:16-cv-02364-KM-SCM

**CERTIFICATION OF HARSHU CHOABAL, MD**

RICHARD ARJUN KAUL, MD
440c SOMERSET DRIVE
PEARL RIVER, NY 10965
201 989 2299

Harshu Choabal, MD, hereby certifies to the Court as follows:

I am a physician licensed to practice medicine and surgery in New Jersey and Wyoming.

I graduated from college in 1994 and then worked as a chemical engineer until 1997.

I graduated from medical school in 2001 and then underwent four years of post-graduate residency training in internal medicine and anesthesiology. I became board certified in anesthesiology in (fill in date).

I have been in the private practice of anesthesiology from 2007 to the present.

From 2007 to 2011 I was an attending in the Department of Anesthesiology at Mount Sinai Medical Center in New York City.

1

From 2011 to the present I have practiced anesthesiology at multiple surgical centers in New Jersey and St. Joseph's Hospital Medical Center in Patterson, New Jersey. It was during this period that I had several conversations with a number of physicians regarding Dr. Kaul, his minimally invasive spine surgery practice, and the circumstances and events that both preceded and surrounded, the suspension, and then revocation, of his New Jersey medical license.

The physicians, their specialties, and the approximate dates, locations and content of the conversations are detailed below:

## Ravi Ventekaranam, MD

Specialty: Interventional Pain

Approximate date range: December 2012 – December 2013.

Location: Clifton, NJ.

Content: The following is a recitation of the comments that were made by Ravi Ventekaranam, MD during our conversations – (a) the attack on Kaul by the spine surgeons was facilitated in the context of political corruption; (b) Kaul did nothing wrong from a clinical perspective, in the general practice of minimally invasive spine surgery.

## Adam Lipson, MD

Specialty: Neurosurgery.

Approximate date range: December 2008 – Present.

Locations: NY, NY. East Rutherford, NJ.

Content: The following is a recitation of the comments that were made by Adam Lipson, MD during our conversations – (a) Kaul would have been *"protected"* if he had worked with a neurosurgeon.

## Daniel Dori, MD

Specialty: Physical Medicine and Rehabilitation.

Approximate date range: December 2017 – Present.

Location: Bloomfield, NJ.

2

Content: The following is a recitation of the comments that were made by Daniel Dori, MD during our conversations – (a) Kaul's clinical practice of minimally invasive spine surgery was ethical and within his scope of practice; (b) Kaul was attacked because of professional jealousy and political corruption, that was engineered by neurosurgeons and orthopedic spine surgeons; (c) physicians who are not neurosurgeons, and who perform minimally invasive spine surgery, *"have to be careful"* in order to avoid being attacked by neurosurgeons; (d) Kaul's practice of minimally invasive spine surgery was risky in a *"political sense"*.

On two occasions in 2018 I worked with Daniel Dori, MD, and provided general anesthesia to patients upon whom he successfully performed minimally invasive spine fusions in an outpatient surgical center. In both cases, although his assistant was an orthopedic surgeon, he performed the procedures using Fluoroscopic Guidance and Interpretation (FGI). Both patients were discharged home the same day.

I hereby certify that the foregoing statements made by me are true and accurate to the best of my knowledge, and if its proved that I willfully misrepresented the facts, then I am subject to punishment.

Dated: August 6, 2018                    _____

                                        Richard Arjun Kaul, MD

3

# Exhibit 2

 Gmail

Richard Kaul <drrichardkaul@gmail.com>

## Connecticut complaint - acceptance of service for former Gov. Christie

12 messages

Robert McGuire <Robert.McGuire@law.njoag.gov>
To: Richard Kaul <drrichardkaul@gmail.com>

Mon, Apr 12, 2021 at 3:50 PM

Please be advised that the Attorney General's office will accept service on behalf of former Gov. Chris Christie on your recently-filed complaint in Connecticut, and, by virtue of this email, hereby does accept service of that pleading on his behalf. Therefore, you are hereby directed not to attempt personal service on former Governor Christie, either at his home or elsewhere. Please reply to this email to confirm receipt and to indicate that you will comply with these instructions. Thank you.

PRIVILEGED AND CONFIDENTIAL



Robert J. McGuire

Deputy Attorney General

Tort Litigation & Judiciary Section

25 Market St. | P.O. Box 116| Trenton, N.J. 08625
t 609-376-2787 | f: 609-633-7434

email: Robert.McGuire@law.njoag.gov

Secretary: Kathy Segura (609) 376-2819

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

Richard Kaul <drrichardkaul@gmail.com>                               Tue, Apr 13, 2021 at 8:43 AM
To: Robert McGuire <Robert.McGuire@law.njoag.gov>

Dear Mr. McGuire,

The service of legal documents regarding the prosecution of Defendant Christie will be had on you.

Defendants Kaufman/Hafner, as with Defendant Chrisie, were served with copies of the Summons/Complaint on April 11, 2021. Please note that until Defendants Kaufman/Hafner retain counsel, they will continue to be personally served.

Pursuant to Rule 26(f)(1), please find below three dates to conduct the initial discovery conference:

1. April 15, 2021.
2. April 19, 2021.
3. April 21, 2021.

Regards,

Richard Arjun Kaul, MD

www.drrichardkaul.com

[Quoted text hidden]

Robert McGuire <Robert.McGuire@law.njoag.gov>                       Tue, Apr 13, 2021 at 5:01 PM
To: Richard Kaul <drrichardkaul@gmail.com>

Please be advised that I am not a member of the Connecticut bar, and my initial communication was simply to indicate that service of Gov. Christie through the Attorney General's office would be acknowledged. I expect that counsel who is admitted in Connecticut will be retained and will be the primary counsel for the Connecticut litigation. That counsel can correspond with you regarding any substantive issues in that jurisdiction, such as discovery. Thank you.

PRIVILEGED AND CONFIDENTIAL



Robert J. McGuire

Deputy Attorney General

Tort Litigation & Judiciary Section

25 Market St. | P.O. Box 116| Trenton, N.J. 08625
t: 609-376-2787 | f: 609-633-7434

email: Robert.McGuire@law.njoag.gov

Secretary: Kathy Segura (609) 376-2819

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressee. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains Is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

From: Richard Kaul <drrichardkaul@gmail.com>
Sent: Tuesday, April 13, 2021 8:44 AM
To: Robert McGuire <Robert.McGuire@law.njoag.gov>
Subject: [EXTERNAL] Re: Connecticut complaint - acceptance of service for former Gov. Christie

Dear Mr. McGuire,

The service of legal documents regarding the prosecution of Defendant Christie will be had on you.

Defendants Kaufman/Hafner, as with Defendant Chrisie, were served with copies of the Summons/Complaint on April 11, 2021. Please note that until Defendants Kaufman/Hafner retain counsel, they will continue to be personally served.

Pursuant to Rule 26(f)(1), please find below three dates to conduct the initial discovery conference:

1. April 15, 2021.

2. April 19, 2021.

3. April 21, 2021.

Regards,

Richard Arjun Kaul, MD

www.drrichardkaul.com

On Mon, Apr 12, 2021 at 3:50 PM Robert McGuire <Robert.McGuire@law.njoag.gov> wrote:

Please be advised that the Attorney General's office will accept service on behalf of former Gov. Chris Christie of your recently-filed complaint in Connecticut, and, by virtue of this email, hereby does accept service of that

pleading on his behalf. Therefore, you are hereby directed not to attempt personal service on former Gover . . Christie, either at his home or elsewhere. Please reply to this email to confirm receipt and to indicate that  . . will comply with these instructions. Thank you.

**PRIVILEGED AND CONFIDENTIAL**



**Robert J. McGuire**

Deputy Attorney General

Tort Litigation & Judiciary Section

25 Market St. | P.O. Box 116| Trenton, N.J. 08625
t: 609-376-2787 | f: 609-633-7434

email: Robert.McGuire@law.njoag.gov

Secretary: Kathy Segura (609) 376-2819

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

[Quoted text hidden]

Robert McGuire <Robert.McGuire@law.njoag.gov>
To: Richard Kaul <drrichardkaul@gmail.com>

Tue, Apr 13, 2021 at 7:01 PM

Good evening. DAG Hafner and Dr. Kaufman have requested that the Attorney General's office arrange for counsel . them in the Connecticut litigation, and this office has agreed to make such arrangements. However, until such time you are advised as to the appointment of such counsel, please be advised that you can serve any additional film  that would be directed to Gov. Christie, DAG Hafner and Dr. Kaufman in the case to my attention, as I have been . authorized to accept service of such materials on their behalves. Kindly confirm your receipt of this message (as . acknowledge that you will comply with these instructions. Thank you.

[Quoted text hidden]
[Quoted text hidden]

Richard Kaul <drrichardkaul@gmail.com>
To: Robert McGuire <Robert.McGuire@law.njoag.gov>

Tue, Apr 13, 2021 at 11:24 PM

Dear Mr. McGuire,

Defendants Christie/Hafner/Kaufman, as your email confirms, have acknowledged service of the Summons and Complaint. They are currently representing themselves and will be personally served with a Rule 26 notice.

At this point in time you have no right to participate in this case in any manner, as you are not a member of the CT Bar.

Regards,

Richard Arjun Kaul, MD

www.drrichardkaul.com

[Quoted text hidden]

Robert McGuire <Robert.McGuire@law.njoag.gov>
To: Richard Kaul <drrichardkaul@gmail.com>

Wed, Apr 14, 2021 at 7:10 AM

Good morning. Those clients, whom I represent in other litigation, and whom my office has agreed to arrange counsel for in Connecticut, are not unrepresented, as you have been directly informed that they have requested the appointment of counsel in Connecticut, which has been agreed to, and should be completed shortly. They have indicated in the interim, through me, that you should serve me as their designated choice for service of any materials in the case, until their Connecticut counsel is in contact with you. I am not required to be a member of the Connecticut bar to advise you that I am their designated choice to receive process in that case. I repeat that you are not to interact with them further, by sending anyone to their homes or otherwise. Please acknowledge receipt of this message and confirm that you will comply with this second explicit and unambiguous direction that you are not to send any further process or materials in the Connecticut case to Gov. Christie, DAG Hafner or Dr. Kaufman. Thank you.

**Robert J. McGuire**

Deputy Attorney General

Tort Litigation & Judiciary Section

25 Market St. | P.O. Box 116| Trenton, N.J. 08625
t: 609-376-2787 | f: 609-633-7434

email: Robert.McGuire@law.njoag.gov

Secretary: Kathy Segura (609) 376-2819

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this message, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

From: Richard Kaul <drrichardkaul@gmail.com>
Sent: Tuesday, April 13, 2021 11:24 PM
To: Robert McGuire <Robert.McGuire@law.njoag.gov>
Subject: Re: [EXTERNAL] Re: Connecticut complaint - acceptance of service for former Gov. Christie

[Quoted text hidden]
CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

Richard Kaul <drrichardkaul@gmail.com>                                        Wed, Apr 14, 2021 at 7:31 AM
To: Robert McGuire <Robert.McGuire@law.njoag.gov>

Dear Mr. McGuire,

I intend on prosecuting this case without any delay, and until Defendants Christie/Kaufman/Hafner retain counsel in CT, they will be served with relevant papers.

The court ordered deadline for discovery is September 29, 2021.

Regards,

Richard Arjun Kaul, MD

www.drrichardkaul.com

[Quoted text hidden]

Robert McGuire <Robert.McGuire@law.njoag.gov>                                 Wed, Apr 14, 2021 at 7:49 AM
To: Richard Kaul <drrichardkaul@gmail.com>

I am now informing you, explicitly and unambiguously, and for a third time, that you are to send any materials to me, and that I will relay them to the clients for whom my office has agreed to provide representation. No "delay" can result from that, because service through me will be considered service on them, by their express acknowledgement, so any potentially applicable deadlines that run from service are unaffected. If you choose to communicate with them directly again, despite what is now a third express warning not to do so, it cannot reasonably be viewed as anything other than an attempt to harass them, and courts will be informed of this, including the court in New Jersey, where I represent these clients.

From: Richard Kaul <drrichardkaul@gmail.com>
Sent: Wednesday, April 14, 2021 7:31 AM
To: Robert McGuire <Robert.McGuire@law.njoag.gov>
[Quoted text hidden]

[Quoted text hidden]
CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it

contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

Richard Kaul <drrichardkaul@gmail.com>                                      Wed, Apr 14, 2021 at 9:17 AM
To: Robert McGuire <Robert.McGuire@law.njoag.gov>

The delay pertains to the commencement of discovery, of which the court ordered deadline is September 29, 2021.

Instruct Defendants Christie/Kaufman/Hafner to immediately choose a date re: Rule 26, and there will be no need for service on their persons.

If I do not receive a response by 1pm EST, notices will be served.

Regards,

Richard Arjun Kaul, MD

www.drrichardkaul.com

꿈

[Quoted text hidden]

Robert McGuire <Robert.McGuire@law.njoag.gov>                               Wed, Apr 14, 2021 at 9:39 AM
To: Richard Kaul <drrichardkaul@gmail.com>

There will be no "delay" as a result of not responding by your arbitrary, self-imposed deadline of 1 p.m. today. You are now specifically directed for a fourth time not to communicate directly with these persons or to have someone appear at their homes or places of business. Counsel for these defendants in Connecticut will be the one to make decisions as to any Rule 26 conference and about any date for same, and counsel will be in touch on that issue. Your suggestion that you need a response by midday today is a transparent ruse, and a demand to agree to a date for a Rule 26 conference by the midday, 2 1/2 days after service of the complaint, is preposterous. Advise anyone that you purport to send onto these persons' properties to serve process that you have been specifically and repeatedly told that you or anyone acting on your behalf to serve process are not authorized to set foot on the properties of defendants, and that anyone doing so at your behest will be subject to a charge of willful trespass. Be further aware that, if you defy these instructions, the courts will be informed of this, with appropriate consequences sought

PRIVILEGED AND CONFIDENTIAL



Robert J. McGuire

Deputy Attorney General

Tort Litigation & Judiciary Section

25 Market St. | P.O. Box 116| Trenton, N.J. 08625
t: 609-376-2787 | f: 609-633-7434

email: Robert.McGuire@law.njoag.gov

<u>Secretary: Kathy Segura (609) 376-2819</u>

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressee. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

From: Richard Kaul <drrichardkaul@gmail.com>
Sent: Wednesday, April 14, 2021 9:18 AM
To: Robert McGuire <Robert.McGuire@law.njoag.gov>
Subject: Re: [EXTERNAL] Re: Connecticut complaint - acceptance of service for former Gov. Christie

The delay pertains to the commencement of discovery, of which the court ordered deadline is September 29, 2021.

Instruct Defendants Christie/Kaufman/Hafner to immediately choose a date re: Rule 26, and there will be no need for service on their persons.

If I do not receive a response by 1pm EST, notices will be served.

Regards,

Richard Arjun Kaul, MD

www.drrichardkaul.com

On Wed, Apr 14, 2021 at 7:49 AM Robert McGuire <Robert.McGuire@law.njoag.gov> wrote:

I am now informing you, explicitly and unambiguously, and for a third time, that you are to send any materials to me, and that I will relay them to the clients for whom my office has agreed to provide representation. No "delay" can result from that, because service through me will be considered service on them, by their express acknowledgement, so any potentially applicable deadlines that run from service are unaffected. If you choose to communicate with them directly again, despite what is now a third express warning not to do so, it cannot reasonably be viewed as anything other than an attempt to harass them, and courts will be informed of this, including the court in New Jersey, where I represent these clients.

From: Richard Kaul <drrichardkaul@gmail.com>
Sent: Wednesday, April 14, 2021 7:31 AM
To: Robert McGuire <Robert.McGuire@law.njoag.gov>
Subject: Re: [EXTERNAL] Re: Connecticut complaint - acceptance of service for former Gov. Christie

Dear Mr. McGuire,

I intend on prosecuting this case without any delay, and until Defendants Christie/Kaufman/Hafner retain counsel in CT they will be served with relevant papers.

The court ordered deadline for discovery is September 29, 2021.

Regards,

Richard Arjun Kaul, MD

www.drrichardkaul.com

On Wed, Apr 14, 2021 at 7:10 AM Robert McGuire <Robert.McGuire@law.njoag.gov> wrote:

Good morning. Those clients, whom I represent in other litigation, and whom my office has agreed to arrange counsel for in Connecticut, are not unrepresented, as you have been directly informed that they have requested the appointment of counsel in Connecticut, which has been agreed to, and should be completed shortly. They have indicated in the interim, through me, that you should serve me as their designated choice for service of any materials in the case, until their Connecticut counsel is in contact with you. I am not required to be a member of the Connecticut bar to advise you that I am their designated choice to receive process in that case. I repeat that you are not to interact with them further, by sending anyone to their homes or otherwise. Please acknowledge receipt of this message and confirm that you will comply with this second explicit and unambiguous direction that you are not to send any further process or materials in the Connecticut case to Gov. Christie, DAG Hafner or Dr. Kaufman. Thank you.

Robert J. McGuire

Deputy Attorney General

Tort Litigation & Judiciary Section

25 Market St. | P.O. Box 116| Trenton, N.J. 08625
t: 609-376-2787 | f: 609-633-7434

email: Robert.McGuire@law.njoag.gov

Secretary: Kathy Segura (609) 376-2839

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addresses. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

From: Richard Kaul <drrichardkaul@gmail.com>
Sent: Tuesday, April 13, 2021 11:24 PM
To: Robert McGuire <Robert.McGuire@law.njoag.gov>
Subject: Re: [EXTERNAL] Re: Connecticut complaint - acceptance of service for former Gov. Christie

Dear Mr. McGuire,

Defendants Christie/Hafner/Kaufman, as your email confirms, have acknowledged service of the Summons and Complaint. They are currently representing themselves and will be personally served with a Rule 26 notice.

At this point in time you have no right to participate in this case in any manner, as you are not a member of the CT Bar.

Regards,

Richard Arjun Kaul, MD

www.drrichardkaul.com

On Tue, Apr 13, 2021 at 7:01 PM Robert McGuire <Robert.McGuire@law.njoag.gov> wrote:

Good evening. DAG Hafner and Dr. Kaufman have requested that the Attorney General's office arrange for counsel for them in the Connecticut litigation, and this office has agreed to make such arrangements. However, until such time as you are advised as to the appointment of such counsel, please be advised that you can serve any additional filings that would be directed to Gov. Christie, DAG Hafner and Dr. Kaufman in the case to my attention, as I have been authorized to accept service of such materials on their behalf. Kindly confirm your receipt of this message and acknowledge that you will comply with these instructions. Thank you.

PRIVILEGED AND CONFIDENTIAL

|___|

Robert J. McGuire

Deputy Attorney General

Tort Litigation & Judiciary Section

25 Market St. | P.O. Box 116| Trenton, N.J. 08625
t: 609-376-2787 | f: 609-633-7434

email: Robert.McGuire@law.njoag.gov

Secretary: Kathy Segura (609) 376-2819

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

---

From: Robert McGuire
Sent: Tuesday, April 13, 2021 5:01 PM
To: Richard Kaul <drrichardkaul@gmail.com>
Subject: RE: [EXTERNAL] Re: Connecticut complaint - acceptance of service for former Gov. Christie

Please be advised that I am not a member of the Connecticut bar, and my initial communication was simply indicate that service of Gov. Christie through the Attorney General's office would be acknowledged. I can tell that counsel who is admitted in Connecticut will be retained and will be the primary counsel for the Connecticut litigation. That counsel can correspond with you regarding any substantive issues in that jurisdiction, such as discovery. Thank you.

PRIVILEGED AND CONFIDENTIAL

|___|

Robert J. McGuire

Deputy Attorney General

Tort Litigation & Judiciary Section

25 Market St. | P.O. Box 116| Trenton, N.J. 08625
t: 609-376-2787 | f: 609-633-7434

email: Robert.McGuire@law.njoag.gov

Secretary: Kathy Segura (609) 376-2819

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

From: Richard Kaul <drrichardkaul@gmail.com>
Sent: Tuesday, April 13, 2021 8:44 AM
To: Robert McGuire <Robert.McGuire@law.njoag.gov>
Subject: [EXTERNAL] Re: Connecticut complaint - acceptance of service for former Gov. Christie

Dear Mr. McGuire,

The service of legal documents regarding the prosecution of Defendant Christie will be had on you.

Defendants Kaufman/Hafner, as with Defendant Chrisie, were served with copies of the Summons/Complaint on April 11, 2021. Please note that until Defendants Kaufman/Hafner retain counsel, they will continue to be personally served.

Pursuant to Rule 26(f)(1), please find below three dates to conduct the initial discovery conference:

1. April 15, 2021.

2. April 19, 2021.

3. April 21, 2021.

Regards,

Richard Arjun Kaul, MD

www.drrichardkaul.com

On Mon, Apr 12, 2021 at 3:50 PM Robert McGuire <Robert.McGuire@law.njoag.gov> wrote:

Please be advised that the Attorney General's office will accept service on behalf of former Gov. Chris Christie of your recently-filed complaint in Connecticut, and, by virtue of this email, hereby does accept service of that pleading on his behalf. Therefore, you are hereby directed not to attempt personal service on former Governor Christie, either at his home or elsewhere. Please reply to this email to confirm receipt and to indicate that you will comply with these instructions. Thank you.


PRIVILEGED AND CONFIDENTIAL


**Robert J. McGuire**

Deputy Attorney General

Tort Litigation & Judiciary Section

25 Market St. | P.O. Box 116| Trenton, N.J. 08625
t: 609-376-2787 | f: 609-633-7434

email: Robert.McGuire@law.njoag.gov

Secretary: Kathy Segura (609) 376-2819


CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons of entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.


CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

**Richard Kaul <drrichardkaul@gmail.com>**
To: Robert McGuire <Robert.McGuire@law.njoag.gov>

Wed, Apr 14, 2021 at 10:00 AM

Dear Mr. McGuire,

Please be advised that you have no legal right to participate in this case, and any violation of my rights and the court's discovery order, can and will be used against Defendants Christie/Hofner/Kaufman.

Regards,

Richard Arjun Kaul, MD

www.drrichardkaul.com

[Quoted text hidden]

**Robert McGuire <Robert.McGuire@law.njoag.gov>**
To: Richard Kaul <drrichardkaul@gmail.com>

Wed, Apr 14, 2021 at 10.15 AM

I have every right as the designee to receive process for these people to communicate with you regarding service issues. Your claim that some potential violation of your rights or of a court order may result is frivolous.

**PRIVILEGED AND CONFIDENTIAL**



Robert J. McGuire

Deputy Attorney General

Tort Litigation & Judiciary Section

25 Market St. | P.O. Box 116| Trenton, N.J. 08625
t: 609-376-2787 | f: 609-633-7434

email: Robert.McGuire@law.njoag.gov

Secretary: Kathy Segura (609) 376-2819

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney
General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressee.
If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it
contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of
the Attorney General at (609) 292-4925 to arrange for the return of this information.

From: Richard Kaul <drrichardkaul@gmail.com>
Sent: Wednesday, April 14, 2021 10:00 AM
To: Robert McGuire <Robert.McGuire@law.njoag.gov>
Subject: Re: [EXTERNAL] Re: Connecticut complaint - acceptance of service for former Gov. Christie

Dear Mr. McGuire,

Please be advised that you have no legal right to participate in this case, and any violation of my rights and the court's
discovery order, can and will be used against Defendants Christie/Hafner/Kaufman.

Regards,

Richard Arjun Kaul, MD

www.drrichardkaul.com

  http://www.technologia.com/documents/images/blocs-droite/linkedin_logo-33X33.jpg

[Quoted text hidden]
[Quoted text hidden]

**Exhibit 3**

M Gmail

Richard Kaul <drrichardkaul@gmail.com>

## Kaul v Murphy: 21-CV-439 - K11-4

1 message

Richard Kaul <drrichardkaul@gmail.com>
To: "Abbott S. Brown" <ABrown@lomurrofirm.com>

Mon, Apr 19, 2021 at 1:07 PM

Dear Mr. Brown,

Pursuant to the Court's order of March 30, 2021, and Rule 26 of the F.R.C.P., please find below three suggested dates to confer regarding a discovery schedule.

1. April 20, 2021.
2. April 21, 2021.
3. April 22, 2021.

Please find attached the following documents:

1. Proof of Service of Summons/Complaint: April 13, 2021.

2. Copy of docket sheet: April 19, 2021.

My telephone number is 862 881 9703.

Regards,

Richard Arjun Kaul, MD

www.drrichardkaul.com

[image]

**2 attachments**

📄 **210413-Kaul v Murphy-K11-4-POS-Brown.pdf**
330K

📄 **210419-Kaul v Murphy-K11-4-Docket.pdf**
193K

# Exhibit 4

www.tirrichardkaui.com

April 14, 2021

Doreen Annette Hafner
Defendant
49 Seminole Drive
Ringwood, NJ 07456

Re: Kaul v Murphy, et al.
    21-CV-439 – K11-4
    Rule 26 Conference

Please be noticed that pursuant to F.R.C.P. 26 (copy enclosed) you are obligated to immediately
confer with the Plaintiff regarding a schedule for discovery.

Please find enclosed the following documents:

1. Copy of Rule 26.
2. Copy of court docket, ordering completion of discovery by September 29, 2021.
3. Emails from Robert McGuire (NJ DAG).

The three alternate conference dates are:

1. April 19, 2021.
2. April 21, 2021.
3. April 22, 2021.

Please be advised that failure to confer, constitutes a violation of Rule 26 and the Court's order.
This evidence, in conjunction with that of your conspiring with DAG Robert McGuire to obstruct
justice, will be submitted in support of motions for summary judgment on the RICO claims. Mr.
McGuire, in attempting to aid and abet your obstructive efforts, and in using the US wires to
further such a scheme, is now a Third-Party Witness. Your communications with him are not
privileged, as there is, nor can there be, any attorney-client relationship.

Mr. McGuire's emails evidence a conspiracy in which you and he concocted the falsehood that
he would find you counsel in the State of Connecticut.

1

This document will be served on you on April 15, 2021.

Yours sincerely

Richard Arjun Kaul, MD

Contact information:

drrichardkaul@gmail.com
862 881 9703

2

www.drrichardkaul.com

**April 14, 2021**

Christopher J. Christie
Defendant
47 Corey Lane
Mendham, NJ 07945

Re: Kaul v Murphy, et al.
   21-CV-439 – K11-4
   Rule 26 Conference

Please be noticed that pursuant to F.R.C.P. 26 (copy enclosed) you are obligated to immediately confer with the Plaintiff regarding a schedule for discovery.

Please find enclosed the following documents:

1. Copy of Rule 26.
2. Copy of court docket, ordering completion of discovery by September 29, 2021.
3. Emails from Robert McGuire (NJ DAG).

The three alternate conference dates are:

1. April 19, 2021.
2. April 21, 2021.
3. April 22, 2021.

Please be advised that failure to confer, constitutes a violation of Rule 26 and the Court's order. This evidence, in conjunction with that of your conspiring with DAG Robert McGuire to obstruct justice, will be submitted in support of motions for summary judgment on the RICO claims. Mr. McGuire, in attempting to aid and abet your obstructive efforts, and in using the US wires to further such a scheme, is now a Third-Party Witness. Your communications with him are not privileged, as there is, nor can there be, any attorney-client relationship.

Mr. McGuire's emails evidence a conspiracy in which you and he concocted the falsehood that he would find you counsel in the State of Connecticut.

1

This document will be served on you on April 15, 2021.

Yours sincerely

Richard Arjun Kaul, MD

Contact information:

drrichardkaul@gmail.com
862 881 9703

www.drrichardkaul.com

April 14, 2021

Andrew Gregory Kaufman
Defendant
16 Sierra Court
Hillsdale, NJ 07642

Re: Kaul v Murphy, et al.
    21-CV-439 – K11-4
    Rule 26 Conference

Please be noticed that pursuant to F.R.C.P. 26 (copy enclosed) you are obligated to immediately confer with the Plaintiff regarding a schedule for discovery.

Please find enclosed the following documents:

1. Copy of Rule 26.
2. Copy of court docket, ordering completion of discovery by September 29, 2021.
3. Emails from Robert McGuire (NJ DAG).

The three alternate conference dates are:

1. April 19, 2021.
2. April 21, 2021.
3. April 22, 2021.

Please be advised that failure to confer, constitutes a violation of Rule 26 and the Court's order. This evidence, in conjunction with that of your conspiring with DAG Robert McGuire to obstruct justice, will be submitted in support of motions for summary judgment on the RICO claims. Mr. McGuire, in attempting to aid and abet your obstructive efforts, and in using the US wires to further such a scheme, is now a Third-Party Witness. Your communications with him are not privileged, as there is, nor can there be, any attorney-client relationship.

Mr. McGuire's emails evidence a conspiracy in which you and he concocted the falsehood that he would find you counsel in the State of Connecticut.

1

This document will be served on you on April 15, 2021.

Yours sincerely

Richard Arjun Kaul, MD

Contact information:

drrichardkaul@gmail.com
862 881 9703

2

Kal v Murphy et al

**The facts/law of The Kaul Cases restricts the Defendants litigation of K11-5 to the United States District Court for the District of New Jersey-Camden.**

**Evidence:**

Submitted is evidence in support of the above mandate **(Exhibit 1).**

**Evading Justice**:

Commencing in or around 2006, **The Kaul Cases** Defendants, and various co-conspirators commenced conspiring to have Kaul's NJ license revoked, destroy his medical career, his reputation and economic standing. It was their intention to drive Kaul into a state of poverty, make him and his family homeless and prevent him from ever securing a livelihood anywhere in the world. An element of this scheme involved having state/federal criminal authorities investigate Kaul and all his associates, in order to attempt to charge Kaul with a crime/s, have him jailed and then deported, in order to eliminate the competition, he presented to his physician/hospital/insurance competitors in the minimally invasive spine surgery market. This massive scheme, one that began in 2006 with professional jealousy and greed, rapidly expanded into a state criminal enterprise, orchestrated by Defendant Christie. **The Kaul Cases** Defendants, in embarking on their ill-intended racket in 2006, never imagined that by 2021, they would have repeatedly violated state/federal criminal law. **The Kaul Cases** Defendants have bribed judges, politicians, lawyers and other physicians, to both commit their crimes and now to provide cover for their crimes. However, on April 26, 2021, the K11-5 Defendants find themselves in a court, within the geographic boundaries of the State of New Jersey, in which their only option is to tell the truth, which mandates a Rule 26(f) conference.

**Relevant Procedural Chronology of Defendants Evasion of Justice:**

Please see enclosed copy of relevant excerpt of docket sheet. Of immense significance is the fact that on December 16, 2020, the Court entered an order Initial Conference set for January 26, 2021. The Defendants refused to confer with Kaul in preparation for the conference, but instead filed multiple motions to have the case transferred to Defendant/U.S.D.J. Vazquez, an individual now officially before the Judicial Disciplinary Council of the Third Circuit. Vazquez stayed the case, and then refused to disqualify himself despite knowing that Kaul had sued him. His defense consisted of stating that Kaul had not been particular enough in describing the scheme of judicial corruption, in which he and the Defendants had engaged. His defense was not a denial of the crimes, but simply that Kaul had allegedly not described exactly the how many bribes he had received from the Defendants. The standard for judicial disqualification is that of simply an appearance of impropriety, and Vazquez in not denying the crimes, has placed himself under criminal scrutiny. The Defendants filed a motion on March 3, 2021 in K5, that sought to have Defendant/U.S.D.J. Vazquez/Falk/Dickson enter an order that absolved them

Kal v Murphy et al

from having to answer claims filed against them by Kaul in any other courts in the United States. The motion was returnable on April 5, 2021. No order has been entered and the Defendants have not petitioned the U.S.C.A. for the Third Circuit for a writ of mandamus. It is significant that no other court within the United States District Court (U.S.D.C.-DC/U.S.D.C.-CT/U.S.C.A.-Third Circuit) has stated in any of its opinions regarding appeals or transfers, that the litigation of K1 in any way precludes the litigation of any of **The Kaul Cases**. The reason is that this argument is false but was used by Defendants Vazquez/Dickson to illegally stay K2/K3/K4/K5, because they had been corrupted by **The Kaul Cases** Defendants. These facts are plausibly pled in K11-3.

**Motion to compel Rule 26 (f) conference**:

Separately submitted on April 27, 2021 is a motion to compel Defendants confer with Kaul regrading a Rule 26(f) conference.

**A just speedy and inexpensive determination of K11-5**:

The FRCP and Local Rules (26/16/37) are explicit in obligating the parties to confer, exchange discovery, discuss settlement and move the case to resolution. The law contains provisions for sanctions and enforcement. The recalcitrance of **The Kaul Cases** Defendants (February 22, 2016 to the present) has caused and continues to cause an immense injury to the United States District Court and has created a bottleneck for all other parties seeking to litigate cases. The Defendants failed to confer or appear on January 26, 2021 for the court ordered Rule 26 conference. The outcome of **The Kaul Cases** is of immense relevance to the American medical, legal and healthcare business sectors, as it will further inform the American public of what systemic changes are required to improve their health care system and quality of life.

April 27th, 2021

RICHARD ARJUN KAUL, MD

2